**Rian Peck** (they/them), OSB No. 144012
RPeck@perkinscoie.com
**Thomas R. Johnson** (he/him), OSB No. 010645
TRJohnson@perkinscoie.com
**Misha Isaak** (he/him), OSB No. 086430
MIsaak@perkinscoie.com
**Nathan Morales** (he/him), OSB No. 145763
NMorales@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Shane Grannum** (he/him), *pro hac vice* pending
SGrannum@perkinscoie.com
**Sarah Mahmood** (she/her), *pro hac vice* pending
SMahmood@perkinscoie.com
PERKINS COIE LLP
700 13th Street, NW, Suite 800
Washington, D.C.  20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211

**Zachary Watterson** (he/him), *pro hac vice* pending
ZWatterson@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

**Kelly K. Simon** (she/her), OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone:  503.227.6928

Attorneys for Plaintiffs

MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CHRISTOPHER WISE, MICHAEL MARTINEZ, CHRISTOPHER DURKEE,** and **SAVANNAH GUEST,** individuals, <br><br> Plaintiffs, <br><br> v. <br><br> **CITY OF PORTLAND,** a municipal corporation**; OFFICER STEPHEN B. PETTEY,** in his individual capacity**; JOHN DOES 1-60,** individual and supervisory officers of Portland Police Bureau**; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. MARSHALS SERVICE; JOHN DOES 61-100**, individual and supervisory officers of the federal government, <br><br> Defendants. | Case No. 3:20-cv-01193-IM <br><br> **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER; MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> Pursuant to Fed. R. Civ. P. 65 <br><br> ORAL ARGUMENT REQUESTED <br><br> EXPEDITED HEARING REQUESTED |

MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# TABLE OF CONTENTS

**Page**

MOTION ........................................................................................................... 1

MEMORANDUM OF LAW .............................................................................. 4

I.     INTRODUCTION ................................................................... 4

II.    FACTS ..................................................................................... 5

    A.    Protest Medic Groups Formed to Create a Safer Environment for Protesters Seeking to Peacefully Protest ................................. 5

    B.    This Court Intervenes and Issues a Temporary Restraining Order, Enjoining the Portland Police From Using Excessive Force Against Protesters ................................................................... 7

    C.    Federal Officers Arrive in Portland ..................................... 7

    D.    This Court Intervenes Again and Issues a Temporary Restraining Order, Enjoining the Federal Officers From Using Excessive Force Against Journalists ................................................................. 8

    E.    Plaintiffs Offer Aid and Are Targeted by Police ..................... 8

III.    ARGUMENT ............................................................................ 11

    A.    Plaintiffs are likely to succeed on the merits of their First Amendment claim ............................................................. 12

        1.    Plaintiffs engaged in constitutionally protected speech while serving as volunteer protest medics ................................. 13

        2.    Defendants' actions would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech ................................................................. 18

        3.    Plaintiffs' protected activities were a substantial motivating factor in Defendants' conduct ..................................... 21

    B.    Plaintiffs also are likely to succeed on the merits of their Fourth Amendment claim ............................................................. 23

        1.    Defendants used excessive force against Plaintiffs ................. 23

        2.    Plaintiffs are likely to establish that law enforcement officers unlawfully seized their property in violation of the Fourth Amendment ................................................................. 28

        3.    Defendants continue to violate Plaintiffs' Fourth Amendment rights ................................................................. 30

    C.    The Court can and should grant the relief sought by Plaintiffs ............... 32

        1.    This case does not present any sovereign immunity issues ........ 32

        2.    The Court has the inherent power to grant equitable relief ........ 33

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF CONTENTS
## (continued)

**Page**

|   |   |   | |
|---|---|---|---|
| | 3. | Plaintiffs have clear causes of action under the First and Fourth Amendments | 33 |
| D. | | Plaintiffs will suffer irreparable harm without the Court's intervention | 35 |
| E. | | The public's interest and balance of equities weigh strongly in favor of plaintiffs | 37 |
| | 1. | The public has an unassailable interest in free speech and medical care | 37 |
| | 2. | The balance of equities weighs strongly in favor of plaintiffs | 39 |
| F. | | Plaintiffs' requested relief is reasonable | 39 |
| IV. | | CONCLUSION | 41 |

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES

**Page**

CASES

*Abay v. City of Denver*,
No. 20-cv-01616-RBJ, 2020 WL 3034161 (D. Colo. June 5, 2020) ................................15, 19

*Alexander v. City & Cty. of San Francisco*,
29 F.3d 1355 (9th Cir. 1994) ....................................................................................................23

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ..................................................................................................12

*Am. Fed'n of Gov't Emps. Local 1 v. Stone*,
50 F.3d 1027 (9th Cir. 2007) ....................................................................................................35

*Ariz. Students Ass'n v. Ariz. Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016) ....................................................................................................13

*Associated Press v. Otter*,
682 F.3d 821 (9th Cir. 2012) ....................................................................................................37

*Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*,
403 U.S. 388, 389 (1999) ....................................................................................................34, 35

*Black Lives Matter Seattle-King Cty. v. City of Seattle et al.*,
No. 2:20-cv-00887-RAJ, 2020 WL 3128299 (W.D. Wash. June 12, 2020) ................... passim

*Boos v. Barry*,
485 U.S. 312 (1988) ............................................................................................................12, 14

*Cantu v. City of Portland*,
No. 3:19-cv-01606-SB, 2020 WL 295972 (D. Or. June 3, 2020) ............................................21

*City of Houston, Tex. v. Hill*,
482 U.S. 451 (1987) ..................................................................................................................14

*Cmty. House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007) ..................................................................................................39

*Collins v. Jordan*,
110 F.3d 1363 (9th Cir. 1996) ..................................................................................................19

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Corales v. Bennett*,
    567 F.3d 554 (9th Cir. 2009) ............................................................................14, 16

*Dalton v. Specter*,
    511 U.S. 462 (1994)...............................................................................................33

*Don't Shoot Portland v. City of Portland*,
    No. 3:20-cv-00917-HZ, 2020 WL 3078329 (D. Or. Jun. 9, 2020).........................7, 26, 36, 37

*Drozd v. McDaniel*,
    No. 3:17-cv-556-JR, 2019 WL 8757218 (D. Or. Dec. 19, 2019) ...........................18

*E.V. v. Robinson*,
    906 F.3d 1082 (9th Cir. 2018) .............................................................................32

*Ex parte Young*,
    209 U.S. .................................................................................................................33, 35

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
    901 F.3d 1235 (11th Cir. 2018) ..........................................................................14, 15

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) (en banc) ..............................................................12

*Goldman, Sachs & Co. v. City of Reno*,
    747 F.3d 733 (9th Cir. 2014) ..............................................................................12

*Graham v. Connor*,
    490 U.S. 386 (1989)...............................................................................................23

*Hartman v. Moore*,
    547 U.S. 250 (2006)...............................................................................................12

*Headwaters Forest Def. v. Cty. Of Humboldt*,
    276 F.3d 1125 (9th Cir. 2002) .............................................................................27

*Hopkins v. Andaya*,
    958 F.2d 881 (9th Cir. 1992) (per curiam)...........................................................26

*Ill. v. Gates*,
    462 U.S. 213 (1983)...............................................................................................29

iv-  TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Index Newspapers LLC v. City of Portland*,
No. 3:20-cv-1035-SI (D. Or. Jul. 23, 2020)........................................................8, 21

*Malone v. Bowdoin*,
369 U.S. 643 (1962)................................................................................33

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ................................................................37

*Mendocino Envtl. Ctr. v. Mendocino Cty.*,
192 F.3d 1283 (9th Cir. 1999) ..............................................................13

*Nelson v. City of Davis*,
685 F.3d 867 (9th Cir. 2012) ..................................................... passim

*O'Brien v. Welty*,
818 F.3d 920 (9th Cir. 2016) ................................................................13

*Osborn v. United States Bank*,
22 U.S. 738 (1824).................................................................................35

*Philadelphia Co. v. Stimson*,
223 U.S. 605, 620 (1912)........................................................................33

*Pinard v. Clatskanie Sch. Dist. 6J*,
467 F.3d 755 (9th Cir. 2006) ................................................................13

*Quraishi v. St. Charles Cty., Mo.*,
No. 4:16-CV-1320 NAB, 2019 WL 2423321 (E.D. Mo. June 10, 2019)................................19

*Sierra Club v. Trump*,
2020 WL 3478900 (9th Cir. June 26, 2020) ...........................................34

*Sierra Club v. Trump*,
929 F.3d 670 (9th Cir. 2019) ................................................................33

*Soldal v. Cook Cty., Ill.*,
506 U.S. 56 (1992).................................................................................29

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) ................................................................11

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Texas v. Johnson*,
    491 U.S. 397 (1989) .......................................................................................14, 15

*U.S. v. Hawkins*,
    249 F.3d 867 (9th Cir. 2001) .................................................................................29

*U.S. v. Jacobsen*,
    466 U.S. 109 (1984) .........................................................................................28, 30

*U.S. v. Neill*,
    166 F.3d 943 (9th Cir. 1998) .................................................................................25

*Ulrich v. City & Cty. of San Francisco*,
    308 F.3d 968 (9th Cir. 2002) .................................................................................21

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) .........................................................................12, 36

*Young v. Cty. of L.A.*,
    655 F.3d 1156 (9th Cir. 2011) ...............................................................................25

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ...........................................................................................34

STATUTES

5 U.S.C. § 702 .........................................................................................................32, 34

28 U.S.C. § 1331 ......................................................................................................34, 35

Administrative Procedure Act ..........................................................................32, 33, 34

Or. Rev. Stat. § 133.235 ............................................................................................2, 40

Or. Rev. Stat. § 133.245 ............................................................................................2, 40

OTHER AUTHORITIES

Disease Control & Prevention, *Facts About Riot Control Agents* (Apr. 4, 2018),
    https://emergency.cdc.gov/agent/riotcontrol/factsheet.asp#:~:text=Riot%20co
    ntrol%20agents%20(sometimes%20referred,to%20be%20riot%20control%20
    agents ....................................................................................................................19, 20

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

Page

Executive Order 13933 ................................................................................7

Fed. R. Civ. P. 65 ................................................................................1, 3

Judge Simon's Temporary Restraining Order in *Index Newspapers LLC et al. v.*
*City of Portland et al.*, 3:20-cv-1035-SI ................................................39

Press Release, Department of Homeland Security, DHS Announces New Task
Force to Protect American Monuments, Memorials, and Statues (July 1, 2020)
*available at* https://www.dhs.gov/news/2020/07/01/dhs-announces-new-task-
force-protect-american-monuments-memorials-and-statues#; ................................7

Statement on Portland Civil Unrest (July 5, 2020), *available at*
https://www.dhs.gov/news/2020/07/05/fps-statement-portland-civil-unrest............................7

U.S. Const. amend. IV ................................................................................23

U.S. Constitution First Amendment ................................................................ passim

U.S. Constitution Fourth Amendment ................................................................ passim

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# MOTION

Plaintiffs Christopher Wise, Michael Martinez, Christopher Durkee, and Savannah Guest (collectively, "Plaintiffs" or "Protest Medics") hereby move for a Temporary Restraining Order ("TRO"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, to protect them from further violations of their constitutional rights under the First and Fourth Amendments to the U.S. Constitution. This Motion is supported by the enclosed Memorandum of Law; the Declarations of Christopher Wise, Michael Martinez, Christopher Durkee, Savannah Guest, and others being collected and signed at the time of filing this motion.

Plaintiffs specifically seek an order enjoining Defendants and their agents, employees, representatives, and servants, from behaving towards any Protest Medics in the manners that follow:

1.       To facilitate the Defendants' identification of Protest Medics protected under this Order, the following shall be considered indicia of being a Protest Medic: visual identification as a medic, such as by carrying medical equipment or supplies identifiable as such or wearing distinctive clothing that identifies the wearer as a medic. Examples of such visual indicia include any clothing or medical equipment that (1) clearly displays the word "medic" in red in an unobstructed manner or (2) clearly displays any universally recognized emblems for medics, such as the red cross, in an unobstructed manner. These indicia are not exclusive, and a person need not exhibit every indicium to be considered a Protest Medic under this Order. Defendants shall not be liable for any unintentional violations of this Order caused by the failure of an individual to wear or carry any indicia of being a Protest Medic.

2.       Defendants and their agents and employees, including but not limited to the Portland Police Bureau and all persons acting under the direction of or in

1-   MOTION FOR TEMPORARY RESTRAINING ORDER
     AND ORDER TO SHOW CAUSE WHY PRELIMINARY
     INJUNCTION SHOULD NOT ENTER

                                    **Perkins Coie LLP**
                                    1120 N.W. Couch Street, 10th Floor
                                    Portland, OR  97209-4128
                                    Phone:  503.727.2000
                                    Fax:  503.727.2222

concert with the Portland Police Bureau (the "Portland Police"); and the Department of Homeland Security and all persons acting under the direction of or in concert with the Department of Homeland Security, and the U.S. Marshals Service and all persons acting under the direction of or in concert with the U.S. Marshals Service (collectively, the "Federal Officers"),[1] are enjoined from arresting, threatening to arrest, or using physical force (as explained below) directed against any person who they know or reasonably should know is a Protest Medic (as explained above), unless authorized under Or. Rev. Stat. § 133.235 or Or. Rev. Stat. § 133.245.

3.     The Police are further enjoined from using physical force directly or indirectly targeted at a Protest Medic (as explained above) when the medic is providing medical care to an individual and poses no threat to the lives or safety of the public or the Police. Physical force includes, but is not limited to, the use of tear gas, pepper spray, bear mace, other chemical irritants, flash-bang devices, rubber ball blast devices, batons, rubber bullets, and other impact munitions.

4.     For purposes of this Order, the Police are enjoined from requiring such properly identified (*see supra*, number 1) Protest Medics to disperse or move with demonstrators following the issuance of an order to disperse or move, when a medic is providing medical care to an individual. Further, if a Protest Medic is providing medical care to an individual, the Police shall not use the Protest Medic's decision to not disperse or move with demonstrators following the issuance of an order to disperse or move as any basis, including either "reasonable suspicion" or "probable

---

[1]        Plaintiffs refer to all Defendants collectively as "the Police."

2-    MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

cause," to establish that the medic is or has committed a crime. Such persons shall, however, remain bound by all other laws.

5.      The Police are further enjoined from seizing any medical equipment, first aid supplies, or other materials necessary for the Protest Medics to administer medical care, if the Police know or reasonably should know that those materials are the property of a Protest Medic (as described in number 1, above), and unless the Police also are lawfully seizing the Protest Medic to whom the materials belong.

6.      The Police are further enjoined from ordering a Protest Medic to stop treating an individual; or ordering a Protest Medic to disperse or move when they are treating an individual, unless the Police also are lawfully seizing that person consistent with this Order.

7.      For purposes of this Order, the Police shall not be liable for harm from any crowd-control devices, if a Protest Medic was incidentally exposed to those crowd-control devices.

8.      In the interest of justice, Plaintiffs need not provide any security and all requirements under Rule 65(c) of the Federal Rules of Civil Procedure are waived.

9.      This Order shall expire fourteen (14) days after entry, unless otherwise extended by stipulation of the parties or by further order of the Court.

10.     The parties shall confer and propose to the Court a schedule for briefing and hearing on whether the Court should issue a preliminary injunction.

This Motion—with its supporting materials—confirms that Plaintiffs' requested TRO is necessary, because "immediate and irreparable injury, loss or damage will result to the movant[s] before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). As their enclosed Memorandum of Law

3-   MOTION FOR TEMPORARY RESTRAINING ORDER
     AND ORDER TO SHOW CAUSE WHY PRELIMINARY
     INJUNCTION SHOULD NOT ENTER

     **Perkins Coie LLP**
     1120 N.W. Couch Street, 10th Floor
     Portland, OR  97209-4128
     Phone:  503.727.2000
     Fax:  503.727.2222

details, Plaintiffs have established that (i) Defendants' conduct threatens irreparable harm to Plaintiffs; (ii) Plaintiffs are likely to succeed on the merits of their claims; (iii) the balance of harms weighs in favor of granting the TRO; and (iv) the public interest favors issuing a TRO. Thus, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter the requested TRO.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiffs ask this Court to enjoin the City of Portland, the Portland Police Bureau, and their agents and employees (collectively, the "Portland Police"), the Department of Homeland Security, the U.S. Marshals Service, and their agents and employees (collectively, the "Federal Officers"), from exerting threats and violence against protest medics who are providing care and comfort to the hundreds, and many times thousands, of people protesting nightly in downtown Portland over the murder of George Floyd and against police violence generally.

Plaintiffs are volunteer protest medics who, in the face of tear gas, rubber bullets, and other munitions, exercise their constitutional rights of free speech by providing care and support to the protesters demonstrating for the cause of equal treatment and absolute equality under the law. Plaintiffs also exercise their free expression rights by helping create and facilitate an environment where protesters can more securely and freely exercise their own free speech rights.

In response, the Portland Police and the Federal Officers have employed excessive force, targeting protest medics, preventing them from administering medical care to protesters, and seizing Plaintiffs' supplies—in violation of well-established First and Fourth Amendment rights. Defendants' conduct is causing Plaintiffs and the public irreparable harm. As demonstrated in the attached

4-    MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

declarations, the police are using excessive force to retaliate against Plaintiffs and numerous other protest medics for providing medical aid to protesters injured by police and federal officers.

Targeting individuals for engaging in protected expressive activities violates the First Amendment, and the Defendants' unlawful conduct should be enjoined immediately. This is because Defendants' conduct is causing irreparable, immediate harm. Daily protests continue and show no sign of abating. And each day that passes without relief further denies Plaintiffs and other medics their constitutional rights to support those demonstrating and to be free from unlawful searches and seizures. The requested TRO is necessary to ensure that protest medics can care for others without fear of police violence.

## II.     FACTS

### A.     Protest Medic Groups Formed to Create a Safer Environment for Protesters Seeking to Peacefully Protest

Minneapolis police officer Derek Chauvin murdered George Floyd on May 25, 2020. Only two months prior, police officers in Louisville, Kentucky, murdered Breonna Taylor as she lay in her own bed. Ms. Taylor and Mr. Floyd were the latest among many dozens of Black citizens killed by police officers in the United States in just the last few years. The murders of Mr. Floyd and Ms. Taylor sparked national and international protests in support of Black lives and against systemic racism in American policing—including in Portland, where protests have been ongoing for more than 50 days and show no sign of slowing down. Declaration of Christopher Wise in Support of Plaintiffs' Motion for Temporary Restraining Order ("Wise Decl.") ¶¶ 3-4.

Protests in Portland have been largely peaceful. *See* Declaration of Michael Martinez in Support of Plaintiffs' Motion for Temporary Restraining Order

5-   MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

("Martinez Decl.") ¶ 7-8, 14-17; Declaration of Dr. Catherine Morgans in Support of Plaintiffs' Motion for Temporary Restraining Order ("Dr. Morgans Decl.") ¶¶ 3-7. Yet, on many nights, Defendants have responded with violent force. They have shoved protesters to the ground, beaten them with truncheons, shot them in the head with rubber bullets and other impact munitions, and sprayed them in their eyes with bear mace at dangerously close ranges. *E.g.*, Wise Decl. ¶¶ 25; Martinez Decl. ¶ 28. Since the protests began, it has been a rare night when Defendants do not deploy tear gas into crowds ranging from dozens to hundreds of people. Declaration of Christopher Durkee in Support of Plaintiffs' Motion for Temporary Restraining Order ("Durkee Decl.") ¶ 17; Martinez Decl. ¶ 15.

As the protests in Portland have continued, groups of protesters, including Plaintiffs, organized in teams and groups to provide medical aid to the protesters as they exercised their free expression rights. *See* Declaration of Jeff Paul in Support of Plaintiffs' Motion for Temporary Restraining Order ("Paul Decl.") ¶11; *see also* Dr. Morgans Decl. ¶ 17. Plaintiffs, themselves passionate about the cause of eliminating brutality against Black lives at the hands of police, decided to exercise their free expression rights through their assistance to others. Declaration of Savannah Guest in Support of Plaintiffs' Motion for Temporary Restraining Order ("Guest Decl.") ¶¶ 5, 8; Durkee Decl. ¶ 10; Martinez Decl. ¶ 19; Wise Decl. ¶ 4. They gathered medical supplies, clearly identified themselves as citizens offering aid to injured protesters, Martinez Decl. ¶ 23-24; Durkee Decl. ¶ 9; Guest ¶ 10, and went downtown to have their own voices heard through their service to others. Martinez Decl. ¶ 22; Durkee Decl. ¶¶ 9-11; Guest Decl. ¶¶9-10.

6-   MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**B.    This Court Intervenes and Issues a Temporary Restraining Order, Enjoining the Portland Police From Using Excessive Force Against Protesters**

Because of the excessive use of violent force by the Portland Police, this Court had to intervene and issue an injunction. On June 9, 2020, Chief Judge Marco Hernandez issued a temporary restraining order against the Portland Police. *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ, 2020 WL 3078329 (D. Or. Jun. 9, 2020). In that order, Judge Hernandez held that, because there was no evidence that the plaintiffs (protesters) had engaged in "criminal activity" and "only engaged in peaceful and non-destructive protest," the use of tear gas against them by the Portland Police likely resulted "in excessive force contrary to the Fourth Amendment." *Id.* at *3. Therefore, Judge Hernandez enjoined the Portland Police from using tear gas against peaceful protesters unless "the lives or safety of the public or the police are at risk." *Id.* at *4.

**C.    Federal Officers Arrive in Portland**

In an apparent attempt to circumvent Chief Judge Hernandez's order, the Portland Police began to rely on federal law enforcement for tear-gas (and other crowd-control devices) deployment. *See* Durkee Decl. ¶19 (describing an especially violent, tear-gas filled night). Starting around July 4, protest attendees have had to contend with violence from federal officers of the Department of Homeland Security ("DHS") and the U.S. Marshals Service ("USMS").[2] *See* Durkee Decl. ¶ 23 (describing distinctive uniform of Federal Officers). Purportedly acting under the color of Executive Order 13933, which declared that DHS would provide personnel

---

[2] *See* Press Release, Department of Homeland Security, DHS Announces New Task Force to Protect American Monuments, Memorials, and Statues, (July 1, 2020) *available at* https://www.dhs.gov/news/2020/07/01/dhs-announces-new-task-force-protect-american-monuments-memorials-and-statues#; *see also* Press Release, Department of Homeland Security, Federal Protective Service Statement on Portland Civil Unrest, (July 5, 2020), *available at* https://www.dhs.gov/news/2020/07/05/fps-statement-portland-civil-unrest.

7-    MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

to "assist with the protection of Federal monuments, memorials, statues, or property," DHS and the USMS have deployed special forces in Portland, or otherwise created policing units for deployment to Portland. These Federal Officers use many of the same weapons and tactics against protesters that the Portland Police had already been deploying for over a month, some of which were restricted by Chief Judge Hernandez's order. *See* Guest Decl. ¶ 12 (describing tear gas deployment by Federal Officers).

### D. This Court Intervenes Again and Issues a Temporary Restraining Order, Enjoining the Federal Officers From Using Excessive Force Against Journalists

In light of the Portland Police's seeming attempts to avoid Chief Judge Hernandez's order, on July 23, 2020, Judge Michael Simon granted a group of legal observer and journalist plaintiffs a temporary restraining order. *Index Newspapers LLC v. City of Portland*, No. 3:20-cv-1035-SI (D. Or. Jul. 23, 2020). In that case, which is similar to this one, the Court found that the plaintiffs, by showing that "they were identifiable as press, were not engaging in any unlawful activity or protesting, were not standing near protestors, and yet were subject to violence by federal agents," had "provide[d] sufficient evidence of retaliatory intent to show, at the minimum, serious questions going to the merits" of the plaintiffs' First Amendment retaliation claim. *Id.* Therefore, the Court enjoined the defendants' direct attacks on journalists and legal observers. *Id.*

### E. Plaintiffs Offer Aid and Are Targeted by Police

Plaintiffs are all protest medics who have routinely attended the Portland protests to provide medical care to protesters and condemn racist police violence. Plaintiffs' very presence at the protests is an act of peaceful resistance: they seek to make people feel safe while attending lawful demonstrations, demanding change.

8- MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Plaintiffs express that "protesters have a right to protest safely and without fear of police violence." Martinez Decl. ¶ 19. Plaintiffs' service as protest medics also sends a clear message to the police: we will not allow your violence to prevent people from protesting your violence. Martinez Decl. ¶ 19; Durkee Decl. ¶ 10.

As protest medics, Plaintiffs offer a range of services that empower protesters to keep standing up for their values, journalists to keep reporting on the protests, and other medics to keep rendering aid at the protests. They equip protest attendees with eye wash and eye wipes in anticipation of tear-gas attacks, offer personal protective equipment so protest attendees can observe COVID-19 physical-distancing protocols, feed and hydrate protest attendees, and render medical aid when police injure protest attendees. *See* Paul Decl. ¶¶ 6, 9; *see also* Hubbard Decl. ¶ 7; Martinez Decl. ¶¶ 20, 23-24.

To ensure that Defendants and protesters recognize Plaintiffs as protest medics, they wear clothing designed to communicate that they are there to render aid to injured protesters. For example, Plaintiffs wear clothing with the word "medic" and the red-cross medic symbol painted across the back, as well as brightly colored duct-taped medic symbols on both upper arms and the chest. Wise Decl. ¶ 9; Guest Decl. ¶7; Durkee Decl. ¶¶ 9-10. The crosses are identifiable during the day and at night and can be seen from any angle. Hubbard Decl. ¶ 5; Guest Decl. ¶7; Durkee Decl. ¶ 9. Additionally, Plaintiffs openly carry medical supplies on their persons at all times. *See* Wise Decl. ¶ 9; Durkee Decl. ¶ 13 (carrying large backpack holding trauma kit); Guest Decl. ¶ 10 (same).

Though Plaintiffs engage in nonviolent behavior and pose no threat to the public, officers, or city or federal property, each Plaintiff has been repeatedly intimidated, harassed, and assaulted by Defendants. While attempting to render

9-   MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

medical aid to those in need, Plaintiffs have been tear gassed by the Portland Police and the Federal Officers—including having tear gas canisters shot or thrown in their direction. Wise Decl. ¶¶ 20-30; Guest Decl. ¶¶ 17-21, 29; Durkee Decl. ¶¶ 22-26; Martinez Decl. ¶ 32. *See also* Hubbard Decl. ¶ 8. Defendants also have shot Plaintiffs with rubber bullets, while Plaintiffs fulfilled their duties as volunteer protest medics. Hubbard Decl. ¶ 10.

Despite Plaintiffs wearing identifying clothing, officers have specifically targeted them and other protest medics. For example:

- A Portland Police officer sprained Plaintiff Chris Wise's shoulder by shoving him into the ground, as Wise (while wearing identifiable clothing) was complying with the officer's orders to move from the area by walking backwards with his hands raised. Wise Decl. ¶¶ 9, 26. In addition, Wise, after verbally identifying himself as a medic, was aimed at and shot with a tear gas canister that struck him in the head. *Id.* at ¶ 29.

- While standing off to the side of a group of protesters, Peyton Dully Hubbard was targeted by at least three agents after the officers gestured to one another to aim their laser sights at her and fired at least six rubber bullets at her, injuring her. Hubbard Decl. ¶ 10. Hubbard, even while draped in contrasting high-gloss, red duct tape crosses has been shot at so many times that a fellow protester provided her with a makeshift shield. *Id.* at ¶¶ 5, 11. Hubbard was also nearly struck by a Portland Police car when she attempted to ask the police for help after a protester had been struck by a car and was severely injured. *Id.* at ¶9.

- A Portland Police officer arrested Plaintiff Michael Martinez while he was standing at a medics' station organized by students at Oregon Health & Science University ("OHSU"). Martinez Decl. ¶¶ 33-40.

- Multiple Federal Officers ganged up on and (while being videotaped) assaulted Plaintiffs Kit Durkee and Savannah Guest. Video here: https://twitter.com/stoggrd/status/1282432033533210625. As is apparent from the video, during that incident, one Federal Officer stabbed Durkee's chest with a riot baton while another shoved Durkee

10- MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

to the ground while she was retreating. Guest Decl. ¶¶ 17-21; Durkee Decl. ¶¶ 22-26. A Federal Officer also threatened to hit Guest after she fell down and was attempting to pick up her medical supplies. *Id.* Another Federal Officer struck Guest in the hip and knee with a riot baton. Guest Decl. ¶ 20. More recently, Federal Officers targeted Savannah Guest and Kit Durkee with tear gas cannisters and pepper balls as they helped wounded protesters move off the streets and out of the way of advancing Officers. Durkee Decl. ¶ 12; *see* Guest Decl. ¶ 23 (describing feelings of despondency and mistrust after being targeted).

In each of these incidents, it was clear that the visibly identifiable protest medics were actively rendering medical aid or standing by "on call," ready to provide aid. It also is clear that, at the time of these assaults, Plaintiffs posed no risk to the lives or safety of the public or officers.

In addition to specifically targeting Plaintiffs as protest medics, the Portland Police and Federal Officers routinely use indiscriminate force against entire crowds of people—which includes protest medics, but also children, babies, journalists, legal observers, the nearby houseless population, people in nearby homes and places of work, bystanders, and moms and dads coming out to have their voices heard. And this use of force has had a clear chilling effect: Despite their desire to continue serving as protest medics each day, Plaintiffs have been prevented from attending protests or have chosen to attend them less frequently, in response to the very real possibility that they may be arrested or seriously injured by Defendants. Guest Decl. ¶¶ 23-31; Durkee Decl. ¶¶ 29-37.

## III.   ARGUMENT

The evidence here justifies entry of a TRO to protect Plaintiffs as protest medics. The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Under the traditional four-factor test for a TRO or preliminary injunction, this Court must grant Plaintiffs' motion if they show that (1) Plaintiffs are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) the requested injunction is in the public interest. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Although not dispositive by itself, the first of these factors— likelihood of success on the merits—is the "most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). But with respect to the relationship between factors (1) and (2), in the Ninth Circuit, plaintiffs who show that the balance of hardships tips "sharply" in their favor need only raise "serious questions" going to the merits. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see also Warsoldier v. Woodford*, 418 F.3d 989, 993-94 (9th Cir. 2005). In other words, "'the greater the relative hardship to [Plaintiffs], the less probability of success must be shown.'" *Warsoldier*, 418 F.3d at 994 (quoting *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999)). Here, Plaintiffs satisfy either bar.

### A. Plaintiffs are likely to succeed on the merits of their First Amendment claim.

The First Amendment to the U.S. Constitution "reflects a 'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open.'" *Boos v. Barry*, 485 U.S. 312, 318 (1988) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Government officials—here, federal and local law enforcement officers—may not retaliate against an individual for engaging in constitutionally protected speech. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006).

12- MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

To succeed on their First Amendment retaliation claims, Plaintiffs must show that (1) they engaged in constitutionally-protected speech; (2) Defendants' actions would "chill a person of ordinary firmness" from continuing to engage in constitutionally-protected speech; and (3) Plaintiffs' engagement in protected speech was a "substantial motivating factor" in Defendants' conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016); *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). In so doing, however, Plaintiffs "need only show that the defendant[s] 'intended to interfere' with the plaintiff[s'] First Amendment rights and that [they] suffered some injury as a result; the plaintiff[s are] not required to demonstrate that [their] speech was actually suppressed or inhibited." *Ariz. Students Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citing *Mendocino*, 192 F.3d at 1300)). Here, Plaintiffs establish a high likelihood of success on the merits as to all three elements of their First Amendment claim.

## 1. Plaintiffs engaged in constitutionally protected speech while serving as volunteer protest medics.

Plaintiffs have met the first element for establishing a First Amendment claim—engagement in constitutionally protected speech. Specifically, under the facts of this case, Plaintiffs have shown that, as protest medics, they exercised their constitutional right to protest and engage in expressive conduct by providing medical assistance to those taking part in the large and continuing demonstrations in downtown Portland. Plaintiffs have engaged in constitutionally protected speech as participants in protests for Black lives. Those protests began in the wake of the murders of George Floyd, Breonna Taylor, Ahmaud Arbery, Monika Diamond, and countless others. Plaintiffs and protesters attend the protests to express their support for eradicating "systemic racism, especially as it pertains to policing and

police violence." Martinez Decl. ¶ 3; *see also* Wise Decl. ¶ 4; Durkee Decl. ¶ 4, 7, 10; Guest Decl. ¶ 3, 5, 8; Paul Decl. ¶ 4, Dr. Morgans Decl. ¶ 8. Since they started protesting in May and June 2020, Plaintiffs have fought for justice for Black people across the United States.

Protesting is protected speech. The "classically protected" right to protest lies at the heart of the First Amendment, *Boos*, 485 U.S. at 318, and, thus, activities "such as 'demonstrations, protest marches, and picketing'" are forms of speech protected under the Constitution. *Black Lives Matter Seattle-King Cty. v. City of Seattle et al.*, No. 2:20-cv-00887-RAJ, 2020 WL 3128299, at *2 (W.D. Wash. June 12, 2020) (quoting *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996)). The recent protests have been passionate and emotional, as protesters nationwide seek to radically change the way policing is conducted in our communities and country, all while actively opposed by the very group they are attempting to challenge with their voices. *See generally City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) (explaining that yelling obscenities and threats at a police officer is still protected speech under the First Amendment).

In addition to traditional protesting, rendering medical aid to support and advance a protest is itself a form of constitutionally protected expression: The "constitutional protection for freedom of speech 'does not end at the spoken or written word.'" *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). Certain expressive conduct constitutes a protected form of speech under the First Amendment, "when 'it is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood.'" *Corales v. Bennett*,

14- MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

567 F.3d 554, 562 (9th Cir. 2009) (quoting *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999)); *see also Johnson*, 491 U.S. at 404.

Applying those principles, courts have recognized that providing services, supplies, or support to individuals as part of a movement for political, policy, and social change, is expressive conduct and, thus, constitutionally protected speech. *See, e.g., Fort Lauderdale Food Not Bombs*, 901 F.3d at 1240-41 (ruling that a nonprofit organization's sharing of food in visible spaces intended to convey a particular message that collective food sharing helps to eradicate hunger and poverty); *Abay v. City of Denver*, No. 20-cv-01616-RBJ, 2020 WL 3034161, at *3 (D. Colo. June 5, 2020) (finding that protesters, including protest medics who "attempt[ed] to render treatment to injured protest[e]rs," as part of an "organized political protest" against police brutality, engaged in constitutionally protected speech).

In furtherance of their expression, Plaintiffs render medical aid to support and advance the voices of the other protesters. They engage in expressive conduct protected under the First Amendment by lending medical services, supplies, and treatment to other protesters in order to "send a message [ ] that protesters have a right to protest safely and without fear of police violence." Martinez Decl. ¶ 19; *see* Wise Decl. ¶ 6 ("I serve as a medic to further the protests themselves, including the overall purpose and message of the protests"); Durkee Decl. ¶ 7 ("I decided to get involved in the Portland protests as a medic for the protesters, not just because I feel strongly that systemic racism exists and leads to police brutality against Black people, but because I knew that my medical training could assist both the protesters and the larger movement"); Guest Decl. ¶ 5 ("I was concerned that the protesters in Portland were very unprepared to treat the types of injuries that the police were

15- MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

inflicting on them . . . . [so] I decided to get involved . . . as a medic for the protesters
. . . because I knew that my medical training could assist both the protesters and
the larger movement").

Plaintiffs are engaging in constitutionally protected speech because, as
protest medics, they intend to convey "a particularized message." *Corales*, 567 F.3d
at 562. Plaintiffs began organizing as protest medics "to take a tangible stand
against the nightly police brutality [they] witness[ed] and experienc[ed]" in
Portland. Martinez Decl. ¶ 19. In particular, Plaintiffs serve as protest medics "to
send a message that protesters have a right to protest safely [] without fear of
violence" and to "make sure victims have access to care and suffer as little harm as
possible." *Id.* They know that their "medical training [can] assist both the protesters
and the larger movement" for Black lives. Durkee Decl. ¶ 7. Plaintiffs have
witnessed federal and local law enforcement officials unleash "tear gas, pepper
spray, and other police violence" on protesters and it is their understanding that
these officials sometimes are "instructing ambulances not to enter [] protest
area[s]." Martinez Decl. ¶ 20; Dr. Morgans Decl. ¶ 20. Thus, they espouse the
political belief that—in lieu of trusting law enforcement officials to ensure the
safety of protesters exercising their First Amendment rights—they must establish
and maintain a community to aid, replenish, and support protesters themselves.
Martinez Decl. ¶ 19; Durkee Decl. ¶ 7; Wise ¶ 6. As protest medics, they do this in
part by:

- Providing direct care to protesters and support to other medics who
  care for and treat protesters, Wise Decl. ¶¶ 12-17, Martinez Decl. ¶¶
  26, 30; Durkee Decl. ¶¶ 10-11;

- Carrying and distributing to protesters medical supplies, such as
  gauze, bandages, antibiotic ointments, tape, ear plugs, and over-the-

16- MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

counter pain medications, Martinez Decl. ¶ 23, Wise Decl. ¶ 9, Dr. Morgans Decl. ¶ 11; Durkee Decl. ¶ 13; Guest Decl. ¶ 10;

- "[C]arr[ying] backpacks and distribut[ing] food and water to protesters," Martinez Decl. ¶ 22; Durkee Decl. ¶ 13; Guest Decl. ¶ 10;

- Establishing a "medics' station" in Chapman Square in downtown Portland "under a tent [clearly] marked with a medic symbol and other first aid signs," Martinez Decl. ¶ 22, Dr. Morgans Decl. ¶ 14;

- Offering protesters "wipes and saline solution or other eye wash to help rinse peoples' eyes following a tear gas attack," Martinez Decl. ¶ 23;

- Offering protesters "personal protective equipment such as masks, gloves, and hand sanitizer" to ensure protesters can "observe recommended safety measures" during the COVID-19 pandemic, Martinez Decl. ¶ 23; and

- Attempting to "deescalate situations that could or have turned violent" and "diffuse tensions," including when an automobile driver plowed their car through a group of protesters and fired gunshots, Wise Decl. ¶¶ 18, 26; *see also* Durkee Decl. ¶ 10 (keeping morale high).

Plaintiffs' message at the protests is one that is particularized and specific to protest medics, as a discrete category of individuals attending the protests. Plaintiffs have clearly established themselves as medics within a community that attends the protests to aid and support protesters, and protesters recognize them as such. *See* Paul Decl. ¶ 11. The OHSU medics' station Martinez attends is stocked with medical supplies like gauze and bandages and is clearly marked with an OHSU banner and first aid signs. Martinez Decl. ¶ 22. Wise, Durkee, and Guest wear clearly-identifiable clothing, equipment, and insignia as they traverse demonstrations across Portland to care for protesters. Guest Decl. ¶ 7; Durkee Decl. 10; Wise Decl. ¶ 9. Plaintiffs, in their role as protest medics, have been an unmistakable presence at protests each night, verbally identifying themselves as

17- MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

medics, carrying medical supplies and rendering care and treatment to protesters injured by tear gas, pepper spray, rubber bullets, and other chemical irritants and munitions deployed by law enforcement officials. *See* Wise Decl. ¶¶ 9, 13-17; Guest Decl. ¶¶ 11-12.

### 2. Defendants' actions would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech.

Plaintiffs also  establish a likelihood of success on the merits as to the second element of their First Amendment retaliation claim—that Defendants' actions would chill a person of ordinary firmness—because (as should come to no one's surprise) physical violence and deployment of chemical irritants and munitions by law enforcement would chill a person of ordinary firmness from continuing to participate in protests as medics. "'Ordinary firmness' is an objective standard that will not 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in [their] protected activity.'" *Black Lives Matter-Seattle*, 2020 WL 3128299, at *3 (quoting *Mendocino*, 192 F.3d at 1300). Here, although Plaintiffs have continued, and will continue, to serve as protest medics, under the applicable objective standard, Defendants' repeated behavior almost certainly would chill a person of ordinary firmness from participating in the protests.

This Court and others have repeatedly confirmed that what Plaintiffs endure nightly from Defendants would chill the First Amendment rights of a person of ordinary firmness:

- A police officer's deployment of pepper spray caused a protester severe anxiety, and thus would chill the protester's rights, *Drozd v. McDaniel*, No. 3:17-cv-556-JR, 2019 WL 8757218, at *5 (D. Or. Dec. 19, 2019);

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

- Law enforcement officials' use of "crowd control weapons" like tear gas and pepper spray would chill person of ordinary firmness from protesting, *Black Lives Matter-Seattle*, 2020 WL 3128299, at *3;

- A police force's use of "physical weapons and chemical agents" against protesters would chill speech by creating in demonstrators a "legitimate and credible fear of police retaliation," *Abay*, 2020 WL 3034161, at *3; and

- A police officer's deployment of tear gas would chill a person of ordinary firmness from engaging in protected activities under the First Amendment, *Quraishi v. St. Charles Cty., Mo.*, No. 4:16-CV-1320 NAB, 2019 WL 2423321, at *6 (E.D. Mo. June 10, 2019).

Because of the chilling effect that an indiscriminate use of force presents, "courts have held that the proper response to potential and actual violence is for the government to ensure an adequate police presence, and to arrest those who actually engage in [violent] conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure." *Collins v. Jordan*, 110 F.3d at 1372 (citing *Cox v. Louisiana*, 379 U.S. 536, 551 (1965); *Kunz v. New York*, 340 U.S. 294-95 (1951)).

Defendants have unquestionably engaged in conduct that would chill a person of ordinary firmness from continuing to participate in protests as medics. As in the cases cited above, Defendants have deployed tear gas, pepper spray, and other chemical irritants on Plaintiffs at close range, using tactics like "kettling" to "tear gas protesters from all angles" and "cut[] off any path for escape." Martinez Decl. ¶ 12; Wise Decl. ¶ 28; Dr. Morgans Decl. ¶¶ 3-4. These irritants are deeply invasive and painful, causing the eyes, nose, and (sometimes) even the skin to burn and swell. *See* Ctrs. for Disease Control & Prevention, *Facts About Riot Control Agents* (Apr. 4, 2018), https://emergency.cdc.gov/agent/riotcontrol/factsheet.asp#:~:text=Riot%20control%20agents%20(sometimes%20referred,to%20be%20riot%20control%20agents. Protest

medics exposed to these irritants find it hard to breathe, feel burning or pain in their chest and lungs, and experience difficulty seeing, *see id.*, as was the case for Plaintiffs. Martinez Decl. ¶ 9; Wise Decl. ¶ 25; Guest Decl. ¶ 13; Durkee Decl. ¶ 12, 18, 34 ("We decided not to attend the protest because we wanted more protective gear before going out"). Those internal biological reactions alone prevent Plaintiffs from performing their work as protest medics.

Defendants have also deployed munitions—such as rubber bullets and flash bangs—directly against Plaintiffs, sometimes while they were rendering care and treatment to protesters and bystanders. Guest Decl. ¶¶ 13-14; Durkee Decl. ¶ 15; Martinez Decl. ¶¶ 32; Wise Decl. ¶¶ 22. Especially when deployed in close contact, these munitions bruise and even puncture the skin, fracture bones, and cause blindness. Plaintiffs have been attacked, beaten, clubbed, and harassed by federal and local law enforcement officials. *See* Wise Decl. ¶¶ 22, 24-26, 28-30; Durkee Decl. ¶¶ 18, 19-28, Guest Decl. ¶¶ 13, 15-22. This conduct has caused grave, physical injuries. *See* Wise Decl. ¶¶ 22-23 ("[A] Portland police officer shot me in the shin with a rubber bullet . . . . penetrat[ing] my skin and expos[ing] my shin bone . . . . [and] [m]y wound later became infected . . . . [that] still has not closed, let alone healed"); Guest Decl. ¶¶ 29-31. Those injuries have forced Plaintiffs to stay home and heal, instead of continuing to serve as protest medics (as they desire to do). Wise Decl. ¶ 27; Durkee Decl. ¶ 32, 34; Guest Decl. ¶ 28. Furthermore, witnessing Defendants' use of chemical irritants, munitions, and long-range acoustic devices commonly deployed by the United States Armed Forces against enemy combatants in foreign wars, against Americans on domestic soil, has caused lasting physical and emotional trauma for Plaintiffs. *See* Durkee Decl. ¶ 19 ("The indiscriminate brutality of the police and federal agents—especially the shooting of [protester]

20-  MOTION FOR TEMPORARY RESTRAINING ORDER
     AND ORDER TO SHOW CAUSE WHY PRELIMINARY
     INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Donavan La Bella [by law enforcement]—has had a significant negative impact on my ability to continue to serve as a medic . . . . I could possibly lose my life"). For those reasons, Plaintiffs have established a high likelihood that Defendants' actions would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech.

### 3.    Plaintiffs' protected activities were a substantial motivating factor in Defendants' conduct.

Plaintiffs also establish a high likelihood of the existence of the third and final element of their First Amendment retaliation claim—that protected activities were a substantial and motivating factor in Defendants' conduct. This element requires a "nexus between [Defendants'] actions and an intent to chill speech." *Cantu v. City of Portland*, No. 3:19-cv-01606-SB, 2020 WL 295972, at *7 (D. Or. June 3, 2020) (quoting *Ariz. Students Ass'n*, 824 F.3d at 867). Plaintiffs may establish that element through either direct or circumstantial evidence: "The use of indiscriminate weapons against all protesters—not just [] violent ones—supports the inference that [law enforcement officials'] actions were substantially motivated by Plaintiffs' protected First Amendment activity." *Black Lives Matter-Seattle*, 2020 WL 3128299, at *4; *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) (citing *Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002)).

Here, because (1) Plaintiffs consistently wore distinctive and visible markings identifying them as medics, (2) did nothing to threaten the safety of the public or police, and (3) despite those facts, Defendants nonetheless specifically targeted Plaintiffs for violence, the Court may infer that Defendants did so with an intent to prevent Plaintiffs from expressing themselves as protest medics. *See Index Newspapers*, No. 3:20-cv-1035-SI, at 12, ECF 84 (D. Or. July 23, 2020) (holding that the plaintiffs established a sufficient nexus and showing to grant a restraining

21-  MOTION FOR TEMPORARY RESTRAINING ORDER
     AND ORDER TO SHOW CAUSE WHY PRELIMINARY
     INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

order because they (1) "were identifiable as press," (2) were not engaging in any threatening activity, and (3) "yet were subject to violence by federal agents").

Plaintiffs, who wear clothing with markings clearly identifying them as providing medical aid, cite numerous instances in which federal and local law enforcement officials indiscriminately, and at close range, unleashed chemical irritants, deployed munitions, and engaged in physical violence specifically against them. *See* Wise Decl. ¶¶ 22, 24-26, 28-30; Durkee Decl. ¶¶ 10, 19-28; Guest Decl. ¶¶ 13, 15-22; *see also* Hubbard Decl. ¶ 8 (officer dropping tear gas canister and flash bang grenade into small enclosed space). From that, it is reasonable to infer that the protests, and their overall message of opposing police brutality, are a substantial and motivating factor in the excessive and indiscriminate use of force. Plaintiffs have engaged in protests that specifically seek to eradicate police brutality and fundamentally transform the role that law enforcement plays in our society, and they have chosen to express their views through their particular service. Durkee Decl. ¶ 3; Guest Decl. ¶¶ 3-4; Wise Decl. ¶ 4-6. That message, if successful, is one that ultimately will have a negative impact on the authority and power that Defendants wield. Given that Plaintiffs are clearly identified, have not engaged in any threatening behavior, and that Defendants have used direct force to suppress the speed at which Plaintiffs perform their medical services, it is reasonable to infer that Defendants sought, and seek, to suppress Plaintiffs' particularized form of speech. Defendants' use of indiscriminate weapons against Plaintiffs directly, and their acts to target Plaintiffs as they assist others, establishes a high likelihood that Plaintiffs' protected activities were a substantial motivating factor in Defendants' conduct. Therefore, the Court should grant Plaintiffs' motion for a TRO.

22-  MOTION FOR TEMPORARY RESTRAINING ORDER
     AND ORDER TO SHOW CAUSE WHY PRELIMINARY
     INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**B.    Plaintiffs also are likely to succeed on the merits of their Fourth Amendment claim.**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Here, Plaintiffs clearly establish a likelihood of success on the merits that federal and city law enforcement officers violated the Fourth Amendment by using excessive force against the Plaintiffs and by unlawfully seizing their medical equipment.

**1.    Defendants used excessive force against Plaintiffs.**

Plaintiffs have established a high likelihood that Defendants used excessive force against them, in violation of the Fourth Amendment. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer by means of physical force or show of authority terminates or restrains his freedom of movement through means intentionally applied." *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (quoting *Brendlin v. California,* 551 U.S. 249, 254 (2007). A law enforcement officer's use of force is excessive and violates the Fourth Amendment when it was "objectively unreasonable in light of the facts and circumstances confronting the officer." *Graham v. Connor*, 490 U.S. 386, 397 (1989). To determine whether the use of force was unreasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing governmental interests at stake." *Id.* at 396. "The force which was applied must be balanced against the *need* for that force; it is the need for force which is at the heart of the consideration" of the reasonableness inquiry. *Alexander v. City & Cty. of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994) (emphasis in original). In this case,

Defendants' seizure through use of force against Plaintiffs was not objectively reasonable.

### a.    Plaintiffs were seized under the Fourth Amendment.

Defendants "seized" Plaintiffs under the Fourth Amendment by shooting them with tear gas, rubber bullets, and stun grenades, and beating them with batons—that is, by using force to terminate their movements. Under the Fourth Amendment, an officer's intent to specifically target an individual is irrelevant; so long as the use of force that terminates an individual's movement is intentional, a seizure occurs even where there is "an absence of concern regarding the ultimate recipient of the government's use of force." *See Nelson*, 685 F.3d at 876 (explaining that a plaintiff was seized under the Fourth Amendment where he had been hit by a projectile intentionally fired towards a group of which he was a member, although plaintiff had not been the specific object of the force). Here, not only did Defendants terminate Plaintiffs' movements by shooting them with tear gas, rubber bullets, and stun grenades, and beating them with batons, *See* Martinez Decl. ¶ 32-40; Wise Decl. ¶ 22, 24-26, 28-30; Durkee Decl. ¶¶ 15, 19-28; Guest Decl. ¶¶ 13, 15-22; Hubbard Decl. ¶¶ 7-8, 10, but Defendants also targeted Plaintiffs both as individuals and as members of a crowd. *See, e.g.,* Guest Decl. ¶¶ 11, 13-14; Durkee Decl. ¶¶ 14-15. Since the officers intentionally targeted and used force against Plaintiffs that inhibited Plaintiffs' movement, Plaintiffs were seized.

### b.    Law enforcement officers used excessive force against Plaintiffs.

Defendants violated Plaintiffs' Fourth Amendment rights by affecting a seizure (as described above) through the use of excessive force. The Ninth Circuit has held that the use of only pepper spray is a serious intrusion into an individual's

24-  MOTION FOR TEMPORARY RESTRAINING ORDER
      AND ORDER TO SHOW CAUSE WHY PRELIMINARY
      INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Fourth Amendment rights, "due to the immediacy and 'uncontrollable nature' of the pain involved." *Nelson*, 685 F.3d at 878 (citations omitted); *see U.S. v. Neill*, 166 F.3d 943, 949 (9th Cir. 1998) (holding that pepper spray is dangerous weapon "capable of inflicting death or serious bodily injury"). Accordingly, deploying chemical irritants such as pepper spray to disperse protesters can constitute unreasonable, excessive force where it is "unnecessary to subdue, remove, or arrest the protestors," even if the protesters have failed to heed a police warning. *Young v. Cty. of L.A.*, 655 F.3d 1156, 1167 (9th Cir. 2011) (citation omitted).

Here, Defendants injured Plaintiffs with chemical irritants and munitions, which caused Plaintiffs immediate and uncontrollable pain. As Plaintiffs cared for wounded protesters, officers temporarily blinded Plaintiffs with tear gas and bear mace and shot rubber bullets that cut through Plaintiffs' skin. Wise Decl. ¶¶ 22-30; Guest Decl. ¶¶ 11, 13, 17, 20; Durkee Decl. ¶¶ 13, 15, 22, 25, 29. When Plaintiffs asked officers if they could provide medical care, officers responded by throwing Plaintiffs to the ground and beating them with batons. Guest Decl. ¶¶ 15, 17-22. As a result of their injuries, Plaintiff Wise suffered a sprained shoulder and was forced to take medical leave from work. Wise Decl. ¶ 26-27. Defendants' actions and the resulting injuries clearly subjected Plaintiffs to immediate and uncontrollable pain. Thus, consistent with *Nelson*, Defendants repeatedly have used excessive force on Plaintiffs, in violation of the Fourth Amendment.

### c.    The use of force against Plaintiffs was not justified.

Plaintiffs have a high likelihood of prevailing on their Fourth Amendment claims because Defendants had no valid justification for taking the extreme actions they did. In assessing the need for force against an individual, the Ninth Circuit considers factors such as "the severity of the crime at issue, whether the suspect

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

poses an immediate threat to the safety of the officers, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir. 1992) (per curiam) (quoting *Graham*, 490 U.S. at 396). Consideration of each of the three factors makes clear that no use of force was warranted against Plaintiffs.

First, the existence and, thus, severity of any crimes by Plaintiffs was nil. Where individuals are not engaged in "serious criminal behavior," that "significantly reduce[s] the governmental interest involved" in the use of force against them. *Nelson*, 685 F.3d at 880. This holds true even where the use of force takes place under circumstances of "general disorder," as the relevant inquiry is whether the individual who was targeted had engaged in criminal activity. *See id.* at 883 (finding that although there were other individuals engaging in violent behavior, because plaintiff himself was not among them, the application of force to plaintiff could not be "justified by the government's interest in stopping any and all disorderly behavior"). Additionally, even if others in the immediate areas are engaging in criminal activity, if the *actual plaintiffs* are not, then a heightened use of force is not justified under the Fourth Amendment. S*ee Don't Shoot Portland*, 2020 WL 3078329 at *3 (granting a TRO on Fourth Amendment grounds because, even though others at the Portland Protests were engaged in criminal activity, "there is no dispute that *Plaintiffs* engaged only in peaceful and non-destructive protest." (Emphasis in original.)). Here, Plaintiffs did not engage in any criminal activity. Instead, Plaintiffs actually attempted to de-escalate activities that would lead to further police agitation. Wise Decl. ¶¶ 18, 26; Guest Decl. ¶¶ 14, 17, 19; Durkee Decl. ¶¶ 10, 24. Therefore, under the first factor, Defendants' use of force was not justified.

26-  MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

As to the second factor, Plaintiffs did not pose any immediate threat to the safety of the officers. Law enforcement officers may not justify use of force against an individual who does not pose an immediate threat to officers' safety merely because of the underlying "tumultuous circumstances." *Nelson*, 685 F.3d at 881 (holding that "the general disorder of the complex cannot be used to legitimize the use of pepper-ball projectiles against non-threatening individuals"). Here, as just explained, Plaintiffs did not pose a threat to anyone's safety, and were subjected to violence even while retreating. Durkee Decl. ¶¶ 14, 24 (describing need to walk backward so that Officers do not strike with batons with backs turned); Guest Decl. ¶¶ 11, 19 (same). In fact, quite the opposite is true: *as protest medics, they were working to ensure and increase public safety*. Therefore, Defendants' use of force against Plaintiffs was not justified by any threat to officers' public safety.

Third and finally, Plaintiffs did not resist or attempt to evade any valid arrest. Where an officer orders a crowd to disperse, a failure to comply immediately does not amount to actively resisting arrest, but "only rise[s] to the level of passive resistance," which "neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Nelson*, 685 F. 3d at 881; *see also Headwaters Forest Def. v. Cty. Of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) (protesters that remained seated in a congressman's office despite officers' orders to disperse had not actively resisted). In such circumstances, the use of force, including the use of pepper spray, is unreasonable. *Nelson*, 685 F.3d at 882 (internal citations omitted).

Here, Plaintiffs were not engaging in any criminal behavior when they were targeted by the officers. Rather, they were engaging in activity that is protected under the First Amendment: peaceably exercising their right to free speech. Wise

27- MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Decl. ¶¶ 3-4, 6, Durkee Decl. ¶ 10; Guest ¶ 8. Further, instead of posing a threat to anyone's safety, Plaintiffs were protecting protesters by providing medical care. *E.g.*, Durkee Decl. ¶¶ 16-17. In fact, Plaintiffs deliberately wore clothes with medical symbols to communicate to law enforcement officers that Plaintiffs were providing medical assistance. Wise Decl. ¶ 9; Hubbard Decl. ¶ 5; Guest Decl. ¶ 7; Durkee Decl. ¶9-10. Yet officers beat Plaintiffs with batons after Plaintiffs asked to provide a wounded man with medical care. Guest Decl. ¶¶ 18-20; Durkee Decl. ¶¶ 23-26. To the extent that Plaintiffs may not have complied immediately with an officer's order to disperse because they were packing up their medical supplies, that does not rise to the level of active resistance that would justify the application of a non-trivial amount of force, particularly when they did not resist arrest.  Martinez Decl. ¶ 39; Guest Decl. ¶ 20; Durkee Decl. ¶ 25.

As Plaintiffs were not engaged in any criminal behavior, creating a threat to officers' safety, or actively resisting arrest, it was not reasonable for officers to use any force against Plaintiffs, let alone the chemical irritants, bullets, and physical force that officers unleashed against them. Plaintiffs have therefore clearly established a likelihood of success on the merits that law enforcement officers violated the Fourth Amendment by using excessive force against Plaintiffs.

### 2. Plaintiffs are likely to establish that law enforcement officers unlawfully seized their property in violation of the Fourth Amendment.

Defendants unlawfully seized Plaintiffs' medical equipment and materials. "Seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984). Such interference violates the Fourth Amendment when it is unreasonable. With limited exceptions, "[a] seizure conducted without a warrant

28- MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

is *per se* unreasonable under the Fourth Amendment." *U.S. v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (quoting *Minn. v. Dickerson*, 508 U.S. 366, 372 (1993)). Further, seizure of property without a warrant is reasonable only when "there is probable cause to associate the property with criminal activity." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 69 (1992). Whether probable cause exists depends on the totality of the circumstances within an officer's knowledge. *Ill. v. Gates*, 462 U.S. 213, 230-31 (1983).

Here, law enforcement officers violated the Fourth Amendment by unreasonably seizing Plaintiffs' medical supplies and medics' station materials. To provide protesters with medical assistance, Plaintiffs had set up a medics' station for several days at the protests with a table, tent, and banner that prominently displayed medic symbols, first aid signs, and the logo for OHSU. Martinez Decl. ¶ 22; Dr. Morgans Decl. ¶ 14. Plaintiffs brought medical supplies to the medics' station, including wipes and saline solution to rinse protesters' eyes after a tear gas attack, gauze and bandages, and personal protective equipment to help protesters observe public health measures, such as masks, gloves, and a hand sanitizer. Martinez Decl. ¶¶ 23-24. On June 13, 2020, law enforcement officers confiscated from Plaintiffs their table, tent, banner, and medical supplies and did not return the items to Plaintiffs. Martinez Decl. ¶ 41; Dr. Morgans Decl. ¶¶ 14-16. Plaintiffs managed to recover their table and some medical supplies from the Portland Police Bureau's outgoing trash, but have not yet received their tent, banner, or the remainder of their medical supplies. Martinez Decl. ¶ 41; Dr. Morgans Decl. ¶ 16. While OHSU owns some of this property, such as the banner, Plaintiffs' possessory interest in the property is sufficient for them to have suffered an injury when the

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

property was seized. *Jacobsen*, 466 U.S. at 113 (defining "seizure" as the interference with an individual's *possessory*, not ownership, interests).

The officers had no plausible reason to associate the medical supplies and medics' table materials with criminal activity, let alone one sufficient to provide probable cause. The medic symbols, first-aid signs, and the logo for OHSU made clear that the table, banner, and tent were part of a medics' table to promote public health and safety. The supplies were also plainly items for medical assistance. Further, Plaintiffs had established and maintained the medics' station at the protests for several days, without causing any concern of criminal activity. Thus, per the totality of the circumstances within the officers' knowledge, the medical supplies and medics' table materials were not associated with criminal activity, but with public safety and health instead. The officers' seizure of the medical supplies and medics' table materials was therefore unreasonable.

As such, Plaintiffs have clearly established a likelihood of success on the merits that law enforcement officers violated the Fourth Amendment by unlawfully seizing Plaintiffs' property.

### 3. Defendants continue to violate Plaintiffs' Fourth Amendment rights.

Defendants continue to use excessive force against Plaintiffs. Wise Decl. ¶ 29; Guest Decl. ¶ 29. Nearly every day that Plaintiffs have participated in the protests, Defendants have beat them, shot them with bullets, or sprayed them with chemical irritants. As a result, Plaintiffs reasonably fear that Defendants will continue to target them with excessive force for rendering medical assistance to protesters. Durkee Decl. ¶ 31 (Defendants' "objective appears to be to inflict so much pain on the protesters, and those trying to medically provide for the protesters, that the protesters and medics like myself forget that we have a right to peacefully protest

30- MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

or forgo that right in favor of safety"). *See* Hubbard Decl. ¶ 14 ("I have had to stay home on some nights due to injuries I have suffered"); Guest Decl. ¶ 26 (noticing dwindling number of protest medics).

Defendants' ongoing violation of the Fourth Amendment has chilled Plaintiffs' efforts at providing medical aid. Martinez Decl. ¶ 43 ("I have dramatically decreased my attendance [at the protests]. . . . as I know from first-hand experience, the police do not need a justifiable reason to arrest any medic—or shoot any medic in the head"); Wise Dec. ¶¶ 32-33 ("I am afraid that continued aggression against medics will force protest medics to choose between either adhering to their training as medical professionals by helping injured individuals (if they are willing and able to), or not intervening to provide care simply because of the fear of suffering their own physical injuries at the hands of police and federal agents. I am concerned about this because it is already happening"); Guest Decl. ¶ 27 ("The brutality of the police and federal officers has had a chilling effect on me. It feels targeted toward medics, to make sure that we are punished for taking care of protesters"); Durkee Decl. ¶ 34 ("[t]he shooting of Donavan La Bella . . . . gave us pause, as the stakes of attending the Portland protests became clearer."). As a result, although Plaintiffs would like to continue attending the protests daily, Defendants' actions have severely constrained Plaintiffs' efforts. And every day that Plaintiffs miss a protest, more protesters suffer from Defendants' abuses, without the assistance of a protest medic.

As discussed below, Defendants' continual use of excessive force against Plaintiffs and other protest medics has consequences beyond just the medics' ability to engage in expressive conduct by rendering care at nightly protests. By reducing the availability of on-site medical care, Defendants' targeting of protest medics also

31-  MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

chills the nightly protests themselves, by creating an unsafe environment that potential protesters must think twice about before joining.

### C.    The Court can and should grant the relief sought by Plaintiffs.

#### 1.    This case does not present any sovereign immunity issues.

The Court has jurisdiction over Plaintiffs' claims for injunctive relief against the federal Defendants because the federal government, through the Administrative Procedure Act ("APA"), has waived its defense of sovereign immunity against these claims:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. The APA is dispositive. With the enactment of 5 U.S.C. § 702, Congress sought to "eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity." *E.V. v. Robinson*, 906 F.3d 1082, 1092 (9th Cir. 2018) (quoting H.R. Rep. No. 94-1656, at 9 (1976)). Sovereign immunity does not apply in this instance, and even if it did, it has been statutorily waived. The United States Department of Homeland Security, the United States Customs and Border Protection, the United States Marshals Service, and the Federal Protective Service are all federal agencies. Their agents wreaking havoc on the city streets of Portland, Oregon, are all officers or employees of these federal agencies. Plaintiffs challenge Defendants' unlawful actions made in their official capacities. Pursuant to the APA, sovereign immunity can serve as no bar. Thus, the Court has jurisdiction over Plaintiffs' claims for injunctive relief.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2.    **The Court has the inherent power to grant equitable relief.**

The Court also has the inherent power to grant the limited injunctive relief sought in this Motion. Federal courts may exercise the traditional powers of equity in cases within their jurisdiction to enjoin violations of constitutional rights by government officials. In *Ex parte Young*, the Supreme Court first articulated the principle that state government officials may be sued for acting unconstitutionally, even if an ensuing injunction would bind the state. 209 U.S. 123 (1908). In *Philadelphia Co. v. Stimson*, the Supreme Court applied that principle to suits against federal officials. 223 U.S. 605, 620 (1912) (finding that "in case of injury threatened by his illegal action, the [federal] officer cannot claim immunity from injunction process."). Subsequent cases have affirmed the rule that federal officials can be sued for their unbecoming conduct. *See Dalton v. Specter*, 511 U.S. 462, 472 (1994) (holding that "sovereign immunity would not shield an executive officer from suit if the officer acted either 'unconstitutionally or beyond his statutory powers.'") (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949)). This principle is the "constitutional exception to the doctrine of sovereign immunity." *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962). Plaintiffs here raise constitutional challenges to their harsh treatment at the hands of the Portland Police and Federal Officers. Sovereign immunity has been waived by the APA and it is within this Court's inherent power to grant the relief sought by Plaintiffs.

3.    **Plaintiffs have clear causes of action under the First and Fourth Amendments.**

In addition, Plaintiffs clearly have a cause of action to bring such a claim. When equitable relief is sought to ameliorate unconstitutional behavior, courts will reach the merits without even "discussing whether a cause of action existed to challenge the alleged constitutional violation." *Sierra Club v. Trump*, 929 F.3d 670,

33-  MOTION FOR TEMPORARY RESTRAINING ORDER
     AND ORDER TO SHOW CAUSE WHY PRELIMINARY
     INJUNCTION SHOULD NOT ENTER

694-95 (9th Cir. 2019) (citing *Trump v. Hawaii*, 138 S. Ct. 2392, 2416-17 (2018))

(collecting cases); *Sierra Club v. Trump*, 2020 WL 3478900, at *11-12 (9th Cir. June

26, 2020) (finding plaintiffs "ha[ve] a cause of action to enjoin the [federal

government's] unconstitutional actions" under the courts' "historic [power] of

equitable review."). If this Court cannot grant Plaintiffs relief under the APA, it can

and should through its traditional power to grant relief.

Beyond the federal government's waiver of sovereign immunity in 5 U.S.C §

702 and the Court's power to grant equitable relief, the First and Fourth

Amendments offer Plaintiffs an independent source of jurisdiction. 28 U.S.C. § 1331

provides:

> The district courts shall have original jurisdiction of all civil
> actions arising under the Constitution, laws, or treaties of the
> United States.

In this Motion, Plaintiffs request equitable relief to enjoin Defendants from

arresting, threatening, or using physical force against protest medics in Portland.

Plaintiffs simply seek relief to stop the continued infringement of their First and

Fourth Amendment rights. The First and Fourth Amendments provide Plaintiffs

with an implied cause of action and 29 U.S.C. § 1331 vests this Court with

jurisdiction. In *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*,

the Supreme Court first upheld the proposition that the Constitution itself provides

an implied cause of action for claims against federal officials. 403 U.S. 388, 389

(1999). In 2017, the Supreme Court held that federal courts should not extend a

*Bivens* remedy into new contexts if there exist any "special factors counseling

hesitation." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). However, there is no

corresponding limitation on the Constitution as a cause of action to seek injunctive

or other equitable relief, which is what Plaintiffs seek here. *Id.* at 1862 (declining to

extend *Bivens* to a condition of confinement claim, but noting that "Respondents…challenge large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners . . . . [and] [t]o address those kinds of decisions, detainees may seek injunctive relief."). That is because there is a "presumed availability of federal equitable relief against threatened invasions of constitutional interests." *Am. Fed'n of Gov't Emps. Local 1 v. Stone*, 50 F.3d 1027 (9th Cir. 2007) (citations and internal quotation marks omitted) (quoting *Hubbard v. U.S. Envtl. Prot. Agency.*, 809 F.2d 1, 11 (D.C. Cir. 1986)) (finding that plaintiffs-appellants were entitled to seek relief based on the alleged violation of their First Amendment rights). The federal courts have long had the power to grant equitable relief for constitutional violations. *See Osborn v. United States Bank*, 22 U.S. 738 (1824); *see also Ex parte Young*, 209 U.S. at 156. And the Court should exercise that power here.

In this Motion, Plaintiffs seek only injunctive relief. Accordingly, they can bring their claims under the First and Fourth Amendments. The court has jurisdiction to hear the claims under 28 U.S.C. § 1331.

Plaintiffs seek to enjoin state and federal agents from violating their First and Fourth Amendment rights. They have multiple equitable causes of action to seek relief. There is a statutory waiver of any claim of sovereign immunity that may be brought by the federal defendants. Therefore, there is no jurisdictional bar or procedural bar to granting Plaintiffs the equitable relief they seek here.

### D. Plaintiffs will suffer irreparable harm without the Court's intervention.

With each passing night where Plaintiffs are inhibited and intimidated from exercising their First Amendment rights, they suffer irreparable injury. "Anytime there is a serious threat to First Amendment rights, there is a likelihood of

35- MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

irreparable injury." *Warsoldier*, 418 F.3d at 1001-02; *see Don't Shoot Portland*, 2020 WL 3078329 at *3-4 (finding a likelihood of irreparable harm where the plaintiffs established "a likelihood of success on the merits of their Fourth Amendment claim and at least a serious question as to whether they have been deprived of their First Amendment rights"). As long as the Portland Police and the Federal Officers are free to target medics with munitions and unlawfully seize them, Plaintiffs' exercise of their First Amendment rights will "surely [be] chilled." *Black Lives Matter-Seattle*, 2020 WL 3128299, at *3. Additionally, each time Defendants engage in that same behavior, they deprive Plaintiffs of their Fourth Amendment rights, which also constitutes continuing irreparable harm.

Each time protest medics like Plaintiffs experience violence, are unlawfully seized, and have their medical supplies taken or destroyed, they suffer irreparable injury. Because Plaintiffs have, at a minimum, raised colorable claims that the exercise of their constitutionally protected right to provide medical aid to demonstrators has been infringed, the irreparable injury (violations of their First and Fourth Amendment rights) is met. Not only have Plaintiffs shown an overwhelming likelihood of success on their claims, they also have demonstrated immediate and threatened irreparable harms—including severe physical and emotional injuries. Protests continue. More protest medics want to attend as the Defendants act more and more violently. Protest medics want to ensure that when the inevitable happens—protesters injured by police violence—those suffering may be cared for even if it means they too will be harmed.

Plaintiffs have already been injured. All medics attending these demonstrations, including those who do not leave the medical stations, fear for their safety in light of the excessive tactics the police have employed over the past fifty or

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

more days. Speech has been chilled. Medics have been directly targeted and injured by excessive force. Property has been unlawfully seized. For all the above reasons, the irreparable injury requirement is met.

**E. The public's interest and balance of equities weigh strongly in favor of plaintiffs.**

**1. The public has an unassailable interest in free speech and medical care.**

Courts have "consistently recognized the significant public interest in upholding First Amendment principles" when considering requests for preliminary injunctions. *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (internal quotations omitted). In addition, "it is always in the public interest to prevent the violation of a party's constitutional rights," which includes both the First and Fourth Amendments. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotations omitted) (granting an injunction under the Fourth Amendment). And as Chief Judge Hernandez stated, "This is a significant moment in time. The public has an enormous interest in the rights of peaceful protesters to assemble and express themselves. These rights are critical to our democracy." *Don't Shoot Portland*, 2020 WL 3078329 at *4.

Here, Plaintiffs are volunteer medics providing comfort and care for protesters engaged in demonstrations of worldwide concern. In so doing, they are exercising their constitutional right to free expression. But in an attempt to stifle that expression, Defendants have violated the constitutional rights of peaceful protest medics, who have done nothing but ensure and promote public safety. In so doing, Defendants have attempted to quash Plaintiffs' message: that demonstrators can feel safe working to counter the otherwise chilling impact of Defendants' violence. But Plaintiffs will not go quietly. Where so many protesters have been left

37- MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

battered, beaten, and traumatized by the police, there is a significant public interest that those injured may receive medical treatment.

The interest at stake here, however, is not just Plaintiffs' interest in engaging in expressive conduct by rendering medical care (although, that interest surely is at stake). It is not just the interest of victims of violence perpetrated by law enforcement at protests to receive prompt medical care (although, that interest, also, clearly is at stake). The greater *public* interest at stake here is in being free to go to downtown Portland to participate in protests safely and with the knowledge that medics are present and able to render care in an emergency. If the First Amendment is to mean anything, it must mean that Oregonians are free to join voices in solidarity with the Black Lives Matter movement, to demand that the government take steps to redress systemic racism and—with the strongest vehemence—violent, draconian, and excessive policing. By targeting protest medics, Defendants do not burden only Plaintiffs' rights and those of the individuals to whom they care; rather, Defendants make the entire protest less safe by reducing the number of medics present and able to render care. And Oregonians who wish to go to downtown Portland to join the protests, or who already are there and wish to stay later, are chilled from doing so when they perceive that the protests are unsafe as a result of Defendants' actions.

In the context of the violent, riotous actions by the police in recent weeks, the public's interest in having a frontline provider of first aid is obvious and cannot reasonably be questioned. The work of Plaintiffs as protest medics is necessary to facilitate a safe protest. In this critical moment in history, this Court must ensure the continued ability of the public to gather and express itself by protecting

38-   MOTION FOR TEMPORARY RESTRAINING ORDER
      AND ORDER TO SHOW CAUSE WHY PRELIMINARY
      INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Plaintiffs' ability to provide care and safety to all demonstrators. The public interest demands it.

### 2. The balance of equities weighs strongly in favor of plaintiffs.

Because Plaintiffs have "raised serious First Amendment questions," the balance of hardships "tips strongly in [Plaintiffs'] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (internal quotations omitted). Plaintiffs' clearly demonstrate that police have abused their authority by punishing medics for administering medical care to protesters. Plaintiffs risk life and limb to provide aid. In contrast, any harm to the Government would be negligible. The Government has no interest in preventing protest medics from treating injured demonstrators. The Government might have an interest in protecting federal buildings and property, but that interest is not served by using excessive force against individuals who are serving as volunteer medics. Medics present no threat to the police or the public.

The balance of equities weighs overwhelmingly in favor of Plaintiffs. To protect the protest medics—and ultimately, the public at large—this Court should enjoin the police from targeting and injuring medics in retaliation for their administration of aid. Although limiting the use of force in certain situations could impede an officer's ability to protect themselves against potential violence from demonstrators, here, any marginal risk of harm in limiting Defendants' use of force on protest medics is wholly outweighed by the irreparable harm that Plaintiffs— engaged in peaceful expression—will endure. Accordingly, the balance of equities weighs in Plaintiffs' favor.

### F. Plaintiffs' requested relief is reasonable.

In crafting the relief that they request in this Motion, Plaintiffs have, consistent with Judge Simon's Temporary Restraining Order in *Index Newspapers*

39- MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*LLC et al. v. City of Portland et al.*, 3:20-cv-1035-SI, narrowly tailored their request for relief to ensure that it only enjoins unconstitutional activity targeted at protest medics.

- Recognizing that law enforcement officers sometimes operate when visibility is diminished, and at times when they must make quick decisions, Plaintiffs requested relief includes an adequate description of the distinctive markings they will wear so that Defendants can clearly identify protest medics.

- Plaintiffs' proposed order states that Defendants would not be liable for indirect and unintended exposure to crowd-dispersal munitions following the issuance of a lawful dispersal order.

- The proposed order also contains sufficiently clear standards, so that Defendants will easily be able to determine what, when, and how their activity is prohibited. For example, in one of the requests for relief, Plaintiffs rely on existing Oregon statutes, Or. Rev. Stat. § 133.235 and Or. Rev. Stat. § 133.245, which regulate the use of force by peace and federal officers in Oregon, for the applicable standard.

Thoughtful and narrowly crafted relief limiting only the ability of Defendants to target protest medics is more than reasonable in light of the serious constitutional violations resulting from Defendants' attacks.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## IV.    CONCLUSION

These protests continue, and the Plaintiffs continue to put their health and safety on the line helping others. Based on the record presented here, Plaintiffs have established the basis for the requested relief. For the foregoing reasons, Plaintiffs respectfully request that this Motion for a Temporary Restraining Order is granted.

DATED:  July 24, 2020                    PERKINS COIE LLP


By: */s/ Nathan Morales*
   **Rian Peck**, OSB No. 144012
   **Thomas R. Johnson**, OSB No. 010645
   **Misha Isaak**, OSB No. 086430
   **Nathan Morales**, OSB No. 145763
   **Shane Grannum**, *pro hac vice* pending
   **Sarah Mahmood**, *pro hac vice* pending
   **Zachary Watterson**, *pro hac vice* pending
   PERKINS COIE LLP

   **Kelly K. Simon**, OSB No. 154213
   AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF OREGON

   *Attorneys for Plaintiffs*

41-  MOTION FOR TEMPORARY RESTRAINING ORDER
     AND ORDER TO SHOW CAUSE WHY PRELIMINARY
     INJUNCTION SHOULD NOT ENTER

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222