**Rian Peck** (they/them), OSB No. 144012
RPeck@perkinscoie.com
**Thomas R. Johnson** (he/him), OSB No. 010645
TRJohnson@perkinscoie.com
**Misha Isaak** (he/him), OSB No. 086430
MIsaak@perkinscoie.com
**Nathan Morales** (he/him), OSB No. 145763
NMorales@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Shane Grannum** (he/him), *pro hac vice*
SGrannum@perkinscoie.com
**Sarah Mahmood** (she/her), *pro hac vice* pending
SMahmood@perkinscoie.com
PERKINS COIE LLP
700 13th Street, NW, Suite 800
Washington, D.C.  20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211

**Zachary Watterson** (he/him), *pro hac vice*
ZWatterson@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

**Kelly K. Simon** (she/her), OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone:  503.227.6928

*Attorneys for Plaintiffs*

MOTION FOR TEMPORARY RESTRAINING ORDER
AGAINST MUNICIPAL DEFENDANTS

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CHRISTOPHER WISE, MICHAEL MARTINEZ, CHRISTOPHER DURKEE,** and **SAVANNAH GUEST,** individuals, <br><br> Plaintiffs, <br><br> v. <br><br> **CITY OF PORTLAND,** a municipal corporation**; OFFICER STEPHEN B. PETTEY,** in his individual capacity**; JOHN DOES 1-60,** individual and supervisory officers of Portland Police Bureau**; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. MARSHALS SERVICE; JOHN DOES 61-100**, individual and supervisory officers of the federal government, <br><br> Defendants. | Case No. 3:20-cv-01193-IM <br><br> **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ENTER AGAINST MUNICIPAL DEFENDANTS; MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> Pursuant to Fed. R. Civ. P. 65 <br><br> ORAL ARGUMENT REQUESTED <br><br> EXPEDITED HEARING REQUESTED |

MOTION FOR TEMPORARY RESTRAINING ORDER
AGAINST MUNICIPAL DEFENDANTS

# TABLE OF CONTENTS

**Page**

MOTION ....................................................................................................................... 1

MEMORANDUM OF LAW ........................................................................................... 4

I.     INTRODUCTION ................................................................................... 4

II.    FACTS ..................................................................................................... 5

        A.    Volunteer medics begin to attend the Portland protests, to create a safer environment for protesters seeking to protest police violence .......... 5

        B.    After reviewing the violent tactics being used by the Portland Police, this court intervened and issued a temporary restraining order enjoining the Portland Police from using excessive force against protesters ................................................................................... 7

        C.    Federal Officers Arrive in Portland ........................................................ 8

        D.    This Court intervened again and issued a temporary restraining order enjoining the Portland Police and Federal Officers from using excessive force against journalists ................................................... 8

        E.    The Federal Officers reduce their presence in Portland, but the Portland Police then resume their violence against protest medics .......... 9

        F.    Plaintiffs peacefully offer aid to protest attendees and, despite clearly identifying themselves as providing medical aid, are targeted by the Portland Police ............................................................... 12

III.    ARGUMENT ........................................................................................... 15

        A.    Plaintiffs are likely to succeed on the merits of their First Amendment claim ................................................................................. 16

                1.    Plaintiffs engaged in constitutionally protected speech while serving as volunteer protest medics .................................. 16

                2.    Defendants' actions would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech ................................................................. 24

                3.    Plaintiffs' protected activities were a substantial motivating factor in Defendants' conduct ...................................... 27

        B.    Plaintiffs also are likely to succeed on the merits of their Fourth Amendment claim ................................................................................. 30

                1.    The Portland Police have used, and continue to use, excessive force against Plaintiffs ................................................. 31

                2.    Plaintiffs are likely to establish that law enforcement officers unlawfully seized their property in violation of the Fourth Amendment ................................................................. 36

                3.    Defendants continue to violate Plaintiffs' Fourth Amendment rights ...................................................................... 38

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF CONTENTS**
**(continued)**

**Page**

C.  Plaintiffs will suffer irreparable harm without the Court's
    intervention ............................................................................................ 39

D.  The public's interest and balance of equities weigh strongly in
    Plaintiffs' favor ..................................................................................... 41

    1.  The public has an unassailable interest in free speech and
        medical care ................................................................................ 41

    2.  The balance of equities tips sharply in Plaintiffs' favor ............. 43

E.  Plaintiffs' requested relief is reasonable ................................................ 44

IV.  CONCLUSION ................................................................................................ 45

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES

**Page**

CASES

*Abay v. City of Denver*,
   No. 20-cv-01616-RBJ, 2020 WL 3034161 (D. Colo. June 5, 2020) ..........................18, 19, 24

*Alexander v. City & Cty. of San Francisco*,
   29 F.3d 1355 (9th Cir. 1994) ................................................................................................31

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ..............................................................................................15

*Ariz. Students Ass'n v. Ariz. Bd. of Regents*,
   824 F.3d 858 (9th Cir. 2016) ................................................................................................16

*Associated Press v. Otter*,
   682 F.3d 821 (9th Cir. 2012) ................................................................................................41

*Black Lives Matter Seattle-King Cty. v. City of Seattle et al.*,
   No. 2:20-cv-00887-RAJ, 2020 WL 3128299 (W.D. Wash. June 12, 2020)..........17, 24, 27, 40

*Boos v. Barry*,
   485 U.S. 312 (1988)........................................................................................................16, 17

*Brown v. Louisiana*,
   383 U.S. 131 (1966)...............................................................................................................22

*Cantu v. City of Portland*,
   No. 3:19-cv-01606-SB, 2020 WL 295972 (D. Or. June 3, 2020) ..........................................27

*City of Houston, Tex. v. Hill*,
   482 U.S. 451 (1987)...............................................................................................................17

*Cmty. House, Inc. v. City of Boise*,
   490 F.3d 1041 (9th Cir. 2007) ..............................................................................................43

*Collins v. Jordan*,
   110 F.3d 1363 (9th Cir. 1996) ..............................................................................................25

*Corales v. Bennett*,
   567 F.3d 554 (9th Cir. 2009) ...........................................................................................18, 20

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Don't Shoot Portland v. City of Portland*,
  No. 3:20-cv-00917-HZ, 2020 WL 3078329 (D. Or. Jun. 9, 2020) ................................. passim

*Drozd v. McDaniel*,
  No. 3:17-cv-556-JR, 2019 WL 8757218 (D. Or. Dec. 19, 2019) ........................................24

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
  901 F.3d 1235 (11th Cir. 2018) ..................................................................................18, 22

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) (en banc) ................................................................................15

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014) ................................................................................................15

*Graham v. Connor*,
  490 U.S. 386 (1989)..............................................................................................................31

*Hartman v. Moore*,
  547 U.S. 250 (2006)..............................................................................................................16

*Headwaters Forest Def. v. Cty. Of Humboldt*,
  276 F.3d 1125 (9th Cir. 2002) ..............................................................................................35

*Holloman ex rel. Holloman v. Harland*,
  370 F.3d 1252 (11th Cir. 2004) ............................................................................................19

*Hopkins v. Andaya*,
  958 F.2d 881 (9th Cir. 1992) (per curiam)............................................................................33

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
  515 U.S. 556 (1995)..........................................................................................................19, 22

*Illinois v. Gates*,
  462 U.S. 213 (1983)..............................................................................................................36

*Index Newspapers LLC v. City of Portland*,
  No. 3:20-cv-1035-SI, 2020 WL 4220820 (D. Or. Jul. 23, 2020)................................... passim

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ................................................................................................41

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Mendocino Envtl. Ctr. v. Mendocino Cty.*,
  192 F.3d 1283 (9th Cir. 1999) ............................................................16

*Nelson v. City of Davis*,
  685 F.3d 867 (9th Cir. 2012) ...................................................... passim

*O'Brien v. Welty*,
  818 F.3d 920 (9th Cir. 2016) ..............................................................16

*Pinard v. Clatskanie Sch. Dist. 6J*,
  467 F.3d 755 (9th Cir. 2006) ..............................................................16

*Quraishi v. St. Charles Cty., Mo.*,
  No. 4:16-CV-1320 NAB, 2019 WL 2423321 (E.D. Mo. June 10, 2019)..............................25

*Rumsfeld v. Forum for Academic & Inst. Rights, Inc.*,
  547 U.S. 47 (2006)................................................................................19

*Soldal v. Cook Cty., Ill.*,
  506 U.S. 56 (1992).................................................................................36

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) ...............................................................15

*Texas v. Johnson*,
  491 U.S. 397 (1989)..............................................................................18

*U.S. v. Hawkins*,
  249 F.3d 867 (9th Cir. 2001) ...............................................................36

*U.S. v. Jacobsen*,
  466 U.S. 109 (1984).........................................................................36, 37

*U.S. v. Neill*,
  166 F.3d 943 (9th Cir. 1998) ...............................................................32

*Ulrich v. City & Cty. of San Francisco*,
  308 F.3d 968 (9th Cir. 2002) ...............................................................27

*United States v. Grace*,
  461 U.S. 171 (1983)..............................................................................22

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Warsoldier v. Woodford*,
  418 F.3d 989 (9th Cir. 2005) ...........................................................15, 40

*Young v. Cty. of L.A.*,
  655 F.3d 1156 (9th Cir. 2011) ....................................................................32

STATUTES

Or. Rev. Stat. § 133.235.............................................................................2, 44

OTHER AUTHORITIES

Disease Control & Prevention, Facts About Riot Control Agents (Apr. 4, 2018),
  https://emergency.cdc.gov/agent/riotcontrol/factsheet.asp#:~:text=Riot%20co
  ntrol%20agents%20(sometimes%20referred,to%20be%20riot%20control%20
  agents ...............................................................................................25

Executive Order 13933 ....................................................................................8

Fed. R. Civ. P. 65............................................................................1, 3, 4

Judge Simon's Temporary Restraining Order in *Index Newspapers*, 2020 WL
  4220820................................................................................................44

Press Release, Department of Homeland Security, DHS Announces New Task
  Force to Protect American Monuments, Memorials, and Statues (July 1, 2020)
  *available at* https://www.dhs.gov/news/2020/07/01/dhs-announces-new-task-
  force-protect-american-monuments-memorials-and-statues#; ...................8

Statement on Portland Civil Unrest (July 5, 2020), *available at*
  https://www.dhs.gov/news/2020/07/05/fps-statement-portland-civil-unrest............8

U.S. Constitution First Amendment..................................................................... passim

U.S. Constitution Fourth Amendment ................................................................ passim

Willamette Week, As Federal Police Withdraw, Portland Protests Take Newly
  Gentle Tone (August 1, 2020) *available at*
  https://www.wweek.com/news/2020/08/01/as-federal-police-withdraw-
  portland-protests-take-newly-gentle-tone/ ...............................................9

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# MOTION

Plaintiffs Christopher Wise, Michael Martinez, Christopher Durkee, and Savannah Guest (collectively, "Plaintiffs" or "Protest Medics") hereby move for a Temporary Restraining Order ("TRO") against Defendants City of Portland, Officer Stephen B. Pettey, and John Does 1-60 (collectively, "Defendants"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, to protect them from further violations of their constitutional rights under the First and Fourth Amendments to the U.S. Constitution. This Motion is supported by the enclosed Memorandum of Law; the Declarations of Christopher Wise, Michael Martinez, Christopher Durkee, Savannah Guest, Peyton Hubbard, Jiri Rivera, Jessica Shifflett, and others being collected and signed at the time of filing this motion.

Plaintiffs specifically seek an order enjoining Defendants and their agents, employees, representatives, and servants, from directly targeting any Protest Medics in the manners that follow:

1.      To facilitate the Defendants' identification of Protest Medics protected under this Order, the following shall be considered indicia of being a Protest Medic: visual identification as a medic, such as by carrying medical equipment or supplies identifiable as such or wearing distinctive clothing that identifies the wearer as a medic. Examples of such visual indicia include any clothing or medical equipment that (1) clearly displays the word "medic" in red in an unobstructed manner or (2) clearly displays any universally recognized emblems for medics, such as the red cross, in an unobstructed manner. These indicia are not exclusive, and a person need not exhibit every indicium to be considered a Protest Medic under this Order. Defendants shall not be liable for any unintentional violations of this Order caused by the failure of an individual to wear or carry any indicia of being a Protest Medic.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2.     The Portland Police Bureau and its agents, employees, and all persons acting under the direction of or in concert with the Portland Police Bureau,[1] are enjoined from arresting, threatening to arrest, or using physical force (as described in number 3, below) directed against any person who they know or reasonably should know is a Protest Medic (as described in number 1, above), unless authorized under Or. Rev. Stat. § 133.235.

3.     The Portland Police are further enjoined from using physical force directly or indirectly targeted at a Protest Medic (as described in number 1, above) when the medic is providing medical care to an individual and poses no threat to the lives or safety of the public or the Portland Police. Physical force includes, but is not limited to, the use of tear gas, pepper spray, bear mace, other chemical irritants, flash-bang devices, rubber ball blast devices, batons, rubber bullets, and other impact munitions.

4.     For purposes of this Order, the Portland Police are enjoined from requiring such properly-identified (*see supra*, number 1) Protest Medics to disperse or move with demonstrators following the issuance of an order to disperse or move—including moving from the street to the sidewalk—when a medic is providing or attempting to provide medical care to an individual. Further, if a Protest Medic is providing medical care to an individual, the Portland Police shall not use the Protest Medic's decision to not disperse or move with demonstrators following the issuance of an order to disperse or move as any basis, including either

---

[1] Plaintiffs refer to the City of Portland, the Portland Police Bureau, their agents and employees, and all persons acting under the direction of or in concert with the Portland Police Bureau, collectively, as "the Portland Police."

2-   MOTION FOR TEMPORARY RESTRAINING ORDER
     AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

"reasonable suspicion" or "probable cause," to establish that the medic is or has committed a crime. Such persons shall, however, remain bound by all other laws.

5.    The Portland Police are further enjoined from seizing any medical equipment, first aid supplies, or other materials necessary for the Protest Medics to administer medical care, if the Portland Police know or reasonably should know that those materials are the property of a Protest Medic (as described in number 1, above), and unless the Portland Police also are lawfully seizing the Protest Medic to whom the materials belong.

6.    The Portland Police are further enjoined from ordering a Protest Medic to stop treating an individual; or ordering a Protest Medic to disperse or move when they are treating or attempting to treat an individual, unless the Portland Police also are lawfully seizing that person consistent with this Order.

7.    For purposes of this Order, the Portland Police shall not be liable for harm from tear gas, flashbangs, or smoke grenades, if a Protest Medic was incidentally exposed to, and not targeted with, those crowd-control devices.

8.    In the interest of justice, Plaintiffs need not provide any security and all requirements under Rule 65(c) of the Federal Rules of Civil Procedure are waived.

9.    This Order shall expire fourteen (14) days after entry, unless otherwise extended by stipulation of the parties or by further order of the Court.

10.    The parties shall confer and propose to the Court a schedule for briefing and hearing on whether the Court should issue a preliminary injunction.

This Motion—with its supporting materials—confirms that Plaintiffs' requested TRO is necessary, because "immediate and irreparable injury, loss or damage will result to the movant[s] before the adverse party can be heard in

3-    MOTION FOR TEMPORARY RESTRAINING ORDER
AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

opposition." Fed. R. Civ. P. 65(b)(1)(A). As their enclosed Memorandum of Law details, Plaintiffs have established that (i) Plaintiffs are likely to succeed on the merits of their claims; (ii) Defendants' conduct has caused and threatens irreparable harm to Plaintiffs; (iii) the balance of harms weighs in favor of granting the TRO; and (iv) the public interest favors issuing a TRO. Thus, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter the requested TRO.

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiffs ask this Court to enjoin the Portland Police from exerting threats and violence against Protest Medics, who are providing care and comfort to the hundreds, and sometimes thousands, of people protesting nightly in downtown Portland over the murder of George Floyd and against police brutality against Black, Indigenous, and Brown lives generally.

Plaintiffs are volunteer protest medics who, in the face of tear gas, rubber bullets, and other "less lethal" munitions, exercise their constitutional rights of free speech by providing care and support to the protesters demonstrating for the cause of equal treatment and absolute equality under the law. Plaintiffs also exercise their free-expression rights by helping create and facilitate an environment where protesters can more securely and freely exercise their own free-speech rights.

In response, the Portland Police have continuously used excessive force—targeting protest medics, preventing them from administering medical care to protesters, and seizing their medical supplies—in violation of well-established First and Fourth Amendment rights. The Portland Police's conduct is causing Plaintiffs and the public irreparable harm. As demonstrated in the attached declarations, the Portland Police are continuing to use excessive force to retaliate against Plaintiffs

4-    MOTION FOR TEMPORARY RESTRAINING ORDER
        AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

and numerous other protest medics for providing medical aid to protesters who the police themselves injure.

Targeting individuals only for engaging in protected expressive activities violates the First and Fourth Amendments, and the Portland Police's unlawful conduct should be enjoined immediately. This is because that conduct is causing irreparable, immediate harm. Daily protests continue and show no sign of abating. And each day that passes without relief further denies Plaintiffs and other protest medics their constitutional rights to support those demonstrating by providing medical care and to be free from unlawful searches and seizures. The requested TRO is necessary to ensure that protest medics can care for others without fear of retaliatory police violence.

## II.    FACTS

### A.    Volunteer medics begin to attend the Portland protests, to create a safer environment for protesters seeking to protest police violence.

Minneapolis police officer Derek Chauvin murdered George Floyd on May 25, 2020. Only two months prior, police officers in Louisville, Kentucky, murdered Breonna Taylor as she lay in her own bed. Ms. Taylor and Mr. Floyd were the latest among many dozens of Black citizens killed by police officers in the United States in just the last few years. The murders of Mr. Floyd and Ms. Taylor sparked national and international protests in support of Black lives and against systemic racism in American policing—including in Portland, where protests have been ongoing for more than 80 days and show no sign of slowing down. Declaration of Christopher Wise in Support of Plaintiffs' Motion for Temporary Restraining Order (ECF 6) ("Wise Decl.") ¶¶ 3-4.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Although the media and law enforcement may portray it differently, protests in Portland have been generally peaceful. *See* Declaration of Michael Martinez in Support of Plaintiffs' Motion for Temporary Restraining Order (ECF 9) ("Martinez Decl.") ¶¶ 7-8, 14-17; Declaration of Dr. Catherine Morgans in Support of Plaintiffs' Motion for Temporary Restraining Order (ECF 7) ("Dr. Morgans Decl.") ¶¶ 3-7. Yet, on many nights, the Portland Police have responded with violent force. They have shoved protesters to the ground, beaten them with riot batons, shot them in the head with rubber bullets and other impact munitions, and sprayed them in their eyes with bear mace at dangerously close ranges. *See, e.g.*, Wise Decl. ¶¶ 25; Martinez Decl. ¶ 28. Since the protests began, it has been a rare night when Defendants do not deploy tear gas or impact munitions into crowds ranging from dozens to hundreds of people. Declaration of Christopher Durkee in Support of Plaintiffs' Motion for Temporary Restraining Order (ECF 5) ("Durkee Decl.") ¶ 17; Martinez Decl. ¶ 15; *see also* Supplemental Declaration of Michael Martinez in Support of Plaintiffs' Motion for Temporary Restraining Order ("Martinez Suppl. Decl.") ¶ 5 ("I feel lucky that I have not yet been injured" by Portland Police using crowd control devices.).

As the protests in Portland have continued, groups of protesters, including Plaintiffs, organized in teams and loose associations to provide medical aid to the protesters as they exercised their free expression rights. *See* Declaration of Jeffrey Paul in Support of Plaintiffs' Motion for Temporary Restraining Order ("Paul Decl.") ¶11("The protest medics who assisted me that evening were extremely helpful. I witnessed them helping other protesters who were injured by tear gas and other projectiles shot by the officers"); *see also* Dr. Morgans Decl. ¶ 17 (discussing the sophisticated systems protest medics have implemented to better protect volunteer

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

safety). Plaintiffs, themselves passionate about the cause of eliminating brutality against Black lives at the hands of police, decided to exercise their free expression rights through their assistance to others. Declaration of Savannah Guest in Support of Plaintiffs' Motion for Temporary Restraining Order (ECF 11) ("Guest Decl.") ¶¶ 5, 8; Durkee Decl. ¶ 10; Martinez Decl. ¶ 19; Wise Decl. ¶ 4. They gathered medical supplies, clearly identified themselves as citizens offering aid to injured protesters, Martinez Decl. ¶ 23-24; Durkee Decl. ¶ 9; Guest ¶ 10, and took to the streets to have their own voices heard through their service to others. Martinez Decl. ¶ 22; Durkee Decl. ¶¶ 9-11; Guest Decl. ¶¶ 9-10.

> **B.** **After reviewing the violent tactics being used by the Portland Police, this court intervened and issued a temporary restraining order enjoining the Portland Police from using excessive force against protesters.**

Because of the Portland Police's excessive use of violent force, this Court had to intervene and issue an injunction. On June 9, 2020, Chief Judge Marco Hernandez issued a temporary restraining order against the Portland Police. *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ, 2020 WL 3078329 (D. Or. Jun. 9, 2020). In that order, Judge Hernandez held that, because there was no evidence that the plaintiffs (protesters) had engaged in "criminal activity" and "only engaged in peaceful and non-destructive protest," the use of tear gas against them by the Portland Police likely resulted "in excessive force contrary to the Fourth Amendment." *Id.* at *3. Therefore, Judge Hernandez enjoined the Portland Police from using tear gas against peaceful protesters unless "the lives or safety of the public or the police are at risk." *Id.* at *4. Judge Hernandez later expanded the order to enjoin the Portland Police from using other crowd control agents, including "less lethal" munitions, against peaceful protesters.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

### C.    Federal Officers Arrive in Portland

In an apparent attempt to circumvent Chief Judge Hernandez's order, the Portland Police began to rely on federal law enforcement for tear-gas (and other crowd-control devices) deployment. *See* Durkee Decl. ¶19 (describing an especially violent, tear-gas filled night). Starting around July 4, protest attendees have had to contend with violence from federal officers of the Department of Homeland Security ("DHS") and the U.S. Marshals Service ("USMS").[2] *See* Durkee Decl. ¶ 23 (describing distinctive uniform of Federal Officers). Purportedly acting under the color of Executive Order 13933, which declared that DHS would provide personnel to "assist with the protection of Federal monuments, memorials, statues, or property," DHS and the USMS have deployed special forces in Portland, or otherwise created policing units for deployment to Portland. These Federal Officers use many of the same weapons and tactics against protesters that the Portland Police had already been deploying for over a month, some of which were restricted by Chief Judge Hernandez's order. *See* Guest Decl. ¶ 12 (describing tear gas deployment by Federal Officers).

### D.    This Court intervened again and issued a temporary restraining order enjoining the Portland Police and Federal Officers from using excessive force against journalists.

In light of the Portland Police's seeming attempts to avoid Chief Judge Hernandez's order, on July 23, 2020, Judge Michael Simon granted a group of legal observer and journalist plaintiffs a temporary restraining order. *Index Newspapers*

---

[2] *See* Press Release, Department of Homeland Security, DHS Announces New Task Force to Protect American Monuments, Memorials, and Statues, (July 1, 2020) *available at* https://www.dhs.gov/news/2020/07/01/dhs-announces-new-task-force-protect-american-monuments-memorials-and-statues#; *see also* Press Release, Department of Homeland Security, Federal Protective Service Statement on Portland Civil Unrest, (July 5, 2020), *available at* https://www.dhs.gov/news/2020/07/05/fps-statement-portland-civil-unrest.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*LLC v. City of Portland*, No. 3:20-cv-1035-SI, 2020 WL 4220820 (D. Or. Jul. 23, 2020). In that case, which is similar to this one, the Court found that the plaintiffs, by showing that "they were identifiable as press, were not engaging in any unlawful activity or protesting, were not standing near protesters, and yet were subject to violence by federal agents," had "provide[d] sufficient evidence of retaliatory intent to show, at the minimum, serious questions going to the merits" of the plaintiffs' First Amendment retaliation claim. *Id.* at *6. Therefore, the Court enjoined the defendants' direct attacks on journalists and legal observers. *Id.* at *1.

### E. The Federal Officers reduce their presence in Portland, but the Portland Police then resume their violence against protest medics.

Because of the violent tactics used by the Federal Defendants against protest medics, Plaintiffs filed for a temporary restraining order, enjoining the Federal Defendants and the Portland Police from continuing to target protest medics. (ECF 4.) Shortly thereafter, on or around August 1, 2020, the Federal Defendants agreed to reduce their presence in Portland, if the Oregon State Police and the Portland Police resumed primary responsibility for policing the protests.[3] Soon after that happened, the Portland Police resumed their unconstitutional treatment of targeting protest medics for violence. For example:

- On August 4, 2020, protest medic Jessica Shifflett, who goes by the name of Phoenix, attended the Portland protests. Declaration of Jessica Shifflett in Support of Plaintiffs' Motion for Temporary Restraining Order ("Shifflett Decl.") ¶ 12. While doing so, she clearly identified herself as a medic, and stood next to journalists and legal observers until she witnessed the Portland Police tackle a journalist, who was simply sitting down on a curb. *Id.* ¶¶ 7-8, 12. The journalist

---

[3] *See* Willamette Week, As Federal Police Withdraw, Portland Protests Take Newly Gentle Tone, (August 1, 2020) *available at* https://www.wweek.com/news/2020/08/01/as-federal-police-withdraw-portland-protests-take-newly-gentle-tone/.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

immediately began vomiting on himself and convulsing. *Id.* In response, Phoenix identified herself verbally as a medic, and asked the officers if she could provide emergency care. *Id.* Instead of allowing her to care for the journalist, however, the Portland Police pushed and hit her with their batons multiple times. *Id.* Then, (despite the beating) Phoenix pleaded with the officers to, at minimum, allow her to provide basic care or turn the journalist on his side, so he did not choke on his vomit. *Id.* But, instead, the officer sprayed Phoenix directly in the face with mace from only a couple feet away. *Id.* The mace leaked through Phoenix's mask filter, causing her great physical pain, burns, and breathing problems. *Id.*

- On Friday, August 7, 2020, protest medic Peyton Hubbard attended the Black Lives Matter protest at the Multnomah County Sherriff's Office, near 47th Avenue and East Burnside. Supplemental Declaration of Peyton Dully Hubbard in Support of Plaintiffs' Motion for Temporary Restraining Order ("Hubbard Suppl. Decl.") ¶ 3. While there, Hubbard clearly identified themselves as a medic through clothing and equipment. *Id.* Shortly after 1:00 a.m., the Portland Police declared an unlawful assembly and ordered protesters to move east, which Hubbard complied with. *Id.* ¶ 5. Suddenly, an officer tackled Hubbard from behind, without any provocation. *Id.* ¶ 6. Once Hubbard was on the ground, multiple officers surrounded Hubbard and beat them several times with batons and fists, causing serious bruising and injury. *Id.* ¶¶ 6, 10. Hubbard immediately started yelling out that they were not resisting arrest. An officer replied that "they didn't give a fuck." *Id.* Ultimately, the Portland Police handcuffed Hubbard and detained them at a loading dock where other protesters were being detained. *Id.* ¶ 8. On the way to the loading dock, an officer pushed Hubbard, tried to trip them repeatedly, and tried to rip Hubbard's backpack off, all while in Hubbard was in handcuffs. Video of multiple officers at this incident beating Hubbard while they were on the ground are available here:

https://perkinscoie.hosted.panopto.com/Panopto/Pages/Viewer.aspx?id=7bbc4be0-83ed-4263-b2f5-ac1d0134d743

https://perkinscoie.hosted.panopto.com/Panopto/Pages/Viewer.aspx?id=db57057c-b780-415c-9277-ac1d0134d6de

10- MOTION FOR TEMPORARY RESTRAINING ORDER
AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

- On August 8, 2020, protest medic and U.S. Air Force veteran Jiri Rivera attended the Portland protests. Declaration of Jiri Rivera in Support of Plaintiffs' Motion for Temporary Restraining Order ("Rivera Decl.") ¶ 11. While there, Rivera clearly identified himself as a medic through clothing and equipment. *Id.* ¶¶ 10, 12. At around 11:40 pm, the Portland Police declared an unlawful assembly, and began "kettling" the protesters. *Id.* ¶ 14-15. As the crowd began to move, Rivera suddenly found himself on the ground being detained by the Portland Police. *Id.* ¶ 18. Other veterans informed the police that Rivera was there serving as a medic and asked them to let him go. *Id.* Despite those pleas, however, the officers zip-tied Rivera and shoved his gas mask into his mouth, restricting his ability to breathe. *Id.* As a military veteran, Rivera would like to believe that the Portland Police did not specifically target him as a medic. *Id.* ¶ 19. But given the number of targeting incidents that he has seen, and the fact that he was a highly visible medic in a line of veterans dressed in military attire and white shirts, Rivera ultimately believes that the Portland Police targeted him specifically because he had a red cross on his vest:



*Photo courtesy of John Rudoff*

- In the early hours of this morning, August 21, Portland Police arrested Plaintiff Chris Wise when he was clearly marked as a medic. Supplemental Declaration of Christopher Wise in Support of

11- MOTION FOR TEMPORARY RESTRAINING ORDER
    AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Plaintiffs' Motion for Temporary Restraining Order ("Wise Suppl. Decl.") ¶ 4. Once again, Plaintiff Wise was clearly marked as a medic in several places. *Id.* ¶ 3. As he was complying with the Portland Police's orders to disperse, two Portland Police officers walked past other protesters and grabbed Plaintiff Wise's arms from either side, informing him that he was under arrest. *Id.* ¶¶ 4-5. Plaintiff Wise was released this morning around 8:45 am. *Id.* ¶ 4. Videos of Plaintiff Wise being arrested and patted down are available here:

https://twitter.com/MasonLakePhoto/status/1296768985405390849

https://twitter.com/MaranieRae/status/1296736119246086144

**F.    Plaintiffs peacefully offer aid to protest attendees and, despite clearly identifying themselves as providing medical aid, are targeted by the Portland Police.**

Plaintiffs are all protest medics who have routinely attended the Portland protests to provide medical care to protesters and condemn racist police violence. Plaintiffs' very presence at the protests is an act of peaceful resistance: They seek to make people feel safe while attending lawful demonstrations, demanding change. Plaintiffs express that "protesters have a right to protest safely and without fear of police violence." Martinez Decl. ¶ 19; *see* Rivera Decl. ¶ 6; Shifflett Decl. ¶ 6. Plaintiffs' service as protest medics also sends a clear message to the police: We will not allow your violence to prevent people from protesting your violence. Martinez Decl. ¶ 19; Durkee Decl. ¶ 10.

Protest medics offer a range of services that empower protesters to keep standing up for their values, journalists to keep reporting on the protests, and other medics to keep rendering aid at the protests. They equip protest attendees with eye wash and eye wipes in anticipation of tear-gas attacks, offer personal protective equipment so protest attendees can observe COVID-19 physical-distancing protocols, feed and hydrate protest attendees, and render medical aid when police injure protest attendees. Declaration of Peyton Dully Hubbard in Support of

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Plaintiffs' Motion for Temporary Restraining Order (ECF 10) ("Hubbard Decl.") ¶ 7;
Paul Decl. ¶¶ 6, 9; Martinez Decl. ¶¶ 20, 23-24.

To ensure that the Portland Police and protesters recognize them, protest
medics wear clothing designed to communicate and demonstrate that they are there
to render aid to injured protesters. For example, protest medics wear clothing with
the word "medic" and the red-cross medic symbol painted across the back, as well as
brightly colored duct-taped medic symbols on both upper arms and the chest. Wise
Decl. ¶ 9; Guest Decl. ¶7; Durkee Decl. ¶¶ 9-10; Shifflett Decl. ¶ 7. The crosses are
identifiable during the day and at night and can be seen from any angle. Hubbard
Decl. ¶ 5; Guest Decl. ¶7; Durkee Decl. ¶ 9. Additionally, many protest medics
openly carry medical supplies on their persons at all times. *See* Wise Decl. ¶ 9;
Durkee Decl. ¶ 13 (carrying large backpack holding trauma kit); Guest Decl. ¶ 10
(same); Shifflett Decl. ¶ 7 (same).

Though protest medics engage in nonviolent behavior and pose no threat to
the public, officers, or city or federal property, the Portland Police have repeatedly
intimidated, harassed, and assaulted them, including each Plaintiff. While
attempting to render medical aid to those in need, Plaintiffs have been tear gassed
by the Portland Police—including having tear gas canisters shot or thrown in their
direction. Wise Decl. ¶¶ 20-30; Guest Decl. ¶¶ 12; Durkee Decl. ¶¶ 17; Martinez
Decl. ¶ 32. Defendants also have shot protest medics with rubber bullets, while they
were rendering or attempting to render aid. Wise Decl. ¶¶ 22, 28. Hubbard
Decl. ¶ 10.

Despite Plaintiffs wearing identifying clothing, officers have specifically
targeted them and other protest medics. For example:

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

- A Portland Police officer sprained Plaintiff Chris Wise's shoulder by shoving him into the ground, as Wise (while wearing identifiable clothing) was complying with the officer's orders to move from the area by walking backwards with his hands raised. Wise Decl. ¶¶ 9, 26.

- A Portland Police officer arrested Plaintiff Michael Martinez while he was standing at a medics' station organized by students at Oregon Health & Science University ("OHSU"). Martinez Decl. ¶¶ 33-41.

- Portland Police officers targeted and arrested Plaintiff Chris Wise when he was the only medic among a group of other protesters. Wise Suppl. Decl. ¶¶ 3-5.

- Portland Police officers targeted and arrested Jiri Rivera when he was the only medic standing among a group of other protesters. Rivera Decl. ¶¶ 11-19.

- Portland Police severely maced Phoenix, giving her chemical burns in her throat, because she asked for permission to render aid to a prone member of the press who was in so much pain after police tackled him that he was convulsing and laying in a pool of his own vomit.[4] Shifflett Decl. ¶ 12. Phoenix has experienced similar incidents over the last couple months. *Id.* ¶¶ 10-11, 13.

- Portland Police have repeatedly beaten and shot Peyton Hubbard, despite the facts that Hubbard always wears identifying clothing, stands to the side of the protests unless someone needs assistance, and has not violated any police orders or committed any crimes. Hubbard Decl. ¶¶ 5-12; Hubbard Suppl. Decl. ¶¶ 3-14.

In each of these incidents, it was clear that the visibly identifiable protest medics were actively rendering medical aid or standing by "on call," ready to provide aid. It also is clear that, at the time of these assaults, Plaintiffs posed no risk to the lives or safety of the public or officers. And this use of force has had a clear chilling effect: Despite their desire to continue serving as protest medics each day, Plaintiffs have

---

[4] Because Portland Police prevented EMTs from timely responding, the press member lay there for around 12 minutes before an ambulance arrived to help him. Phoenix could have offered him immediate help if the Portland Police hadn't forcibly prevented her from doing so. Shifflett Decl. ¶ 12.

14- MOTION FOR TEMPORARY RESTRAINING ORDER
AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

been prevented from attending protests or have chosen to attend them less frequently, in response to the very real possibility that they may be arrested or seriously injured by Defendants. Guest Decl. ¶¶ 23-31; Durkee Decl. ¶¶ 29-37; Hubbard Decl. ¶ 14; Shifflett Decl. ¶ 14.

### III.    ARGUMENT

The evidence here justifies entry of a TRO to protect Plaintiffs as protest medics. The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Under the traditional four-factor test for a TRO or preliminary injunction, this Court must grant Plaintiffs' motion if they show that (1) Plaintiffs are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) the requested injunction is in the public interest. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Although not dispositive by itself, the first of these factors— likelihood of success on the merits—is the "most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). But with respect to the relationship between factors (1) and (2), in the Ninth Circuit, plaintiffs who show that the balance of hardships tips "sharply" in their favor need only raise "serious questions" going to the merits. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see also Warsoldier v. Woodford*, 418 F.3d 989, 993-94 (9th Cir. 2005). In other words, "'the greater the relative hardship to [Plaintiffs], the less probability of success must be shown.'" *Warsoldier*, 418 F.3d at 994 (quoting *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999)). Here, Plaintiffs satisfy either bar.

15- MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST MUNICIPAL DEFENDANTS

### A.    Plaintiffs are likely to succeed on the merits of their First Amendment claim.

The First Amendment to the U.S. Constitution "reflects a 'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open.'" *Boos v. Barry*, 485 U.S. 312, 318 (1988) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Government officials—here, local law enforcement officers—may not retaliate against an individual for engaging in constitutionally protected speech. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006).

To succeed on their First Amendment retaliation claims, Plaintiffs must show that (1) they engaged in constitutionally-protected speech; (2) Defendants' actions would "chill a person of ordinary firmness" from continuing to engage in constitutionally-protected speech; and (3) Plaintiffs' engagement in protected speech was a "substantial motivating factor" in Defendants' conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016); *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). In so doing, however, Plaintiffs "need only show that the defendant[s] 'intended to interfere' with the plaintiff[s'] First Amendment rights and that [they] suffered some injury as a result; the plaintiff[s are] not required to demonstrate that [their] speech was actually suppressed or inhibited." *Ariz. Students Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citing *Mendocino*, 192 F.3d at 1300)). Here, Plaintiffs establish a high likelihood of success on the merits as to all three elements of their First Amendment claim.

### 1.    Plaintiffs engaged in constitutionally protected speech while serving as volunteer protest medics.

Plaintiffs have met the first element for establishing a First Amendment claim—engagement in constitutionally protected speech. Specifically, under the facts of this case, Plaintiffs have shown that, as protest medics, they exercise their

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

constitutional right to protest and engage in expressive conduct by providing medical assistance to those taking part in the large and continuing demonstrations in Portland. Plaintiffs have engaged in constitutionally protected speech as participants in protests for Black lives. Those protests began in the wake of the murders of George Floyd, Breonna Taylor, Ahmaud Arbery, Monika Diamond, and countless others. Plaintiffs and protesters attend the protests to express their support for eradicating "systemic racism, especially as it pertains to policing and police violence." Martinez Decl. ¶ 3; *see also* Wise Decl. ¶ 4; Durkee Decl. ¶ 4, 7, 10; Guest Decl. ¶ 3, 5, 8; Paul Decl. ¶ 4, Dr. Morgans Decl. ¶ 8; Shifflett Decl. ¶ 6. Since they started protesting in May and June 2020, Plaintiffs have fought for justice for Black people across the United States.

Protesting is protected speech. The "classically protected" right to protest lies at the heart of the First Amendment, *Boos*, 485 U.S. at 318, and, thus, activities "such as 'demonstrations, protest marches, and picketing'" are forms of speech protected under the Constitution, *Black Lives Matter Seattle-King Cty. v. City of Seattle et al.*, No. 2:20-cv-00887-RAJ, 2020 WL 3128299, at *2 (W.D. Wash. June 12, 2020) (quoting *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996)). The recent protests have been passionate and emotional, as protesters nationwide seek to radically change the way policing is conducted in our communities and country, all while actively opposed by the very group they are attempting to challenge with their voices. *See generally City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) (explaining that yelling obscenities and threats at a police officer is still protected speech under the First Amendment).

In addition to traditional protesting, rendering medical aid to support and advance a protest is itself a form of constitutionally protected expression: The

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

"constitutional protection for freedom of speech 'does not end at the spoken or written word.'" *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). Certain expressive conduct constitutes a protected form of speech under the First Amendment, "when 'it is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood.'" *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009) (quoting *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999)); *see also Johnson*, 491 U.S. at 404. Applying those principles, courts have recognized that providing services, supplies, or support to individuals as part of a movement for political, policy, and social change, is expressive conduct and, thus, constitutionally protected speech. *See, e.g.*, *Fort Lauderdale Food Not Bombs*, 901 F.3d at 1240-41 (ruling that a nonprofit organization's sharing of food in visible spaces intended to convey a particular message that collective food sharing helps to eradicate hunger and poverty); *Abay v. City of Denver*, No. 20-cv-01616-RBJ, 2020 WL 3034161, at *3 (D. Colo. June 5, 2020) (finding that protesters, including protest medics who "attempt[ed] to render treatment to injured protest[e]rs," as part of an "organized political protest" against police brutality, engaged in constitutionally protected speech).[5]

---

[5] In their original motion, Plaintiffs relied on *Abay* in support of their First Amendment claims. In response, the City of Portland tried, but failed, to distinguish that case from the facts here. In *Abay*, the plaintiffs included a protest medic and similarly-situated individuals who sought to participate in organized political protests against police brutality in Denver, Colorado. 2020 WL 3034161, at **1, 3. The plaintiffs alleged that the Denver Police "specifically targeted medics wearing red crosses attempting to provide care and treatment to those injured by the Police's wanton use of force . . . [including] while [medics] attempt to administer care to people prone on the ground." Compl. ¶¶ 32-33, *Abay*, 2020 WL 3034161. The court did not, however, hold that the protest medics' conduct was protected only because it occurred in the context of the larger demonstration, as argued by the City. Rather, after acknowledging that the plaintiff medics participated in the protests as part of an "attempt to render treatment to injured protest[e]rs," the

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Although an undeniably clear message is sufficient to establish First Amendment protections, the Supreme Court has clarified that a "narrow, succinctly articulable message is not a condition of constitutional protection" for expressive conduct, because such a narrow conception would prevent the First Amendment from "reach[ing] the unquestionably shielded painting of Jackson Pollack, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 556, 569 (1995) (citing *Spence v. Washington*, 418 U.S. 405, 411 (1974)). Thus, the appropriate question is "whether the reasonable person would interpret [conduct] as *some* sort of message, not whether an observer would necessarily infer a *specific* message." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (emphasis in original) (citing *Hurley*, 515 U.S. at 569). Indeed, "[i]f explanatory speech is necessary to explain the conduct, then that is strong evidence that the conduct at issue is not so inherently expressive that it warrants protection." *Rumsfeld v. Forum for Academic & Inst. Rights, Inc.*, 547 U.S. 47, 66 (2006).

In furtherance of their expression, Plaintiffs render medical aid to support and advance the voices of the other protesters. They engage in expressive conduct protected under the First Amendment by lending medical services, supplies, and treatment to other protesters in order to "send a message [ ] that protesters have a right to protest safely and without fear of police violence." Martinez Decl. ¶ 19; *see* Wise Decl. ¶ 6 ("I serve as a medic to further the protests themselves, including the overall purpose and message of the protests"); Durkee Decl. ¶ 7 ("I decided to get involved in the Portland protests as a medic for the protesters, not just because I

---

court ruled that the medics' activities—as well as those of other protesters participating in different capacities—were protected under the First Amendment. *Abay*, 2020 WL 3034161, at *3.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

feel strongly that systemic racism exists and leads to police brutality against Black people, but because I knew that my medical training could assist both the protesters and the larger movement"); Guest Decl. ¶ 5 ("I was concerned that the protesters in Portland were very unprepared to treat the types of injuries that the police were inflicting on them . . . . [so] I decided to get involved . . . as a medic for the protesters . . . because I knew that my medical training could assist both the protesters and the larger movement"); Shifflett Decl. ¶ ("By serving as a protest medic, I hope to send a message to protesters and law-enforcement officers that people should be able to keep showing up and exercising their rights without fear of physical harm, knowing that medical aid will be readily available to them.")

Plaintiffs are engaging in constitutionally protected speech because, as protest medics, they intend to convey "a particularized message." *Corales*, 567 F.3d at 562. Plaintiffs began organizing as protest medics "to take a tangible stand against the nightly police brutality [they] witness and experience" in Portland. Martinez Decl. ¶ 19; *see* Shifflett Decl. ¶ 6 ("I serve as a protest medic because I believe that people should be able to exercise their First Amendment right to peaceably assemble and to speak freely—even when criticizing their own government—and to not be subject to state-sponsored violence when doing so. Additionally, I believe that Black Lives Matter and that police brutality is horrific."). In particular, Plaintiffs serve as protest medics "to send a message that protesters have a right to protest safely [] without fear of violence" and to "make sure victims have access to care and suffer as little harm as possible." Martinez Decl. ¶ 19; Shifflett Decl. ¶ 6. They know that their "medical training [can] assist both the protesters and the larger movement" for Black lives. Durkee Decl. ¶ 7. Plaintiffs have witnessed Portland Police unleash "tear gas, pepper spray, and other

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

police violence" on protesters and it is their understanding that Portland Police sometimes are even "instructing ambulances not to enter [] protest area[s]." Martinez Decl. ¶ 20; Dr. Morgans Decl. ¶ 20. Thus, they espouse the political belief that—in lieu of trusting law enforcement officials to ensure the safety of protesters exercising their First Amendment rights—they must establish and maintain a community to aid, replenish, and support protesters themselves. Martinez Decl. ¶ 19; Durkee Decl. ¶ 7; Wise ¶ 6. As protest medics, they do this in part by:

- Providing direct care to protesters and support to other medics who care for and treat protesters, Wise Decl. ¶¶ 12-17, Martinez Decl. ¶¶ 26, 30; Durkee Decl. ¶¶ 10-11;

- Carrying and distributing to protesters medical supplies, such as gauze, bandages, antibiotic ointments, tape, ear plugs, and over-the-counter pain medications, Martinez Decl. ¶ 23, Wise Decl. ¶ 9, Dr. Morgans Decl. ¶ 11; Durkee Decl. ¶ 13; Guest Decl. ¶ 10;

- "[C]arr[ying] backpacks and distribut[ing] food and water to protesters," Martinez Decl. ¶ 22; Durkee Decl. ¶ 13; Guest Decl. ¶ 10;

- Establishing a "medics' station" in Chapman Square in downtown Portland "under a tent [clearly] marked with a medic symbol and other first aid signs," Martinez Decl. ¶ 22, Dr. Morgans Decl. ¶ 14;

- Offering protesters "wipes and saline solution or other eye wash to help rinse peoples' eyes following a tear gas attack," Martinez Decl. ¶ 23;

- Offering protesters "personal protective equipment such as masks, gloves, and hand sanitizer" to ensure protesters can "observe recommended safety measures" during the COVID-19 pandemic, Martinez Decl. ¶ 23; and

- Attempting to "deescalate situations that could or have turned violent" and "diffuse tensions," including when an automobile driver plowed their car through a group of protesters and fired gunshots, Wise Decl. ¶¶ 18, 26; see also Durkee Decl. ¶ 10 (keeping morale high).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Further, the context of and circumstances surrounding Plaintiffs'
participation in the protests clearly establish that a reasonable person would
interpret their activities as protest medics as intended to convey some
particularized message. *See Fort Lauderdale Food Not Bombs*, 901 F.3d at 1241
("[T]he circumstances surrounding an event help set the dividing line between
activity that is sufficiently expressive and similar activity that is not.").[6] The *context*
of Plaintiffs' participation as medics is clear. Night after night, police brutality and
violence against protesters in downtown Portland is on full display for all of the city,
Oregon, the nation, and the world to see—on social media, the local news, in
newspapers, and for some Portland residents who live near these protests, right
outside of their windows. Furthermore, as Plaintiffs have stated—and quite
significantly, the City of Portland has not contested—ambulances and medical first
responders often do not have access to or decline to come to protest sites to treat
injured protesters, before, during, or after the Portland Police issue allegedly
"lawful" dispersal orders. *See, e.g.*, Wise Decl. ¶ 15 (describing "ambulances and
first responders unwilling to come to [protesters]"); Shifflett Decl. ¶ 12 (explaining
that it can take anywhere from 15-20 minutes, generally, when police call for an
ambulance).

    *Surrounding circumstances* make Plaintiffs' participation clear, as well.
Plaintiffs' message at the protests is one that is particularized and specific to
protest medics, as a discrete category of individuals attending the protests.

---

[6] *See also Hurley*, 515 U.S. at 568 (using context to differentiate "marchers
[in a parade] who are making some sort of collective point" from "bystanders along
the way"); *United States v. Grace*, 461 U.S. 171, 176 (1983) (using context and
surrounding circumstances to differentiate walking from "peaceful picketing and
leafletting"); *Brown v. Louisiana*, 383 U.S. 131, 141-42 (1966) (using context and
surrounding circumstances to distinguish between Black Americans playing a game
and conducting a sit-in at a library to protest segregation).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Plaintiffs have clearly established themselves as medics within a community that attends the protests to aid and support protesters, and protesters recognize them as such. *See* Paul Decl. ¶ 11. Medics stations like the one Martinez attended are stocked with medical supplies like gauze and bandages and are clearly marked with indicia that they are there to render first aid. Martinez Decl. ¶ 22. Plaintiffs and other protest medics wear clearly-identifiable clothing, equipment, and insignia as they traverse demonstrations across Portland to care for protesters. Guest Decl. ¶ 7; Durkee Decl. 10; Wise Decl. ¶ 9; Shifflett Decl. ¶ 7. Protest medics have been an unmistakable presence at protests each night, verbally identifying themselves as medics, carrying medical supplies and rendering care and treatment to protesters injured by tear gas, pepper spray, rubber bullets, and other chemical irritants and munitions deployed by law enforcement officials. *See* Wise Decl. ¶¶ 9, 13-17; Guest Decl. ¶¶ 11-12; Shifflett Decl. ¶ 12.

The context of Plaintiffs' activities as protest medics and surrounding circumstances should lead any reasonable observer—and certainly a Portland Police officer, who is presumably trained and required to contextualize situations and observe their surroundings—to understand that Plaintiffs seek to convey a particularized message by participating as protest medics. Further, the context and surrounding circumstances establish that the likelihood is great that this message would be understood. Therefore, Plaintiffs have established the likelihood of success on the merits that they engaged in constitutionally-protected expressive conduct as protest medics.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### 2. Defendants' actions would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech.

Plaintiffs also establish a likelihood of success on the merits as to the second element of their First Amendment retaliation claim—that Defendants' actions would chill a person of ordinary firmness—because (as should come to no one's surprise) physical violence and deployment of chemical irritants and munitions by law enforcement would chill a person of ordinary firmness from continuing to participate in protests as medics. "'Ordinary firmness' is an objective standard that will not 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in [their] protected activity.'" *Black Lives Matter-Seattle*, 2020 WL 3128299, at *3 (quoting *Mendocino*, 192 F.3d at 1300). Here, although Plaintiffs have continued, and will continue, to serve as protest medics, under the applicable objective standard, the Portland Police's continuous targeting of protest medics almost certainly would chill any medic of ordinary firmness from participating in the protests.

This Court and others have repeatedly confirmed that what Plaintiffs endure nightly from Defendants would chill the First Amendment rights of a person of ordinary firmness:

- A police officer's deployment of pepper spray caused a protester severe anxiety, and thus would chill the protester's rights, *Drozd v. McDaniel*, No. 3:17-cv-556-JR, 2019 WL 8757218, at *5 (D. Or. Dec. 19, 2019);

- Law enforcement officials' use of "crowd control weapons" like tear gas and pepper spray would chill person of ordinary firmness from protesting, *Black Lives Matter-Seattle*, 2020 WL 3128299, at *3;

- A police force's use of "physical weapons and chemical agents" against protesters would chill speech by creating in demonstrators a "legitimate and credible fear of police retaliation," *Abay*, 2020 WL 3034161, at *3; and

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

- A police officer's deployment of tear gas would chill a person of ordinary firmness from engaging in protected activities under the First Amendment, *Quraishi v. St. Charles Cty., Mo.*, No. 4:16-CV-1320 NAB, 2019 WL 2423321, at *6 (E.D. Mo. June 10, 2019).

Because of the chilling effect that an indiscriminate use of force presents, "courts have held that the proper response to potential and actual violence is for the government to ensure an adequate police presence, and to arrest those who actually engage in [violent] conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure." *Collins v. Jordan*, 110 F.3d at 1372 (citing *Cox v. Louisiana*, 379 U.S. 536, 551 (1965); *Kunz v. New York*, 340 U.S. 294-95 (1951)). The Portland Police have repeatedly done just the opposite.

The Portland Police have unquestionably engaged in conduct that would chill a person of ordinary firmness from continuing to participate in protests as medics. As in the cases cited above, the Portland Police have deployed tear gas, pepper spray, and other chemical irritants directly on Plaintiffs at close range. Martinez Decl. ¶ 12; Wise Decl. ¶ 28; Dr. Morgans Decl. ¶¶ 3-4; Shifflett Decl. ¶ 12. These irritants are deeply invasive and painful, causing the eyes, nose, and (sometimes) even the skin to burn and swell.[7] Protest medics exposed to these irritants find it hard to breathe, feel burning or pain in their chest and lungs, and experience difficulty seeing, *see id.*, as was the case for Plaintiffs. Martinez Decl. ¶ 9; Wise Decl. ¶ 25; Guest Decl. ¶ 13; Shifflett Decl. ¶ 12; Durkee Decl. ¶ 12, 18, 34 ("We decided not to attend the protest because we wanted more protective gear before going out"). Those internal biological reactions alone prevent Plaintiffs from performing their work as protest medics.

---

[7] *See* Ctrs. for Disease Control & Prevention, Facts About Riot Control Agents (Apr. 4, 2018), https://emergency.cdc.gov/agent/riotcontrol/factsheet.asp#:~:text=Riot%20control%20agents%20(sometimes%20referred,to%20be%20riot%20control%20agents.

25- MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Defendants also have deployed munitions—such as rubber bullets and flash bangs—directly against protest medics, sometimes while they were rendering care and treatment to protesters and bystanders. Wise Decl. ¶¶ 22, 28. Especially when deployed in close contact, these munitions bruise and even puncture the skin, fracture bones, and cause blindness. The Portland Police have repeatedly attacked, beaten, clubbed, and harassed Plaintiffs and other protest medics. *See* Wise Decl. ¶¶ 22, 24-26, 28-30; Shifflett Decl. ¶ 12. This conduct has caused grave, physical injuries. *See* Wise Decl. ¶¶ 22-23 ("[A] Portland police officer shot me in the shin with a rubber bullet . . . penetrat[ing] my skin and expos[ing] my shin bone . . . [and] [m]y wound later became infected . . . [that] still has not closed, let alone healed"); Shifflett Decl. ¶¶ 10-14 ("("PPB officers pushed me and hit me with their batons multiple times . . . . result[ing] in multiple bruises on my body . . . . [and shortly thereafter] sprayed me directly in the face with mace from only a couple feet away . . . . [which] leaked through my mask filter, causing me great physical pain, chemical burns in my throat, and breathing problems"). Those injuries have forced protest medics to stay home and heal, instead of continuing to serve as protest medics (as they desire to do). Wise Decl. ¶ 27; Hubbard Decl. ¶¶ 14; Shifflett Decl. ¶ 14.  Furthermore, witnessing Defendants' use of chemical irritants, munitions, and long-range acoustic devices commonly deployed by the United States Armed Forces against enemy combatants in foreign wars, against Americans on domestic soil, has caused lasting physical and emotional trauma for protest medics. *See* Durkee Decl. ¶ 19 ("The indiscriminate brutality of the police and federal agents—especially the shooting of [protester] Donavan La Bella [by law enforcement]—has had a significant negative impact on my ability to continue to serve as a medic . . . I could possibly lose my life"). For those reasons, Plaintiffs have established a high

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

likelihood that Defendants' actions would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech.

### 3. Plaintiffs' protected activities were a substantial motivating factor in Defendants' conduct.

Plaintiffs also establish a high likelihood of the existence of the third and final element of their First Amendment retaliation claim—that their protected activities were a substantial and motivating factor in the Portland Police's conduct. This element requires a "nexus between [Defendants'] actions and an intent to chill speech." *Cantu v. City of Portland*, No. 3:19-cv-01606-SB, 2020 WL 295972, at *7 (D. Or. June 3, 2020) (quoting *Ariz. Students Ass'n*, 824 F.3d at 867). Plaintiffs may establish that element through either direct or circumstantial evidence: "The use of indiscriminate weapons against all protesters—not just [] violent ones—supports the inference that [law enforcement officials'] actions were substantially motivated by Plaintiffs' protected First Amendment activity." *Black Lives Matter-Seattle*, 2020 WL 3128299, at *4; *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) (citing *Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002)).

Here, because (1) Plaintiffs consistently wore distinctive and visible markings identifying them as medics, (2) did nothing to threaten the safety of the public or police, and (3) despite those facts, the Portland Police nonetheless specifically targeted Plaintiffs for violence, the Court may infer that the Portland Police did so with an intent to prevent Plaintiffs from expressing themselves as protest medics. *See Index Newspapers*, 2020 WL 4220820, at *6 (holding that the plaintiffs established a sufficient nexus and showing to grant a restraining order because they (1) "were identifiable as press," (2) were not engaging in any threatening activity, and (3) "yet were subject to violence by federal agents").

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Plaintiffs wear clothing with markings clearly identifying them as providing medical aid and "yet [are] subject to violence" by the Portland Police. *Id.* From that, it is reasonable to infer that Plaintiffs' message of opposing police brutality in a tangible way is a substantial and motivating factor in the excessive and indiscriminate use of force. Plaintiffs have engaged in protests that specifically seek to eradicate police brutality and fundamentally transform the role that law enforcement plays in our society, and they have chosen to express their views through their particular service. Durkee Decl. ¶ 3; Guest Decl. ¶¶ 3-4; Wise Decl. ¶ 4-6; Shifflett Decl. ¶ 6; Rivera Decl. ¶¶ 6, 8. That message, if successful, is one that ultimately will have a negative impact on the authority and power that Defendants wield. Given that Plaintiffs are clearly identified, have not engaged in any threatening behavior, and that Defendants have used direct force to suppress the speed at which Plaintiffs perform their medical services or Plaintiffs' ability to render aid altogether, it is reasonable to infer that Defendants sought, and seek, to suppress Plaintiffs' particularized form of speech. Defendants acts to target Plaintiffs as they assist others and to prevent them from rendering aid in the first place leads to but one conclusion: Plaintiffs' protected activities were a substantial motivating factor in Defendants' conduct.

The Portland Police's rationale for why its officers shot, fired at, beat, and injured clearly-marked and clearly-identifiable protest medics—the overall chaotic environment of the Portland protests—does not at all defeat Plaintiffs' claims that the Portland Police unconstitutionally targeted them for violence. That is for two reasons. First, in making that argument, the Portland Police have mischaracterized the exact nature of Plaintiffs' theories. Although Plaintiffs do rely on important contextual evidence showing that the Portland Police indiscriminately

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

use tactics such as kettling and the broad dispersal of tear gas on the entire Portland protests, that is not the crux of their claims. Instead, as in this motion for TRO, Plaintiffs' gravest concern is the harm caused to them and other protest medics (not protesters generally) by the Portland Police's "direct targeting" of medics:  *i.e.*, the use of force directly targeted at a protest medic; such as, macing a clearly identified protest medic in the face from a few feet away when they are providing or attempting to provide medical care; Wise Decl. ¶ 25; Martinez Decl. ¶ 28; Shifflett Decl. ¶ 12; aiming a gun directly at, shooting, and then laughing at a clearly identified protest medic who is standing to the side of the protests waiting to help someone; Hubbard Decl. ¶¶ 5-12; beating a clearly identified protest medic with batons, while they are screaming to help another injured protester; Hubbard Suppl. Decl. ¶ 6.  And the overall chaotic environment of a protest has little to no bearing on those decisions by the Portland Police to identify the medics out of a crowd of protesters and specifically target them for violence.

Second, under the U.S. Constitution and its own internal agency directives, the Portland Police have an obligation to distinguish and detain only criminal and violent actors in a protest, but not others who serve important functions while caught in the crossfire of that violence. Contrary to the Portland Police's assertions, the U.S. Constitution does not somehow allow law enforcement officers to fire directly or indiscriminately at people (such as Plaintiffs) peacefully exercising their constitutional rights and then blame the damage to those individuals on a few other actors who actually engaged in violent behavior. *See Don't Shoot Portland*, 2020 WL 3078329 at *3 (holding that the Portland Police could not rely on the chaotic environment of protests to justify their excessive force under the Fourth Amendment, so long as the individual Plaintiffs did not actually pose a safety or

29-  MOTION FOR TEMPORARY RESTRAINING ORDER
     AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

criminal risk). Constitutional uses of force may result in unintended consequences, but the Portland Police's targeting of clearly marked medics and subjecting them to violent force can hardly be characterized as unintended. *See, e.g.*, Wise Decl. ¶ 25 (being bear maced by a PPB officer from a distance of six to eight feet away, risking permanent, severe damage to Wise's eyes); Shifflett Decl. ¶ 12 (describing being maced directly in the face from a few feet away); Hubbard Suppl. Decl. ¶ 6 (describing being beaten by multiple officers while on the ground). Similarly, the Portland Police's own internal directives require officers to distinguish between actors while responding to demonstrations and protests. Under PPB Directive 0635.10, a police officer's "response should be commensurate to overall crowd behavior, and members should differentiate between groups or individuals who are engaging in criminal behavior or otherwise posing a threat to the safety of others and those in the crowd who are lawfully demonstrating." Therefore, the fact that these events took place in a generally chaotic environment does not make otherwise targeted unconstitutionally violent behavior suddenly constitutional.

**B.    Plaintiffs also are likely to succeed on the merits of their Fourth Amendment claim.**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Here, Plaintiffs are likely to succeed on the merits of their claims that the Portland Police violated the Fourth Amendment by using excessive force against Plaintiffs and by unlawfully seizing their medical equipment.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1.   **The Portland Police have used, and continue to use, excessive force against Plaintiffs.**

Plaintiffs have established a high likelihood that the Portland Police used excessive force against them, in violation of the Fourth Amendment. A seizure occurs when an "officer by means of physical force or show of authority terminates or restrains [a person's] freedom of movement through means intentionally applied." *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (quoting *Brendlin v. California,* 551 U.S. 249, 254 (2007). And, a law enforcement officer's use of force is excessive and violates the Fourth Amendment when it was "objectively unreasonable in light of the facts and circumstances confronting the officer." *Graham v. Connor*, 490 U.S. 386, 397 (1989). To determine whether use of force was unreasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing governmental interests at stake." *Id*. at 396. "The force which was applied must be balanced against the *need* for that force; it is the need for force which is at the heart of the consideration" of the reasonableness inquiry. *Alexander v. City & Cty. of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994) (emphasis in original). In this case, the Portland Police's seizures through use of force against Plaintiffs was not objectively reasonable.

a.   **Plaintiffs were seized under the Fourth Amendment.**

The Portland Police have continuously "seized" Plaintiffs under the Fourth Amendment by using force to terminate their movements. Under the Fourth Amendment, an officer's intent to specifically target an individual is irrelevant; so long as the use of force that terminates an individual's movement is intentional, a seizure occurs even where there is "an absence of concern regarding the ultimate recipient of the government's use of force." *Nelson*, 685 F.3d at 876. The Portland

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Police not only terminate protest medics', including Plaintiffs', movements by shooting them with tear gas, rubber bullets, and stun grenades, and beating them with batons, *see* Martinez Decl. ¶ 32-40; Wise Decl. ¶ 22, 24-26, 28-30; Hubbard Decl. ¶¶ 7-8, 10; Hubbard Suppl. Decl. ¶ 6; Shifflett Decl. ¶ 12, but they also target protest medics both as individuals and as members of a crowd, Wise Decl. ¶¶ 21-28, 30; Hubbard Suppl. Decl. ¶¶ 5; Rivera Decl. ¶ 15; Shifflett Decl. ¶ 8. Because the officers intentionally targeted and used force against Plaintiffs, inhibiting their movement, Plaintiffs were seized.

### b.    The Portland Police use excessive force against Plaintiffs.

The Portland Police violated Plaintiffs' Fourth Amendment rights by effecting a seizure (as described above) through the use of excessive force. The Ninth Circuit has held that the use of only pepper spray is a serious intrusion into an individual's Fourth Amendment rights, "due to the immediacy and 'uncontrollable nature' of the pain involved." *Nelson*, 685 F.3d at 878 (citations omitted); *see U.S. v. Neill*, 166 F.3d 943, 949 (9th Cir. 1998) (holding that pepper spray is dangerous weapon "capable of inflicting death or serious bodily injury"). Accordingly, deploying chemical irritants such as pepper spray to disperse protesters can constitute unreasonable, excessive force where it is "unnecessary to subdue, remove, or arrest the protestors," even if the protesters have failed to heed a police warning. *Young v. Cty. of L.A.*, 655 F.3d 1156, 1167 (9th Cir. 2011) (citation omitted).

The Portland Police have injured Plaintiffs and other protest medics with chemical irritants and impact munitions, which inflicted immediate and uncontrollable pain. As Plaintiffs and other protest medics cared for wounded protesters, officers temporarily blinded them with tear gas and bear mace and shot rubber bullets that cut through their skin. Wise Decl. ¶¶ 22-30; Shifflett Decl. ¶ 12.

32- MOTION FOR TEMPORARY RESTRAINING ORDER
AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

When protest medics hung back, and asked officers if they could provide medical care, officers responded by macing them and shoving them with riot batons. Shifflett Decl. ¶ 10-12. When protest medics did not disperse fast enough, they were singled out from the crowd and tackled or violently arrested. Wise Decl. ¶¶ 22, 24-28; Wise Suppl. Decl. ¶¶ 4-6; Martinez Decl. ¶¶ 37-40; Hubbard Suppl. Decl. ¶¶ 5-6; Rivera Decl. ¶¶ 15-18.

As a result of this police brutality, Plaintiff Wise suffered a sprained shoulder and was forced to take medical leave from work; Shifflett suffered chemical burns to her throat and had trouble eating; and several protest medics have been otherwise bruised and battered. Wise Decl. ¶¶ 26-27; Shifflett Decl. ¶ 12; Hubbard Decl. ¶¶ 7-8, Guest Decl. ¶ 15; Durkee Decl. ¶ 20. The Portland Police's actions and the resulting injuries have caused Plaintiffs "immediate" and "uncontrollable" pain. Thus, consistent with *Nelson*, the Portland Police repeatedly have used excessive force on Plaintiffs, contravening the guarantees of Plaintiffs' Fourth Amendment rights.

### c.    The use of force against Plaintiffs was not justified.

Plaintiffs should prevail on their Fourth Amendment claims because the Portland Police had no valid justification for reacting with such extreme displays of force. In assessing the need for force against an individual, the Ninth Circuit considers factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir. 1992) (per curiam) (quoting *Graham*, 490 U.S. at 396). Not one of these factors is even implicated, let alone met.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

The existence and, thus, severity of any crimes committed by Plaintiffs was nil. Where individuals are not engaged in "serious criminal behavior," that "significantly reduce[s] the governmental interest involved" in the use of force against them. *Nelson*, 685 F.3d at 880. This holds true even where the use of force takes place under circumstances of "general disorder," because the relevant inquiry is whether the targeted individual had engaged in criminal activity. *Id*. at 883. Thus, even if others in the immediate areas are engaging in criminal activity but the *actual plaintiffs* are not, then using force against the plaintiffs is not justified under the Fourth Amendment. S*ee Don't Shoot Portland*, 2020 WL 3078329 at *3 (granting a TRO on Fourth Amendment grounds because, even though others at the Portland Protests were engaged in criminal activity, "there is no dispute that *Plaintiffs* engaged only in peaceful and non-destructive protest." (Emphasis in original.)).

Here, Plaintiffs and protest medics did not engage in any criminal activity. Instead, they actually attempted to de-escalate activities that would lead to further police agitation. Wise Decl. ¶¶ 18, 26; Guest Decl. ¶¶ 14, 17, 19; Durkee Decl. ¶¶ 10, 24; Rivera Decl. ¶ 11. Therefore, under the first factor, the Portland Police's use of force on protest medics is not justified.

Regarding the second factor, Plaintiffs did not pose any immediate threat to officer safety. Law enforcement officers may not justify use of force against an individual who does not pose an immediate threat to officers' safety merely because of the underlying "tumultuous circumstances." *Nelson*, 685 F.3d at 881. As just explained, Plaintiffs and protest medics did not pose a threat to anyone's safety, and were subjected to violence even while retreating or attempting to leave the protest altogether. Durkee Decl. ¶¶ 14, 24 (describing need to walk backward so

34- MOTION FOR TEMPORARY RESTRAINING ORDER
AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

that officers do not strike with batons with backs turned); Guest Decl. ¶¶ 11, 19 (same); Hubbard Decl. ¶ 8; Shifflett Decl. ¶¶ 7-13. In fact, quite the opposite is true: *as protest medics, they were working to ensure and increase public safety*. Therefore, Defendants' use of force against Plaintiffs was not justified by any threat to officers' public safety.

Third and finally, Plaintiffs did not resist or attempt to evade any valid arrest. Where an officer orders a crowd to disperse, a failure to comply immediately does not amount to actively resisting arrest, but "only rise[s] to the level of passive resistance," which "neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Nelson*, 685 F. 3d at 881; *see also Headwaters Forest Def. v. Cty. Of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) (protesters that remained seated in a congressman's office despite officers' orders to disperse had not actively resisted). To the extent that Plaintiffs may not have complied immediately with an officer's order to disperse because they were packing up their medical supplies or attempting to render aid to an injured protester, that does not rise to the level of active resistance that would justify the application of a non-trivial amount of force, particularly when they did not resist arrest. Wise Suppl. Decl. ¶¶ 4-6; Martinez Decl. ¶ 39; Hubbard Suppl. Decl. ¶ 6; Rivera Decl. ¶¶ 17-18.

As Plaintiffs were not engaged in any criminal behavior, creating a threat to officers' safety, or actively resisting arrest, it was not reasonable for officers to use any force against them, much less the chemical irritants, rubber bullets, and physical force that officers wrought upon them. Plaintiffs have therefore shown that they will likely succeed on the merits of their Fourth Amendment excessive force claim.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## 2. Plaintiffs are likely to establish that law enforcement officers unlawfully seized their property in violation of the Fourth Amendment.

The Portland Police also unlawfully seized Plaintiffs' medical equipment and materials. "Seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984). Such interference violates the Fourth Amendment when it is unreasonable. With limited exceptions, "[a] seizure conducted without a warrant is *per se* unreasonable under the Fourth Amendment." *U.S. v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (quoting *Minn. v. Dickerson*, 508 U.S. 366, 372 (1993)). Further, seizure of property without a warrant is reasonable only when "there is probable cause to associate the property with criminal activity." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 69 (1992). Whether probable cause exists depends on the totality of the circumstances within an officer's knowledge. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983).

Here, law enforcement officers violated the Fourth Amendment by unreasonably seizing Plaintiffs' medical supplies and medics' station materials. For example, to provide protesters with medical assistance, Plaintiff Martinez, with the OHSU for Black Lives Matter group, had set up a medics' station for several days at the protests with a table, tent, and banner that prominently displayed medic symbols, first aid signs, and the logo for OHSU. Martinez Decl. ¶ 22; Dr. Morgans Decl. ¶ 14. Protest medics and community members brought medical supplies to the medics' station, including wipes and saline solution to rinse protesters' eyes after a tear gas attack, gauze and bandages, and personal protective equipment to help protesters observe public health measures, such as masks, gloves, and a hand sanitizer. Martinez Decl. ¶¶ 23-24. On June 13, 2020, law enforcement officers confiscated from the OHSU for Black Lives Matter group's table, tent, banner, and

36- MOTION FOR TEMPORARY RESTRAINING ORDER
AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

medical supplies and did not return those items. Martinez Decl. ¶ 41; Dr. Morgans Decl. ¶¶ 14-16; *see also* Shifflett Decl. ¶ 11 (describing an incident where the Portland Police "dumped [Shifflett's] medical-supply bag into the street" before physically detaining her). They managed to recover their table and some medical supplies from the Portland Police's outgoing trash, but have not yet received their tent, banner, or the remainder of their medical supplies. Martinez Decl. ¶ 41; Dr. Morgans Decl. ¶ 16. While OHSU owns some of this property, such as the banner, Plaintiff Martinez's possessory interest in the property is sufficient for him to have suffered an injury when the property was seized. *Jacobsen*, 466 U.S. at 113 (defining "seizure" as the interference with an individual's *possessory*, not ownership, interests).

The officers had no plausible reason to associate the medical supplies and medics' table materials with criminal activity, let alone one sufficient to provide probable cause. The medic symbols, first-aid signs, and the logo for OHSU made clear that the table, banner, and tent were part of a medics' table to promote public health and safety. The supplies were also plainly items for medical assistance. Further, the OHSU group had established and maintained the medics' station at the protests for several days, without causing any concern of criminal activity. Thus, per the totality of the circumstances within the officers' knowledge, the medical supplies and medics' table materials were not associated with criminal activity, but with public safety and health instead. The officers' seizure of the medical supplies and medics' table materials was therefore unreasonable.

As such, Plaintiffs have clearly established a likelihood of success on the merits that law enforcement officers violated the Fourth Amendment by unlawfully seizing Plaintiffs' property.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

### 3.   Defendants continue to violate Plaintiffs' Fourth Amendment rights.

The Portland Police have shown no sign of refraining from using excessive force and unlawfully arresting protest medics. Martinez Decl. ¶ 33-40; Wise Decl. ¶ 22-28; Wise Suppl. Decl. ¶¶ 4-6; Hubbard Suppl. Decl. ¶¶ 3-15; Shifflett Decl. ¶¶ 9-13; Rivera Decl. ¶ 11-18. Nearly every day that protest medics have participated in the protests, Portland Police have beat them, shot them with bullets, or sprayed them with chemical irritants. As a result, protest medics reasonably fear that the Portland Police will continue to target them with excessive force for rendering medical assistance to protesters. Durkee Decl. ¶ 31 (Defendants' "objective appears to be to inflict so much pain on the protesters, and those trying to medically provide for the protesters, that the protesters and medics like myself forget that we have a right to peacefully protest or forgo that right in favor of safety"); *see* Hubbard Decl. ¶ 14 ("I have had to stay home on some nights due to injuries I have suffered"); Guest Decl. ¶ 26 (noticing dwindling number of protest medics); Shifflett Decl. ¶ 14 ("Because I fear for my physical and emotional safety, I will continue to serve as a protest medic, but I am sure that doing so will result in additional physical harm to me and my fellow protest medics.").

Defendants' ongoing violation of the Fourth Amendment has chilled Plaintiffs' efforts at providing medical aid. Martinez Suppl. Decl. ¶¶ 4-6 ("I have had to take a significant amount of time off from serving as a medic at the protests."); Wise Dec. ¶¶ 32-33 ("I am afraid that continued aggression against medics will force protest medics to choose between either adhering to their training as medical professionals by helping injured individuals (if they are willing and able to), or not intervening to provide care simply because of the fear of suffering their own physical injuries at the hands of police and federal agents. I am concerned

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

about this because it is already happening"); Guest Decl. ¶ 27 ("The brutality of the police and federal officers has had a chilling effect on me. It feels targeted toward medics, to make sure that we are punished for taking care of protesters"); Durkee Decl. ¶ 34 ("[t]he shooting of Donavan La Bella . . . gave us pause, as the stakes of attending the Portland protests became clearer."); Shifflett Decl. ¶ 14 ("Although I attend the protests in Portland regularly, the violence by law enforcement has resulted in me needing to take more days off and to take longer breaks while serving."); Hubbard Suppl. Decl. ¶ ("I have not been back to the protests since my arrest even though I want to be out there showing my support as a protest medic."). As a result, although Plaintiffs would like to continue attending the protests daily, the Portland Police's actions have severely constrained Plaintiffs' efforts. And every day that Plaintiffs miss a protest, more protesters suffer from the Portland Police's abuses, without the assistance of a protest medic.

As discussed below, the Portland Police's continual use of excessive force against Plaintiffs and other protest medics has consequences beyond just the medics' ability to engage in expressive conduct by rendering care at nightly protests. By reducing the availability of on-site medical care, the Portland Police's targeting of protest medics also chills the nightly protests themselves, by creating an unsafe environment that potential protesters must think twice about before joining.

### C.    Plaintiffs will suffer irreparable harm without the Court's intervention.

With each passing night where Plaintiffs are inhibited and intimidated from exercising their First Amendment rights, they suffer irreparable injury. That is, each time protest medics like Plaintiffs experience violence, are unlawfully seized, and have their medical supplies taken or destroyed, they suffer irreparable injury.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Because Plaintiffs have, at a minimum, raised colorable claims that the exercise of their constitutionally protected right to provide medical aid to demonstrators has been infringed, the irreparable injury (violations of their First and Fourth Amendment rights) is met.

"Anytime there is a serious threat to First Amendment rights, there is a likelihood of irreparable injury." *Warsoldier*, 418 F.3d at 1001-02; *see Don't Shoot Portland*, 2020 WL 3078329 at *3-4 (finding a likelihood of irreparable harm where the plaintiffs established "a likelihood of success on the merits of their Fourth Amendment claim and at least a serious question as to whether they have been deprived of their First Amendment rights"). As long as the Portland Police are free to target medics with munitions, beat them back with riot batons, and otherwise unlawfully seize them, Plaintiffs' exercise of their First Amendment rights will "surely [be] chilled," *Black Lives Matter-Seattle*, 2020 WL 3128299, at *3, and their Fourth Amendment rights will be deprived.

Not only have Plaintiffs shown an overwhelming likelihood of success on their claims, they also have demonstrated continuous immediate and threatened irreparable harms—including their inability to render aid to protest attendees due to police interference. As a result, Plaintiffs have already been injured. All protest medics attending these demonstrations, including those who do not leave the medical stations, fear for their safety in light of the excessive tactics the police have used over the past 80 days. Wise Decl. ¶¶ 31-33; Martinez Suppl. Decl. ¶ 5; Durkee Decl. ¶¶ 30-32; Guest Decl. ¶¶ 23-25; Hubbard Decl. ¶ 12; Shifflett ¶ 14. Some of them have had to decrease their attendance to recover physically and emotionally. Durkee Decl. ¶¶ 34-35; Wise Decl. ¶ 27; Martinez Suppl. Decl. ¶¶ 4-6; Hubbard Decl. ¶ 14; Hubbard Suppl. Decl. ¶ 15; Guest Decl. ¶¶ 26-28; Shifflett Decl. ¶ 14.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

The harm is ongoing. Protests continue. The protest medics want to attend as the Portland Police meet the protests with more and more violence. Durkee Decl. ¶ 37; Wise Decl. ¶¶ 34; Wise Suppl. Decl. ¶ 7; Dr. Morgans Decl. ¶¶ 23-24; Martinez Suppl. Decl. ¶ 7; Hubbard Decl. ¶ 15; Guest Decl. ¶ 31; Shifflett Decl. ¶ 14; Rivera Decl. ¶ 23. Protest medics want to ensure that when the inevitable happens— protesters are injured by police violence—those suffering will be cared for even if it means the protest medics themselves will be harmed. But that does not have to be so. For all the above reasons, the irreparable injury requirement is met.

### D. The public's interest and balance of equities weigh strongly in Plaintiffs' favor.

#### 1. The public has an unassailable interest in free speech and medical care.

Courts have "consistently recognized the significant public interest in upholding First Amendment principles" when considering requests for preliminary injunctions. *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (internal quotations omitted). For, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotations omitted). And, as Chief Judge Hernandez recently wrote: "This is a significant moment in time. The public has an enormous interest in the rights of peaceful protesters to assemble and express themselves. These rights are critical to our democracy." *Don't Shoot Portland*, 2020 WL 3078329 at *4.

Plaintiffs are volunteer medics providing comfort and care to protesters engaged in demonstrations of worldwide concern, to members of the press documenting the protests, to other protest medics rendering aid at the protests, and to bystanders who are harmed by the Portland Police's indiscriminate displays of force. The Portland Police, in response, have targeted protest medics, singling them

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

out for arrest, shooting them with munitions when they are trying to render aid, and retaliating with bear mace to the face when they ask for permission to help people prostrate in pain.

By engaging in these unconstitutional acts, the Portland Police have attempted to quash Plaintiffs' message: that demonstrators can feel safe working to counter the otherwise chilling impact of the Portland Police's own violence. But Plaintiffs will not go quietly. Where so many protesters have been left battered, beaten, and traumatized by the police, there is a significant public interest that those injured may receive medical treatment.

The interest at stake here, however, is not just Plaintiffs' own interest in engaging in expressive conduct by rendering medical care (although, that interest surely is at stake). It is not just the interest of victims of violence perpetrated by law enforcement at protests to receive prompt medical care (although, that interest, also, clearly is at stake). The greater *public* interest at stake here is in being free to participate in Portland protests safely and with the knowledge that medics are onsite and able to render care in an emergency. If the First Amendment is to mean anything, it must mean that Oregonians are free to join voices in solidarity with the Black Lives Matter movement, to demand that the government take steps to redress systemic racism and—with the strongest vehemence—violent, draconian, and excessive policing. By targeting protest medics, Defendants do not burden only Plaintiffs' rights and those of the individuals to whom they care; rather, the Portland Police make the entire protest less safe by reducing the number of medics present and able to render care. And Oregonians who wish to join the protests, or who already are there and wish to stay later, are chilled from doing so when they perceive that the protests are unsafe as a result of the Portland Police's actions.

42-  MOTION FOR TEMPORARY RESTRAINING ORDER
     AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

In the context of the Portland Police's violent, riotous actions in recent months, the public's interest in having a frontline provider of first aid is obvious and cannot reasonably be questioned. The work of Plaintiffs as protest medics is necessary to facilitate a safe protest. In this critical moment in history, this Court must ensure the continued ability of the public to gather and express itself by protecting Plaintiffs' ability to provide care and safety to all demonstrators. The public interest demands it.

## 2.    The balance of equities tips sharply in Plaintiffs' favor.

Plaintiffs have "raised serious First [and Fourth] Amendment questions." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (internal quotations omitted). The balance of hardships therefore "tips sharply in [their] favor." *Id.* Plaintiffs' evidence shows that they have not presented any danger to public, to property, or to the Portland Police. To the contrary, they mitigate dangers that befall protest attendees and bystanders—they render medical aid and proactively work to diffuse tension and de-escalate thorny situations. Plaintiffs' evidence also shows, however, that the Portland Police have exercised their discretion in a retaliatory fashion to punish protest medics for rejecting the police's own violence. The Portland Police have substantially and irreparably harmed Plaintiffs.

On the other side of the scale, any harm to the Government would be negligible. The Government might have an interest in protecting buildings and property, but that interest is not served by using excessive force against individuals who are serving as volunteer medics. Protest medics present no threat to the police or to the public.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

To protect the protest medics—and ultimately, the public at large—this Court should enjoin the police from targeting and injuring medics in retaliation for their administration of aid. Although limiting the use of force in certain situations could impede an officer's ability to protect themselves against potential violence from demonstrators, here, any marginal risk of harm in limiting only the Portland Police's use of force to directly target protest medics is wholly outweighed by the irreparable harm that Plaintiffs—engaged in peaceful expression—will endure. Accordingly, the balance of equities weighs in Plaintiffs' favor.

**E.    Plaintiffs' requested relief is reasonable.**

In crafting the relief that they request in this Motion, Plaintiffs have, consistent with Judge Simon's Temporary Restraining Order in *Index Newspapers*, 2020 WL 4220820, narrowly tailored their request for relief to ensure that it enjoins only unconstitutional activity targeted at protest medics:

- Recognizing that law enforcement officers sometimes operate when visibility is diminished, and at times when they must make quick decisions, Plaintiffs' requested relief includes an adequate description of the distinctive markings they will wear so that Defendants can clearly identify protest medics.

- Plaintiffs' proposed order states that Defendants would not be liable for indirect and unintended exposure to crowd-dispersal munitions following the issuance of a lawful dispersal order.

- The proposed order also contains sufficiently clear standards, so that Defendants will easily be able to determine what, when, and how their activity is prohibited. For example, in one of the requests for relief, Plaintiffs rely on existing Oregon statutes, Or. Rev. Stat. § 133.235, which regulates the use of force by law enforcement officers in Oregon, for the applicable standard.

*See id.* at *9-10 (issuing an order similar to that sought here); *see also* Opinion and Order Granting Preliminary Injunction at 44, *Index Newspapers LLC v. City of*

44-  MOTION FOR TEMPORARY RESTRAINING ORDER
      AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Portland*, No. 3:20-cv-1035-SI (D. Or. Aug. 20, 2020) (ECF 157) (noting that City of Portland stipulated to preliminary injunction protecting press and legal observers, providing "compelling evidence" that the TRO was workable for Portland Police to follow). Thoughtful and narrowly crafted relief limiting only the ability of the Portland Police to target protest medics is more than reasonable in light of the serious constitutional violations resulting from the Portland Police's attacks.

## IV.   CONCLUSION

These protests have continued for more than 80 days, and the Plaintiffs continue to put their health and safety on the line helping others. Based on the record presented here, Plaintiffs have established the basis for the requested relief. For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for a Temporary Restraining Order.

DATED:  August 21, 2020              PERKINS COIE LLP

By: */s/ Nathan Morales*
**Rian Peck**, OSB No. 144012
**Thomas R. Johnson**, OSB No. 010645
**Misha Isaak**, OSB No. 086430
**Nathan Morales**, OSB No. 145763
**Shane Grannum**, *pro hac vice*
**Sarah Mahmood**, *pro hac vice* pending
**Zachary Watterson**, *pro hac vice*
PERKINS COIE LLP

**Kelly K. Simon**, OSB No. 154213
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON

*Attorneys for Plaintiffs*

45- MOTION FOR TEMPORARY RESTRAINING ORDER
AGAINST MUNICIPAL DEFENDANTS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222