**Rian Peck** (they/them), OSB No. 144012
RPeck@perkinscoie.com
**Thomas R. Johnson** (he/him), OSB No. 010645
TRJohnson@perkinscoie.com
**Misha Isaak** (he/him), OSB No. 086430
MIsaak@perkinscoie.com
**Nathan Morales** (he/him), OSB No. 145763
NMorales@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Shane Grannum** (he/him), *pro hac vice*
SGrannum@perkinscoie.com
**Sarah Mahmood** (she/her), *pro hac vice* pending
SMahmood@perkinscoie.com
PERKINS COIE LLP
700 13th Street, NW, Suite 800
Washington, D.C.  20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211

**Zachary Watterson** (he/him), *pro hac vice*
ZWatterson@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

**Kelly K. Simon** (she/her), OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone:  503.227.6928

*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
FEDERAL DEFENDANTS' MOTION TO DISMISS

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CHRISTOPHER WISE, MICHAEL MARTINEZ, CHRISTOPHER DURKEE,** and **SAVANNAH GUEST,** individuals,<br><br>                Plaintiffs,<br><br>   v.<br><br>**CITY OF PORTLAND,** a municipal corporation**; OFFICER STEPHEN B. PETTEY,** in his individual capacity**; JOHN DOES 1-60,** individual and supervisory officers of Portland Police Bureau**; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. MARSHALS SERVICE; JOHN DOES 61-100**, individual and supervisory officers of the federal government,<br><br>                Defendants. | Case No. 3:20-cv-01193-IM<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS**<br><br>ORAL ARGUMENT REQUESTED |

PLAINTIFFS' RESPONSE IN OPPOSITION TO
FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTS .............................................................................................................. 2

ARGUMENT ..................................................................................................... 5

I.     Plaintiffs have standing to seek equitable relief from federal defendants ............ 5

       A.     Federal Defendants have repeatedly infringed on Plaintiffs' constitutional rights, making the threat of future harm all but certain ........................................................................................... 6

       B.     The Federal Defendants' infringing conduct was officially sanctioned .................................................................................. 8

       C.     Plaintiffs continue to suffer harm from the Federal Defendants' unconstitutional actions ................................................................ 11

       D.     The Federal Defendants' arguments apply to other circumstances ......... 11

II.     Plaintiffs state plausible claims under the first and fourth amendments against federal defendants .................................................................. 15

       A.     Plaintiffs adequately plead their First Amendment claim ...................... 15

             1.     Plaintiffs engaged in constitutionally protected speech .............. 15

             2.     The Federal Defendants' conduct would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech ................................................. 18

             3.     Plaintiffs' protected activities were a substantial motivating factor in the Federal Defendants' conduct .................................. 19

       B.     Issues of fact pervade the "reasonableness" inquiry necessary to evaluate Plaintiffs' Fourth Amendment claims ..................................... 23

III.     Plaintiffs have sufficiently pleaded a claim under the Administrative Procedure Act ........................................................................................ 25

CONCLUSION ................................................................................................. 32

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# TABLE OF AUTHORITIES

**Page**

CASES

*Abay v. City of Denver*,
    445 F. Supp. 3d 1286 (D. Colo. 2020) ................................................................... 19

*Aid Ass'n for Lutherans v. U.S. Postal Serv.*,
    321 F.3d 1166 (D.C. Cir. 2003) .............................................................................. 30

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*,
    946 F.3d 615 (D.C. Cir. 2020) ................................................................................. 7

*Ariz. Students Ass'n v. Ariz. Bd. of Regents*,
    824 F.3d 858 (9th Cir. 2016) ................................................................................. 19

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ................................................................................ 6, 9

*Associated Press v. Otter*,
    682 F.3d 821 (9th Cir. 2012) ................................................................................. 11

*Batalla Vidal v. Wolf*,
    Case 1:16-cv-04756-NGG-VMS, ___ F. __ (Nov. 14, 2020, E.D.N.Y.
    2020) ........................................................................................................................ 11

*Bautista v. City of Glendale*,
    No. CV 18-0740-FMO (KS), 2019 WL 2587817 (C.D. Cal. May 7,
    2019) .................................................................................................................... 23, 24

*Black Lives Matter Seattle-King Cty. v. City of Seattle*,
    No. 2:20-cv-00887-RAJ, 2020 WL 3128299 (W.D. Wash. June 12,
    2020) ........................................................................................................ 16, 18, 19, 20

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ................................................................................................. 5

*Boos v. Barry*,
    485 U.S. 312 (1988) ................................................................................................ 16

*Burgert v. Lokelani Bernice Pauahi Bishop Trust*,
    200 F.3d 661 (9th Cir. 2000) ................................................................................. 24

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF AUTHORITIES
### (continued)

**Page**

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) .......................................................................................passim

*City of Philadelphia v. Sessions,*
309 F. Supp.3d 271 (E.D. Penn. 2018)................................................. 30

*Corales v. Bennett,*
567 F.3d 554 (9th Cir. 2009) .................................................................. 16

*Cornel v. Hawaii,*
No. CV 19-00236 JMS-RT, 2020 WL 3271934 (D. Haw. June 17,
2020)........................................................................................................ 23

*County of Los Angeles v. Davis,*
440 U.S. 625 (1979) ................................................................................ 13

*Drozd v. McDaniel,*
No. 3:17-cv-556-JR, 2019 WL 8757218 (D. Or. Dec. 19, 2019) ............ 19

*Ely v. Velde,*
451 F.2d 1130 (4th Cir. 1971) ................................................................ 30

*Ex parte Young,*
209 U.S. 123 (1908) ................................................................................ 15

*Fort Lauderdale Food Not Bombs*, 901 F.3d at 1241 ............................... 16

*Holloman ex rel. Holloman v. Harland,*
370 F.3d 1252 (11th Cir. 2004) .............................................................. 16

*In re Navy Chaplaincy,*
697 F.3d at 1176....................................................................................... 9

*Index Newspapers LLC v. City of Portland,*
No. 3:20-CV-1035-SI, 2020 WL 4220820 (D. Or. July 23, 2020) ............. 13, 14, 20

*LaDuke v. Nelson,*
762 F.2d 1318 (9th Cir. 1985) ............................................................ 9, 14

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) .................................................................................. 6

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Mayfield v. United States,*
    599 F.3d 964 (9th Cir. 2010) ................................................. 14

*Meyer v. Cty. of Washington,*
    No. CIV. 07-1127-HA, 2008 WL 5156481 (D. Or. Dec. 8, 2008) .......................... 23

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.,*
    463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) ............................... 31

*Nordstrom v. Ryan,*
    762 F.3d 903 (9th Cir. 2014) .................................................. 6

*O'Shea v. Littleton,*
    414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ...................... 13, 14

*Outdoor Media Grp., Inc. v. City of Beaumont,*
    506 F.3d 895 (9th Cir. 2007) ............................................. 10, 27

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
    547 U.S. 47 (2006) ........................................................... 7

*Sampson v. Cty. of Los Angeles,*
    974 F.3d 1012 (9th Cir. 2020) ............................................... 15

*Shays v. FEC,*
    414 F.3d 76 (D.C. Cir. 2005) ................................................. 9

*Thomas v. Cty. of Los Angeles,*
    978 F.2d 504 (9th Cir. 1992), *as amended* (Feb. 12, 1993) ............... 6, 8, 13

*U.S. v. W.T. Grant Co.,*
    345 U.S. 629 (1953) ......................................................... 13

*United States v. Sanchez-Gomez,*
    138 S. Ct. 1532 (2018) ...................................................... 13

*United States v. Washington,*
    759 F.2d 1353 (9th Cir. 1985) ............................................... 14

*Villa v. Maricopa County,*
    865 F.3d (9th Cir. 2017) ..................................................... 11

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES
### (continued)

Page

*Western States Center, Inc. v. United States Department of Homeland Security*,
  No. 3:20-cv-01175-JR, 2020 WL 6555054 (D. Or. Nov. 2, 2020) .............. 10, 30, 31

*Whitman v. American Trucking Ass'ns*,
  531 U.S. 457, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) ............................................. 25

*Worth v. Jackson*,
  451 F.3d 854 (D.C. Cir. 2006) ................................................................................. 9

**STATUTES**

5 U.S.C. § 551 ................................................................................................ 25, 28, 29

5 U.S.C. § 704 ........................................................................................................... 25

5 U.S.C. § 706 ........................................................................................................... 30

Administrative Procedure Act ..............................................................................passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 201 .............................................................................................. 10, 27

Jordan Muller, Politico, *Trump calls protesters 'terrorists,' pledges 'retribution' for tearing down statues*,
  https://www.politico.com/news/2020/06/26/trump-retribution-protesters-statues-340957 ......................................................................................... 28

United States Constitution, First Amendment ....................................................passim

United States Constitution, Fourth Amendment ........................................... 1, 23, 24

United States Constitution, Article III ............................................................. 5, 9, 14

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## INTRODUCTION

Plaintiffs are four individuals who challenge systemic racism and police violence by attending daily protests in Portland. The Federal Defendants—along with Portland Police Officers—have made attending those protests physically dangerous through the unfettered use of tear gas, less lethal munitions, and military tactics. Moved by what they saw, Plaintiffs, as trained medics, began administering first aid and medical assistance to their fellow protesters. Plaintiffs did so because they believe that everyone should be able to protest police violence without fear of sustaining serious physical injury at the hands of law enforcement. Plaintiffs render this aid while wearing distinctive clothing marked with an internationally-recognized symbol for medics—the red cross—emblazoned across themselves. Because of the effectiveness of Plaintiffs' message, the Federal Defendants began singling Plaintiffs out, targeting them with pepper balls, shooting them with tear gas cannisters, and beating them with Billy clubs. In the face of that danger and oppression, however, Plaintiffs have always remained peaceful.

The First Amendment protects, among other things, the right to peaceful assembly. All may come together to express, collectively, shared ideals without interference from the government. Similarly, the Fourth Amendment protects people from unreasonable physical intrusions by the government. The Administrative Procedure Act (the "APA") protects Americans from arbitrary and unlawful actions taken by the Executive Branch. In contravention of the ideals of limited government and expansive personal freedoms, and motivated by antagonism to the message expressed by Portland Protesters, the Federal Defendants cracked down on lawful assemblies; they beat, struck, moved, and

1-  PLAINTIFFS' RESPONSE IN OPPOSITION TO
    FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

arrested protesters without probable cause; they were sent to Portland in the first place under an unlawful order.

The Federal Defendants' Motion to Dismiss should be denied for four reasons. First, Plaintiffs have standing to bring their claims because the Federal Defendants have infringed on Plaintiffs' constitutional and statutory rights day after day after day. Second, Plaintiffs have adequately pleaded that their activities are protected by the First Amendment, and indeed that their actions are high-value speech essential to holding police and federal actors accountable. Third, Plaintiffs have adequately stated claims that their right to be free from unreasonable searches and seizures has been violated by the Federal Defendants' violent conduct toward Plaintiffs, who peacefully look after fellow protesters in need.  Fourth and finally, Plaintiffs have identified an arbitrary and illegal "agency action" affecting their statutory and constitutional rights, for which the APA grants them relief.

## FACTS

In the wake of George Floyd's murder, protesters in Portland took to the streets to protest police violence. ECF 1 ¶ 30. At the time of filing the Complaint in this matter, daily protests had taken place on at least 50 consecutive days. ECF 1 ¶ 30. Protests against racism and police violence in Portland continue. ECF 1 ¶ 180.

Responding to the growing unrest, President Trump issued an Executive Order on Protecting American Monuments, Memorials, and Statues and Combating Recent Criminal Violence (the "Executive Order"). ECF 1 ¶ 39. In it, he took issue with the protesters' political views, stating that many of them "have explicitly identified themselves with ideologies — such as Marxism — that call for the destruction of the United States system of government." ECF 1 ¶ 39. The President also declared that state and local governments had, in the face of mass protests,

2- PLAINTIFFS' RESPONSE IN OPPOSITION TO
FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

"lost the ability to distinguish between the lawful exercise of rights to free speech and assembly and unvarnished vandalism." ECF 1 ¶ 40. The President also asserted that State and local governments' sometimes brutal and militaristic police response to the protests had been inadequate, representing an "abdication of their law enforcement responsibilities in deference to [the protesters' alleged] violent assault" and a "surrender[] to mob rule." ECF 1 ¶ 40.

Federal Officers were deployed to Portland under the Executive Order. ECF 1 ¶ 41. Upon arrival, Department of Homeland Security and U.S. Marshal's Service officers use many of the same weapons against protesters that the Portland Police deploy. ECF 1 ¶ 44. The Portland Police employed pepper spray, bear mace, tear gas, and similar weapons against the people of Portland. ECF 1 ¶ 36.

In response to the growing federal presence, Portland protests continued and even grew. ECF 1 ¶ 180. Undeterred, Acting Secretary of the Department of Homeland Security said on several occasions, including in a tweet, that the Federal Defendants "will never surrender" and that they "will prevail" against "violent extremist" and "violent anarchists." ECF 1 ¶ 176. Likewise, President Trump declared that, should "the protests start[] again, we'll quell it again very easily. It's not hard to do if you know what you're doing." ECF 1 ¶ 177.

Plaintiffs are four individuals, Christopher Wise, Michael Martinez, Christopher Durkee, and Savannah Guest. Each, in the face of tear gas, rubber bullets, and other munitions, have chosen to exercise their rights to free speech by their commitment to creating a safer environment for their compatriots to express their desire for change. ECF 1 ¶ 2.

As punishment for exercising their rights, Plaintiffs have been specially targeted by the police and their federal counterparts. ECF 1 ¶¶ 4, 49, 62-63.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Plaintiffs have been subject to DHS and USMS tear gas. ECF 1 ¶ 47. The Federal Defendants' use of force appears undertaken in concert with the Portland Police. ECF 1 ¶ 173. The Federal Defendants' conduct is also part of a longstanding pattern of assaulting and threatening protest medics to prevent them from rendering aid to protesters, journalists, neutral legal observers, and their fellow protest medics. ECF 1 ¶ 64. This targeting is no accident: The Federal Defendants tell medics directly that they, protest medics, will be arrested and assaulted. ECF 1 ¶ 174.

Each Plaintiff, to varying individual degrees, has experienced at least some persistent mental fog, drowsiness, grogginess, nausea, diarrhea, loss of appetite, sustained asthma flare-ups, and increased or interrupted menstrual cycles from federal tear gas. ECF 1 ¶ 49. Besides their physical injuries, the Federal Defendants' conduct has intimidated medics and otherwise so exhausted them that they feel they cannot continue attending protests with the frequency required to protect the health and safety of protesters. ECF 1 ¶ 64. Medics fear for their safety, risk of tear gas, rubber bullets, batons, arrest. ECF 1 ¶ 172-73.

Mr. Wise attends protests six nights a week unless too injured by police. ECF 1 ¶ 65. Mr. Wise has been severely injured many times. Officers threaten him with physical harm nearly every night he attends protests. ECF 1 ¶ 69. Mr. Wise was targeted and shot with rubber bullets while assisting an injured protester. ECF 1 ¶ 72. Mr. Wise has been hit directly with a flash-bang grenade. ECF 1 ¶ 75. Portland Police maced Mr. Wise as Mr. Wise assisted an injured protester. ECF 1 ¶ 80. Portland Police and U.S. Marshals working together tear gassed the crowd and "bull rushed" a crowd containing Mr. Wise; one officer singled Mr. Wise out of the crowd and knocked him down, injuring him and damaging his property. ECF 1 ¶ 84. As Portland Police worked to "kettle" a crowd, the Federal Defendants targeted and

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

shot Mr. Wise directly with pepper balls. ECF 1 ¶ 90. The Federal Defendants have thrown or shot flashbang grenades and teargas canisters directly at Mr. Wise. ECF 1 ¶ 93. For Mr. Wise, police violence blurs together because of the kinds of injuries caused when, night after night, the Portland Police and Federal Defendants act in tandem to target protest medics, including Mr. Wise. *Id.*

Plaintiffs Mr. Durkee and Ms. Guest have endured similar violence at the hands of the Federal Defendants. On July 4, a federal officer shot Ms. Guest with projectile. ECF 1 ¶ 153. Then, another federal officer hit her with a baton. ECF 1 ¶ 153. Days later, a federal officer fired pepper balls at both Mr. Durkee and Ms. Guest. ECF 1 ¶ 159. Another federal officer targeted Ms. Guest with a tear-gas canister. ECF 1 ¶ 160. Yet another federal officer shot Ms. Guest with rubber bullets. *Id.*. Later, a different federal officer shoved Mr. Durkee, knocking both Ms. Guest and Mr. Durkee over. ECF 1 ¶ 168. A Federal Defendant struck Mr. Durkee and Ms. Guest multiple times. *Id.* Both Mr. Durkee and Ms. Guest had to purchase helmets and protective gear, staying away from the protests until they had the gear that they felt would make it safe enough that they could return. ECF 1 ¶ 171.

## ARGUMENT[1]

## I.    PLAINTIFFS HAVE STANDING TO SEEK EQUITABLE RELIEF FROM FEDERAL DEFENDANTS.

Article III of the United States Constitution demands neither clairvoyance nor the "consummation of threatened injury" before a plaintiff may obtain prospective relief like an injunction or declaratory judgment. *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982) (quotation marks omitted). Rather, a plaintiff seeking injunctive relief need only show "that he is realistically threatened by a *repetition* of

---

[1]    Plaintiffs do not dispute the Federal Defendants' statement of the legal standard in their motion to dismiss.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

[the violation]." *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001) (emphasis in original) (internal quotation marks omitted). Plaintiffs have sufficiently alleged both that the Federal Defendants have repeatedly infringed Plaintiffs' rights and that the Federal Defendants have an official policy, as well as a pattern and practice, of engaging in unlawful conduct. When Plaintiffs allege future injury, that threat is sufficiently "imminent" to be a cognizable injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### A. Federal Defendants have repeatedly infringed on Plaintiffs' constitutional rights, making the threat of future harm all but certain.

To satisfy the standing requirement needed for obtaining injunctive relief, Plaintiffs have pleaded facts showing how the Federal Defendants' past conduct threatens Plaintiffs with repetition of the violation. *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014). Plaintiffs here have standing to seek injunctive relief because they have suffered "actual repeated [injuries]" at the hands of the defendant. *Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992) (quotation marks omitted), *as amended* (Feb. 12, 1993). Although standing must rest on more than attenuated conjecture, the "possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." *Id.* That is because "[r]epeated instances of violence and retaliatory confrontations are 'continuing present adverse affects' and cause the threatened injury to be 'sufficiently real and immediate to show an existing controversy.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)).

Plaintiffs injuries here are far from a "one off." There are nightly protests in Portland, ECF 1 ¶ 30, and, at the time of filing the Complaint, there had been at least 50 straight days of demonstrations. ECF 1 ¶ 178. The Portland Police and the

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Federal Defendants have targeted Plaintiffs with rubber bullets, shoved them, sprayed tear gas at close range, arrested them, and taken their property. ECF 1 ¶ 4. Plaintiffs have repeatedly been subject to DHS and USMS tear gas, which differs from the gas used by Portland Police. ECF 1 ¶ 47. The Federal Defendants' conduct that harmed Plaintiffs was not indiscriminate, as the Federal Defendants have specifically targeted protest medics, including Plaintiffs. ECF 1 ¶ 62-63. The Federal Defendants even tell medics directly that they will be arrested and the subject of violence, ECF 1 ¶ 174, and Plaintiffs have faced that violence in the form of tear gas, rubber bullets, Billy clubs, and unlawful arrest. ECF 1 ¶ 172-73.

When—as here—all Plaintiffs seek the same relief, "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *see also Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 619-20 (D.C. Cir. 2020). At least one Plaintiff has sufficiently alleged constitutional harm at the hands of the Federal Defendants. Mr. Wise attends protests six nights a week unless too injured, ECF 1 ¶ 65. He has been severely injured multiple times. ECF 1 ¶ 69. Officers threaten him with physical harm nearly every night he attends protests. ECF 1 ¶ 69. Mr. Wise has been hit with a flash bang grenade, ECF 1 ¶ 75, and maced as he assisted an injured protester. ECF 1 ¶ 80. Portland Police and Federal Defendants working together tear gassed the crowd and "bull rushed" the crowd. During that coordinated rush, one officer singled Mr. Wise out and knocked him down, injuring him and damaging his property. ECF 1 ¶ 84. Federal Agents "kettled" the crowd and then shot Mr. Wise directly with pepper balls. ECF 1 ¶ 90. Federal officers have thrown or shot flashbang grenades and teargas canisters directly at Mr. Wise. ECF ¶ 93. It is understandable that the state-sanctioned

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

violence blurs together for Mr. Wise because of the kinds of injuries caused when the Portland Police and the Federal Defendants have thrown or shot flashbang grenades and teargas canisters directly at him. ECF 1 ¶ 93.

So too with Plaintiff Durkey and Plaintiff Guest, who work as medics together. On July 4, a federal officer shot Ms. Guest with projectile. ECF 1 ¶ 153. Later the same night, another Federal Defendant later struck her with a baton. ECF 1 ¶ 153. On another day, a Federal Defendant fired pepper balls directly at both Mr. Durkee and Ms. Guest. ECF 1 ¶ 159. In yet another instance, Federal Defendants targeted Ms. Guest with a tear-gas canister. ECF 1 ¶ 160. Later, Federal Defendants shot Ms. Guest with rubber bullets. ECF 1 ¶ 160. In another incident, Federal Defendants shoved Mr. Durkee and knocked both Ms. Guest and Mr. Durkee over, ECF 1 ¶ 168, and then a Federal Defendant hit Mr. Durkee and Ms. Guest multiple times. ECF 1 ¶ 168. As a result, both Ms. Guest and Mr. Durkee had to purchase helmets and protective gear, and each stayed away from the protests for a time. ECF 1 ¶ 171. And of course, although Ms. Guest and Mr. Durkee work in tandem, the constitutional harm done to them by the Federal Defendants are unique to each of them.[2]

### B.    The Federal Defendants' infringing conduct was officially sanctioned.

By pleading facts showing that Plaintiffs' injuries were caused by "a pattern of officially sanctioned behavior," *Thomas*, 978 F.2d at 507, Plaintiffs have shown

---

[2]    Plaintiffs also dispute the Federal Defendants' characterization of the litany of harms that befell them as "four incidents" occurring on "just two nights." ECF 58 at 9. The Federal Defendants collapse a series of harms into single events. But even in describing the events, the Federal Defendants write that two Plaintiffs were each shot, *then later* shot again, *then later* shoved and hit with batons. ECF 58 at 9. This description also ignores that Plaintiffs attend protests nightly and have faced a confusing array of harms from several state, county, and federal officers working together. ECF 1 ¶ 93.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

that the Federal Defendants threaten them with future injury. Official sanction may take many forms. It may come in the form of a written policy that harms plaintiffs, *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001), or in the form of "pronouncements" suggestive of sanctioned officer behavior. *LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985). Both are present here.

Plaintiffs have sufficiently alleged that the Federal Defendants have a policy of unlawful conduct. *See* Part III, below. Even if it turned out that the Federal Defendants' policy sanctioning unlawful conduct was not a reviewable agency action under the Administrative Procedure Act, however, when a plaintiff sufficiently alleges that their injury was pursuant to defendants' "concrete and consistently-implemented polic[y] to produce injury," that is a cognizable injury-in-fact for Article III standing. *In re Navy Chaplaincy*, 697 F.3d at 1176; *see also Worth v. Jackson*, 451 F.3d 854, 860 (D.C. Cir. 2006); *cf. Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005) ("[W]hen agencies adopt procedures inconsistent with statutory guarantees, parties who appear regularly before the agency suffer injury to a legally protected interest in fair decisionmaking." (internal quotation marks omitted)).

President Trump issued an Executive Order on Protecting American Monuments, Memorials, and Statues and Combating Recent Criminal Violence (the "Executive Order"). The Federal Defendants purportedly were dispatched pursuant to that Executive Order. ECF 1 ¶ 41. In the Executive Order, the President of the United States vilified the protesters' political views, stating that many of them "have explicitly identified themselves with ideologies—such as Marxism—that call for the destruction of the United States system of government." ECF 1 ¶ 39.

The President also declared that state and local governments had, in the face of mass demonstrations, "lost the ability to distinguish between the lawful exercise

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

of rights to free speech and assembly and unvarnished vandalism." Mr. Trump also asserted that state and local governments' sometimes brutal and militaristic police response to the protests had so far been inadequate, representing an "abdication of their law enforcement responsibilities in deference to [the protesters' alleged] violent assault" and a "surrender[] to mob rule." ECF 1 ¶ 40.

Unlike in most cases, here the order to infringe on the rights of protesters like Plaintiffs came straight from the top. *See Lyons*, 461 U.S. at 105-06 (considering plaintiffs' speculation about unconfirmed unwritten discriminatory policies). It is of no consequence that the President's Executive Order and tweets did not mention Plaintiffs by name; the sanctioned policy was to crack down on the lawful exercise of free speech by going further than local law-enforcement agencies had been willing or able to go.

Not only did the Trump Administration sanction the Federal Defendants' behavior with an Executive Order, it also made pronouncements sanctioning the Federal Defendants' behavior online and in person. Then-Acting Secretary of Homeland Security Chad Wolf has said many times—including while addressing the Federal Defendants from the steps of the federal courthouse in Portland, that the Federal Defendants "will never surrender" and that they "will prevail" against "violent extremists" and "violent anarchists." ECF 1 ¶ 176. Then-Acting Secretary Wolf shared his message through a Tweet. *See* ECF 1 ¶ 176 (clipping Tweets).[3] Although Then-Acting Secretary Wolf held his position unlawfully when he made

---

[3]     For additional evidence of these statements, Plaintiffs request that the Court take judicial notice of the statements cited by the plaintiffs, and relied upon by Judge Mosman, in *Western States Center, Inc. v. Department of Homeland Security*.  *See id.*, No. 3:20-cv-01175-JR, ECF 16, Pgs. 5-7, 19-20; *see also* Fed. R. Civ. P. 201 (authorizing the Court to take judicial notice at any stage of litigation); *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007) (considering matters subject to judicial notice when deciding a motion to dismiss).

10-  PLAINTIFFS' RESPONSE IN OPPOSITION TO
       FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the pronouncements to the Federal Defendants, he carried the imprimatur of the office he improperly held. *See Batalla Vidal v. Wolf*, Case 1:16-cv-04756-NGG-VMS, ___ F. __, ___ (Nov. 14, 2020, E.D.N.Y. 2020) (ruling that Acting-Secretary Wolf was appointed unlawfully). Thus, Plaintiffs have sufficiently pleaded a plausible claim that the Federal Defendants' infringing actions were officially sanctioned.

### C.   Plaintiffs continue to suffer harm from the Federal Defendants' unconstitutional actions

Yet another way to establish the standing needed to seek injunctive relief is to "allege . . . 'continuing, present adverse effects'" of a defendant's past illegal conduct. *Villa v. Maricopa County*, 865 F.3d, 1224, 1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Plaintiffs' ongoing injury is that the Federal Defendants' conduct has so chilled Plaintiffs' exercise of free speech that Plaintiffs feel that they cannot safely attend the protests anymore. Plaintiffs would like to attend the protests, but they do not as often as they would like *because of* the Federal Defendants. *See*, *e.g.*, ECF 1 ¶ 65 (Mr. Wise attends protests unless too injured); ECF 1 ¶ 171 (Mr. Durkee and Ms. Guest purchasing protective gear). The government cannot intimidate the populace so much that people stay home, and then use the fact that people are staying home as the basis for avoiding the injunctive relief that would fix the problem the government caused in the first place. *See Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (chilling effect on First Amendment rights is an injury for which monetary compensation may be inadequate).

### D.   The Federal Defendants' arguments apply to other circumstances.

Relying mainly on *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), Federal Defendants argue that it is "speculative" that they will disperse or retaliate

against Plaintiffs in the future. ECF 58 at 9  In *Lyons*, the defendant sought a preliminary injunction against the use of chokeholds by the plaintiff and its police department. 461 U.S. at 95.  As support for the injunction, the defendant alleged that he was stopped by officers for a traffic violation and the police officers placed him in a chokehold without provocation or justification.  *Id.*  Ultimately, the Supreme Court held that the defendant did not have standing to seek and receive a preliminary injunction, because it was too speculative to conclude that the police would subject him to a chokehold again in the near future.  *Id.* at 105-110.

Lyons and the cases that follow it do not apply because they involved truly speculative harms based on attenuated sequences of unlikely future events: Mr. Lyons would have had to violate a then-unknown law, resist arrest, and receive another chokehold before again suffering a similar injury. 461 U.S. at 105-06. By contrast, Plaintiffs here are exercising their First Amendment rights by marching in daily demonstrations. Plaintiffs continue to march. Mr. Wise joins protests six days a week unless he is too injured to do so. ECF 1 ¶ 65. Ms. Guest and Mr. Durkee had to purchase helmets and protective gear because of how they were treated. ECF 1 ¶ 171. Having to purchase protective gear to protest peacefully is itself evidence of an ongoing harm and evidence that the two have firm plans to continue.

Likewise, the Federal Defendants have stated that they will "never surrender." ECF 1 ¶ 176. The President himself has stated that the Federal Defendants cannot allow local government to "surrender[] to mob rule." ECF 1 ¶ 40. The President also stated that if "the protests start[] again, we'll quell it again very easily. It's not hard to do if you know what you're doing." ECF 1 ¶ 177. Thus, "the conduct and declared intentions of Plaintiffs and the Federal Defendants make

12-  PLAINTIFFS' RESPONSE IN OPPOSITION TO
     FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

future injury all but inevitable" in this case.[4] *See Index Newspapers LLC v. City of Portland*, No. 3:20-CV-1035-SI, 2020 WL 4220820, at *5 (D. Or. July 23, 2020) (finding journalists attending Portland protests had standing to seek injunctive relief against the U.S. Department of Homeland Security and the U.S. Marshals Service).

The Ninth Circuit has declined to apply *Lyons* to circumstances like this. In *Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992), *as amended* (Feb. 12, 1993), the Ninth Circuit rejected a *Lyons* challenge because, unlike in *Lyons*, that case involved numerous instances of police misconduct occurring in a small geographic area, some individuals had been mistreated more than once, the mistreatment was unprovoked, the plaintiffs alleged that they were purposefully targeted, and the misconduct was "condoned and tacitly authorized" by policymakers. *Id.* at 507. Each of these distinguishing facts is also present here. Thus, while the risk to Mr. Lyons that he would be subjected to the same police misconduct was speculative, the risk to the plaintiffs in *Thomas* and to the Plaintiffs here is not.

*Lyons* and its progeny are also distinguishable for two more reasons. First, because those cases—unlike this motion—raised deep federalism concerns. The suit brought by Mr. Lyons, and the plaintiffs like him in *Rizzo* and *O'Shea*, "all involved

---

[4]    Even if the Federal Defendants' withdraw from Portland, "[A]s a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). Otherwise, "[a] defendant [would be] free to return to his old ways as soon as the case is dismissed as moot, thereby thwarting judicial review." *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); *see also United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 n.2 (2018) ("A party 'cannot automatically moot a case simply by ending its unlawful conduct once sued,' else it 'could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends.'").

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

attempts by plaintiffs to entangle federal courts in the operations of state law enforcement and criminal justice institutions." *LaDuke*, 762 F.2d at 1324. By contrast, here Plaintiffs have sued the Federal Defendants in federal court, seeking a judgment stopping the unconstitutional practices of federal officials. Thus, the federalism concerns that may have motivated the Court in *Lyons* are absent here, and "the relevant principles of equity, comity, and federalism that underlie the *Younger* doctrine have little force." *Lyons*, 461 U.S. at 135 (Marshall, J., dissenting) (internal quotation marks omitted).

Second, many cases cited by the Federal Defendants like *Lyons* and *O'Shea* involve government action in response to illegal conduct. As Judge Simon recently pointed out, however, these protests present a different question.

> Plaintiffs . . . are not breaking any laws—to the contrary, they are engaging in constitutionally protected First Amendment activity. It is one thing to ask citizens to obey the law in the future to avoid future alleged harm. But it is quite another for the Federal Defendants to insist that Plaintiffs must forgo constitutionally protected activity if they wish to avoid government force and interference.

*Index Newspapers LLC*, 2020 WL 4220820, at *5.

The Federal Defendants also argue that Plaintiffs lack standing to seek a declaratory judgment. Not so. Plaintiffs have standing to seek the relief offered by a declaratory judgment for all the reasons above: Plaintiffs were harmed by the Federal Defendants' actions, and a favorable decision will redress that injury. While prudential concerns about issuing declaratory judgments "reflect concerns similar to those underlying the case and controversy limitation on Article III," they are not the same inquiries. *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). Declaratory judgment is a form of prospective relief just like an injunction. *Mayfield*

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). Because Plaintiffs have standing to seek injunctive relief, they also have standing to seek declaratory judgment.

## II.    PLAINTIFFS STATE PLAUSIBLE CLAIMS UNDER THE FIRST AND FOURTH AMENDMENTS AGAINST FEDERAL DEFENDANTS[5]

### A.    Plaintiffs adequately plead their First Amendment claim.

To state a First Amendment retaliation claim, Plaintiffs must allege: (1) they "engaged in a constitutionally protected activity; (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in Defendants' conduct." *Sampson v. Cty. of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020) (citing *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)). Plaintiffs have plausibly alleged each of these elements.

### 1.    Plaintiffs engaged in constitutionally protected speech.

Plaintiffs have alleged specific facts establishing that they engaged in constitutionally protected speech, both as protestors, generally, and protest medics, specifically.

First, Plaintiffs engaged in protected speech by generally participating in protests for Black lives. Those protests began in the wake of the murders of George Floyd, Breonna Taylor, Ahmaud Arbery, Monika Diamond, and countless others. ECF 1¶¶ 23–27. The protestors aim to achieve changes to "racist and brutal policing

---

[5]    The Federal Defendants note that the Complaint inconsistently charges the Federal Defendants in their official and individual capacities. Plaintiffs are willing to amend the Complaint to remedy the inconsistencies. In short, Plaintiffs intend to sue the individual Doe defendants in their individual capacities for retrospective damages and officials standing in for the federal agencies that employ the Doe defendants in their official capacities for prospective injunctive relief. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (permitting official capacity claims for injunctive relief against named individuals standing in for a government entity).

15-  PLAINTIFFS' RESPONSE IN OPPOSITION TO
      FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

practices[.]" *See id.* ¶¶ 27, 30. By attending the protests, Plaintiffs expressed their support for the "anti-racist ideals at the core of the protests." *See id.* ¶¶ 55, 65, 148. Protesting is undeniably a form of speech protected by the First Amendment. *Boos v. Barry*, 485 U.S. 312, 318 (1988); *Black Lives Matter Seattle-King Cty. v. City of Seattle*, No. 2:20-cv-00887-RAJ, 2020 WL 3128299, at *2 (W.D. Wash. June 12, 2020). Plaintiffs have alleged specific facts indicating that Plaintiffs Wise, Durkee, and Guest attended the protests to oppose police brutality and support the anti-racism message expressed by the protestors. ECF 1¶¶ 55, 65, 148. Plaintiffs' participation in the protests is constitutionally protected speech.

Second, Plaintiffs engaged in speech protected by the First Amendment by specifically serving as protest medics. Expressive conduct is protected by the First Amendment "when 'it is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood.'" *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009) (quoting *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999)). Conduct is intended to convey a particularized message when a "reasonable person would interpret [conduct] as *some* sort of message"; protected expressive conduct need not convey a "*specific* message" to a reasonable person. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (emphasis in original) (citing *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 556, 569 (1995)). Courts look to the context and circumstances surrounding the events at issue to determine whether a reasonable person would understand the message intended by the conduct. *See, e.g.*, *Fort Lauderdale Food Not Bombs*, 901 F.3d at 1241 ("[T]he circumstances surrounding an event help set the dividing line between activity that is sufficiently expressive and similar activity that is not.").

16- PLAINTIFFS' RESPONSE IN OPPOSITION TO
    FEDERAL DEFENDANTS' MOTION TO DISMISS

By serving as protest medics, Plaintiffs intended to convey a message "to all protestors, journalists, and neutral legal observers that someone will be there to care for them, even when the Portland Police and the Federal Defendants are actively harming them." ECF 1 ¶ 58.

Plaintiffs have also alleged facts sufficient to plausibly establish that a reasonable observer would understand this message. Plaintiffs specifically allege facts establishing the context that protesters were at significant risk of injury from law enforcement violence and that protest medics were the only likely source of medical attention to injured protestors. *See id.* at ¶¶ 62–63, 90, 123, 152, 155. Plaintiffs participated specifically as protest medics and made that participation obvious to observers by wearing clearly identifiable clothing, equipment, and insignias; carrying medical supplies; and rendering care and treatment to protesters injured by the police. *See, e.g., id.* ¶¶ 66, 71–72, 149, 156, 159, 160. Plaintiffs have, therefore, stated sufficient facts establishing that they intended to convey a specific message that they would be there to render medical aid to protestors, legal observers, and journalists and that a reasonable observer would understand this message.

Accordingly, Plaintiffs have plausibly alleged that they engaged in protected First Amendment speech, both as general protesters and through their expressive conduct as protest medics.

That law enforcement had on some—but not all—the occasions at issue here given dispersal orders before attacking Plaintiffs does not render Plaintiffs' conduct unprotected. ECF 1 ¶¶ 90-91, 93-94, 153, 160, 169. On the occasions in which law enforcement issued dispersal orders and then attacked Plaintiffs, Plaintiffs were either attempting to comply with those orders or engaged in conduct that made

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

clear to law enforcement that they did not pose a threat but were instead trying to render medical aid. *Id.* Even if other protesters were violent, law enforcement cannot suppress the First Amendment rights of peaceful protesters because *other* protesters "pose a serious threat to officer life and safety." *Black Lives Matter Seattle-King Cty.*, 2020 WL 3128299, at *3 (finding that, even if other protesters threw objects at police officers, engaged in arson, assaulted civilians and police officers, looted, and destroyed property, "pos[ing] a serious threat to officer life and safety[,] plaintiffs were likely to succeed in establishing that the police violated the First Amendment rights of peaceful protesters by indiscriminately using chemical and physical weapons). "As to [non-violent] protesters, . . . 'the proper response to potential and actual violence is to ensure an adequate police presence, and to arrest those who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure." *Id.* (quoting *Collins v. Jordan*, 110 F.3d 1363, 1372 (9th Cir. 1996)). Because Plaintiffs were peaceful and did not pose a threat to officers, their activities were still protected by the First Amendment.

### 2. The Federal Defendants' conduct would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech.

Plaintiffs have also alleged sufficient facts to plausibly allege the second element of their First Amendment retaliation claim—that Defendants' actions would chill a person of ordinary firmness—because physical violence and deployment of chemical irritants and munitions by law enforcement would chill a person of ordinary firmness from continuing to participate in protests as medics. "Ordinary firmness is as objective standard that will not 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in [their] protected activity." *Black Lives Matter*

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Seattle-King Cty.*, 2020 WL 3128299, at *3 (quoting *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Here, Plaintiffs allege that the Federal Doe Defendants shot them with pepper balls or other projectiles, ECF 1¶¶ 91, 153, 159, 160, threw or shot flashbang grenades or teargas canisters at them, *id.* ¶¶ 93, 155, 160, shoved them to the ground, *id.* ¶ 169, and beat them with truncheons, *id.* Courts have repeatedly found that use of those kind of physical and chemical weapons against protesters would chill a person of ordinary fitness from continuing to engage in protected activity. *Drozd v. McDaniel*, No. 3:17-cv-556-JR, 2019 WL 8757218, at *5 (D. Or. Dec. 19, 2019); *Black Lives Matter Seattle-King Cty.*, 2020 WL 3128299, at *3; *Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1293 (D. Colo. 2020). Accordingly, Plaintiffs plausibly allege that the Federal Defendants' conduct would chill a person of ordinary fitness from continuing to engage in protected First Amendment activity.

### 3. Plaintiffs' protected activities were a substantial motivating factor in the Federal Defendants' conduct.

Finally, Plaintiffs have alleged sufficient facts to show that their protected activities were a substantial and motivating factor in the Federal Defendants' conduct. This element requires that Plaintiffs show a "nexus between [Defendants'] actions and an intent to chill speech." *Ariz. Students Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). Plaintiffs may establish this element through circumstantial evidence. *Id.* at 870.

When evaluating allegations that law enforcement violated the First Amendment rights of protesters, "[t]he use of indiscriminate weapons against all protesters—not just [] violent ones—supports the inference that [law enforcement officials'] actions were substantially motivated by Plaintiffs' protected First Amendment activity." *Black Lives Matter Seattle-King Cty.*, 2020 WL 3128299, at

19- PLAINTIFFS' RESPONSE IN OPPOSITION TO
FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*4. And when evaluating whether law enforcement used force against a particular group of protesters, plaintiffs establish a sufficient nexus between the use of force and a desire to chill that group's speech when the group is (1) identifiable, (2) not engaging in any threatening activity, and (3) "yet were subject to violence by federal agents." *Index Newspapers LLC v. City of Portland*, No. 3:20-cv-1035-SI, 2020 WL 4220820, at *6 (D. Or. Jul. 23, 2020) (finding that plaintiffs were likely to show a sufficient nexus between law enforcement use of force against journalists and the journalists' protected activity).

Ultimately, the question is whether law enforcement used force against only violent protesters or whether they used force against non-violent protesters, too. When law enforcement does not limit use of force to only violent protesters, courts infer that law enforcement was substantially motivated by protesters' First Amendment activity. *See Index Newspapers LLC*, 2020 WL 4220820, at *6; *Black Lives Matter Seattle-King Cty.*, 2020 WL 3128299, at *4.

Here, Plaintiffs have alleged sufficient facts to establish that the Federal Defendants used force against non-violent protesters generally and—within that indiscriminate use of force—the Federal Defendants used force against non-violent protest medics.[6] Plaintiffs allege specific instances in which federal law enforcement indiscriminately used violence against non-violent protesters and even an instance in which indiscriminate use of chemical irritants injured a non-protester. ECF 1 ¶¶ 47–48 (alleging that the Federal Defendants used so much tear gas they

---

[6]    The Federal Defendants assert that it is inconsistent for Plaintiffs to argue both indiscriminate use of force and force targeted at protest medics. ECF 58 at 19. It is not. For example, it is possible for law enforcement to indiscriminately tear gas entire areas *and* target protest medics specifically when using non-lethal projectile weapons.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

"engulfed city blocks in opaque, chemical clouds" and used techniques that distribute "tear gas across large groups of protesters"), ¶¶150, 152 (stating that on July 4, the "Federal Defendants employed violence indiscriminately, including against members of the press, legal observers, and medics"), ¶ 155 (alleging that "the Portland Police or Federal Defendants employed tear gas indiscriminately" on the evening of July 4), ¶¶ 161–62 (stating that the Federal Defendants "tear gassed the area on Third Avenue in front of the federal courthouse, including Lownsdale Square and surrounding streets[] at least five or six separate times" and that "[t]hey deployed so much tear gas that Lownsdale Square became engulfed in an essentially opaque cloud"), ¶ 166 (alleging that a houseless person—not a protester—"appeared to have been severely negatively affected by tear gas exposure").

Plaintiffs also alleged specific facts establishing that (1) they were identifiable as protest medics, (2) they were not acting violently, and (3) they were still subject to force by the Federal Defendants. First, Plaintiffs wore clothing marked with visible insignias and words indicating they were protest medics, openly carried medical supplies, and treated injured protesters. ECF 1 ¶¶ 66, 71–72, 149, 156, 159, 160.

Next, Plaintiffs have alleged facts establishing that they were not violent and did not pose a threat to law enforcement and yet were subjected to violence by the Federal Defendants. Plaintiff Wise was "st[anding] in the middle of Lownsdale Square watching" for any injured protesters when he was shot with pepper balls by Federal Doe Defendants and stood with his hands up when a tear gas canister was shot in his direction. *Id.* ¶¶ 90–91, 93–94, fig. 7. Plaintiff Guest was complying with a law enforcement dispersal order and not interfering with law enforcement

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

activities when she was shot with a projectile and checked in the shoulder with a baton. *Id.* ¶ 153. Another time, Plaintiff Guest was kneeling down to help an injured protester when a Federal Doe Defendant threw a tear-gas canister at them. *Id.* ¶ 160. She lightly kicked the canister away from her, and the Federal Doe Defendant began shooting her with rubber bullets. *Id.* Finally, Plaintiff Durkee was walking backward with his arms raised, complying with a dispersal order, when a Federal Doe Defendant shoved him, causing both Plaintiff Durkee and Plaintiff Guest to fall. *Id.* ¶ 169. The Federal Doe Defendants then beat both of them with truncheons. *Id.*

The Federal Defendants assert that Plaintiffs were resisting dispersal orders and potentially posed threats to law enforcement, but Plaintiffs factual allegations—which must be taken as true—establish that Plaintiffs were subjected to violence when attempting to comply with law enforcement dispersal orders or under circumstances in which they clearly did not pose a threat to law enforcement. *Id.* ¶¶ 91 (Plaintiff Wise was standing looking for injured protesters when he was shot with pepper balls), ¶¶ 90–91, 93–94, fig. 7 (Plaintiff Wise stood with his hands raised when a tear gas canister was thrown near him), ¶¶ 156, 159 (Plaintiffs Guest and Durkee, in their protest medic gear, had to walk toward federal agents to move injured protesters away from the activity), ¶ 153 (Plaintiff Guest was attempting to comply with a dispersal order when she was struck), ¶ 160 (Plaintiff Guest was kneeling by an injured protester in her medic gear and lightly kicked a tear gas canister thrown at her away from her and the injured protester), ¶¶ 167–69 (Plaintiff Durkee was walking north, as directed by federal agents, when a Federal Doe Defendant shoved him to the ground and Federal Doe Defendants beat him and Plaintiff Guest). The Federal Defendants had no reason to use force against

22- PLAINTIFFS' RESPONSE IN OPPOSITION TO
    FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Plaintiffs when Plaintiffs were complying with orders, attempting to treat injured protesters, not threatening law enforcement, or were merely present at a protest in which other protesters were violent. This supports an inference that the Federal Defendants' use of force was substantially motivated by Plaintiffs' protected activity.

Because Plaintiffs alleged specific facts establishing that the Federal Defendants indiscriminately used force against non-violent protesters and that they were clearly identifiable as protest medics, were not violent, and were subject to force by the Federal Defendants, Plaintiffs have sufficiently pleaded that the Federal Defendants' conduct was substantially motivated by Plaintiffs' protected activity. Plaintiffs have, therefore, sufficiently pleaded their First Amendment retaliation claim, such that it survives the Federal Defendants' motion to dismiss.

**B.    Issues of fact pervade the "reasonableness" inquiry necessary to evaluate Plaintiffs' Fourth Amendment claims.**

The Federal Defendants ask this Court to determine whether their actions were "reasonable" given the context and circumstances of the protests. But that very inquiry shows why Plaintiffs' Fourth Amendment claims are not subject to dismissal at the motion-to-dismiss stage. As courts have long-recognized, the "reasonableness" of police conduct for purposes of the Fourth Amendment, "is a fact-intensive inquiry that cannot be determined at [the motion to dismiss] stage." *Meyer v. Cty. of Washington*, No. CIV. 07-1127-HA, 2008 WL 5156481, at *3 (D. Or. Dec. 8, 2008); *see also, e.g.*, *Cornel v. Hawaii*, No. CV 19-00236 JMS-RT, 2020 WL 3271934, at *7–8 (D. Haw. June 17, 2020); *Bautista v. City of Glendale*, No. CV 18-0740-FMO (KS), 2019 WL 2587817, at *8 (C.D. Cal. May 7, 2019), *report and recommendation adopted*, No. CV 18-740-FMO (KS), 2019 WL 2578756 (C.D. Cal. June 21, 2019).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

This Court's order denying Plaintiffs' motion for a temporary restraining order recognized that Plaintiffs' allegations, although not "clearly favoring" Plaintiffs, raised "serious questions about the merits of the excessive force claims." ECF 49 at 18. But this Court recognized that discovery was likely necessary to establish the context of the actions in question. *Id.* at 18-19 (noting "the context of the surrounding circumstances is entirely unclear" and "directly competing narratives about what transpired on the ground").

Plaintiffs have alleged sufficient facts—all of which must be taken as true— to show the unreasonableness of the Federal Defendants' actions to survive the motion to dismiss. The Federal Defendants' motion seeks to litigate the Complaint's allegations, which is not the purpose of a motion to dismiss. As an example, the motion to dismiss acknowledges that Plaintiffs alleged they "did not commit any crimes, pose any threat to any officers or any other person, or resist arrest." ECF 58 at 22 (citing ECF 1 ¶191). But the motion then tries to use the larger context of the protest—the fireworks and crowds—to show that the use of force on Plaintiffs was reasonable. These inferences are not proper where the court must "construe th[e] facts in the light most favorable to [Plaintiffs]." *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

Thus, the Federal Defendants' motion to dismiss the Fourth Amendment claims must be denied as Plaintiffs' have stated a claim for relief that is "plausible" and the claim requires further discovery to determine the "context" of the circumstances that the Federal Defendants rely on to prove the "reasonableness" of their actions.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### III.    PLAINTIFFS HAVE SUFFICIENTLY PLEADED A CLAIM UNDER THE ADMINISTRATIVE PROCEDURE ACT.

Plaintiffs state a plausible claim for relief under the APA.  In support of their motion, the Federal Defendants contend, incorrectly, that Plaintiffs cannot state a claim under the APA because they have not "sufficiently allege[d] facts indicating the existence of an official 'policy' that can be ascribed to any of the Federal Defendants."  ECF 58 at  26.  The Federal Defendants are incorrect.

Contrary to the Federal Defendants' assertions, Plaintiffs have sufficiently pleaded a claim under the APA.  To plead a claim under the APA, a complaint must allege facts establishing the existence of a "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  The Federal Defendants have not argued that Plaintiffs have some "other adequate remedy in a court" or that their actions were not "final," so, apparently, they are arguing only that Plaintiffs' have failed to allege the existence of an unlawful "agency action."  The APA defines "agency action" broadly to "includ[e] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13). That definition "is meant to cover comprehensively every manner in which an agency may exercise its power."  *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 478, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 238 n.7, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)).  And the term "sanction" in that definition is defined expansively to "includ[e]," among other things, "the whole or a part of an agency . . . prohibition, requirement, limitation, or other condition affecting the freedom of a person, . . . or taking other compulsory or restrictive action."  5 U.S.C. § 551(10)(A), (G).  An "order" "means the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than a rule making but including licensing."  *Id*.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

§ 551(6).  Here, Plaintiffs have sufficiently pleaded facts from which a factfinder could conclude that the Federal Defendants imposed, in whole or in part, a "sanction" or "order" affecting Plaintiffs:  the decision to send federal law-enforcement personnel to Portland, Oregon, in order to engage in plenary policing, untethered to any risk to federal property.

Plaintiffs have sufficiently pleaded that the Federal Defendants decided to, and in fact did, send federal law-enforcement to generally police protesters in Portland, Oregon, regardless of a nexus between particular policing action and harm or threatened harm to federal property.  In their complaint, Plaintiffs allege that, about a month after the Portland protests began, on June 26, 2020, President Trump issued the Executive Order. ECF 1 ¶¶ 39-40. In it, he vilified the protesters' *political views*, stating that many of them "have explicitly identified themselves with ideologies — such as Marxism — that call for the destruction of the United States system of government."  *Id.*  Additionally, he began to express his discontent with the ability of local law enforcement in Portland to adequately police these purportedly violent "Marxists," arguing that the local government had "abdicat[ed] their law enforcement responsibilities in deference to [the protesters' alleged] violent assault."  *Id.* Then, based on that vilification, he required federal agencies to provide law-enforcement personnel upon request, in order to allegedly protect federal property:

> Upon the request of the Secretary of the Interior, the Secretary of Homeland Security, or the Administrator of General Services, the Secretary of Defense, the Attorney General, and the Secretary of Homeland Security *shall provide*, as appropriate and consistent with applicable law, personnel to assist with the protection of Federal monuments, memorials, statues, or property.  This section shall terminate 6 months from the date of this order unless extended by the President.

26-  PLAINTIFFS' RESPONSE IN OPPOSITION TO
      FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

(Emphasis added.) https://www.whitehouse.gov/presidential-actions/executive-order-protecting-american-monuments-memorials-statues-combating-recent-criminal-violence/

Despite the (apparently pretextual) assertion that federal law enforcement would only protect federal property, it became clear that more than just federal property was on President Trump's mind.  On June 1, 2020, the President warned that he would soon militarize the streets of our nation's cities unless the nation's local officials quashed the protests as he required:

> Mayors and governors must establish an overwhelming law enforcement presence until the violence has been quelled . . . . If a city or state refuses to take the actions that are necessary to defend the life and property of their residents, then I will deploy the United States military and quickly solve the problem for them.

https://www.whitehouse.gov/briefings-statements/statement-by-the-president-39/.[7]

The President's threats to conduct plenary federal law enforcement continued.  On June 10, 2020, the President made clear that if Seattle did not evict protesters from a space it let them occupy (unrelated to any federal property), his government would conduct general policing in Seattle, without an identifiable federal interest.  He did so by directing the Mayor of Seattle to, "Take back your city NOW. If you don't do it, I will. This is not a game. These ugly Anarchists must be stooped [sic] IMMEDIATELY.MOVE FAST!" @realDonaldTrump, Twitter (June 11, 2020.), https://twitter.com/realDonaldTrump/status/1271142274416562176.

---

[7]     Plaintiffs request that, pursuant to Fed. R. Civ. P. 201, the Court take judicial notice of the fact that President Trump made the following quoted statements.  Courts may consider matters subject to judicial notice when deciding a motion to dismiss.  *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Aside from threatening plenary policing, the President clarified that he wanted federal law-enforcement personnel to do more than only protect federal property.  When asked in a public forum on Fox News "what steps is the Administration taking to give us back our streets," the President stated, "And at some point, there's going to be retribution because there has to be. These people are vandals, but they're agitators, but they're really — they're terrorists, in a sense." Jordan Muller, Politico, *Trump calls protesters 'terrorists,' pledges 'retribution' for tearing down statues*, https://www.politico.com/news/2020/06/26/trump-retribution-protesters-statues-340957.

Then, about a week later, on July 4, 2020, various federal agencies actually sent law-enforcement personnel to Portland, Oregon.  Those personnel included militarized personnel from DHS's Customs and Borders Protection (CBP), Immigration and Customs Enforcement (ICE), the Transportation Security Administration (TSA), the Coast Guard, and the Federal Protective Service (FPS). ECF 1 ¶¶ 151-52. They also included specially trained tactical units, such as the Border Patrol Tactical Unit (BORTAC), which is normally tasked with investigating violent drug-smuggling organizations.  When they arrived, the Federal Defendants immediately began "creating condition[s] affecting the freedom" of the protesters, and "taking . . . compulsory or restrictive actions" unrelated to *the protection of* federal property.  5 U.S.C. § 551(10)(A), (G).  For example,

- On the night of July 11, several individuals were walking by the federal courthouse in Portland. The Federal Defendants remained on guard outside. A 26-year-old named Donavan La Bella stood on the City sidewalk in front of the federal courthouse and, with two arms, raised a boom box above his head. Federal officers shot a tear gas canister in his direction and, eventually, shot him in the head with an impact munition, despite the fact that he did not pose any threat to the safety of the courthouse. ECF 1 ¶ 50.

28- PLAINTIFFS' RESPONSE IN OPPOSITION TO
FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

- Days later, federal officers in unmarked uniforms in unmarked vehicles abducted suspected protesters *who were walking away from the protest area* on the sidewalks in Portland.  From a video of these actions, it does not appear that the victim was on, next to, or posing any threat to, federal property: https://twitter.com/sparrowmedia/status/1283436911307218948?s=20. ECF 1 ¶ 51.

- Aside from those bizarre vehicular kidnappings, DHS's and USMS's officers also violently tackled and arrested protesters suspected of minor offenses and dragged them into the federal courthouse. ECF 1 ¶ 53.

- Many of those incidents are not on or next to any federal property. For example, one night, Plaintiffs Durkee and Guest were on Southwest Broadway, between Main and Salmon streets, when they heard someone yell for a medic from across Broadway.  Before Plaintiffs Durkee and Guest even had time to check on the injured person, some of the Federal Doe Defendants began rushing them. As Plaintiff Durkee walked backwards with his arms raised, one of the Federal Doe Defendants forcefully shoved him, causing both him and Plaintiff Guest to fall. Plaintiff Guest struck her arm on the ground. Some of the Federal Doe Defendants then beat both of them with truncheons multiple times. ECF 1 ¶¶ 164-69.

Those facts, if true, establish—or at least give rise to the reasonable inference—that the Federal Defendants' decision to send law-enforcement personnel to Portland, Oregon, and authorize them to generally police protesters (untethered to protection of federal property), was an "agency action" under the APA.  That decision resulted in federal law-enforcement personnel arriving in Portland and engaging in behavior that immediately "affect[ed] the freedom of" protesters.  5 U.S.C. § 551(10)(A), (G).  Additionally, that decision resulted in both "compulsory [and] restrictive action[s]" imposed by the federal law-enforcement personnel on protesters, through the use of physical and violent restraint.  *Id.*  Therefore, under the APA, Plaintiffs have sufficiently pleaded the existence of an "agency action."

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Moreover, this Court should hold that action unlawful for two reasons.  First, the decision to allow federal-law enforcement personnel to engage in plenary policing is *ultra vires*.  Under the law, "[j]udicial review is favored when an agency is charged with acting beyond its authority." *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1172 (D.C. Cir. 2003).  Here, the Federal Defendants are constrained by federal statutes and the APA, in a manner which authorizes them to engage only in the enforcement of federal laws.  *See, e.g., City of Philadelphia v. Sessions*, 309 F. Supp.3d 271, 286-87 (E.D. Penn. 2018) (denying the federal government's motion to dismiss because the plaintiff could prove that the federal government had acted *ultra vires* by not limiting its law-enforcement activities to only the enforcement of federal law); *Ely v. Velde*, 451 F.2d 1130, 1136 (4th Cir. 1971) (describing Congress's policy "to guard against any tendency towards federalization of local police and law enforcement agencies," out of a "fear that overbroad federal control of state law enforcement could result in the creation of an Orwellian 'federal police force'").  That principle recently was acknowledged by Judge Mosman, when he enjoined the Federal Defendants from engaging in law-enforcement activities beyond one city block from the federal courthouse.  *Western States Center, Inc. v. United States Department of Homeland Security*, No. 3:20-cv-01175-JR, 2020 WL 6555054, at *1-2 (D. Or. Nov. 2, 2020).  Here, however, the Federal Defendants have (as recognized by Judge Mosman) acted beyond their authority by engaging in policing that is unrelated to the enforcement of federal laws.

Second, the decision to allow that to happen also was arbitrary and capricious, an abuse of discretion, and not in accordance with law.  5 U.S.C. § 706(2).  Under the APA, a federal agency typically engages in that type of behavior

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).  Here, Congress has not authorized the Federal Defendants to consider anything other than the protection of federal property when utilizing its domestic policing resources.  Under the Executive Order, President Trump identified a number of statutes, which all relate only to the protection of federal property and other monuments.  But when the Federal Defendants decided to send law-enforcement personnel to Portland, they did so for factors other than the protection of federal property (*e.g.*, to combat "Marxism" and "anarchy").  *See Western States*, 2020 WL 6555054 at *1 ("Unfortunately for the federal agents, they operate under the burden of statements from the President (and for Border Patrol agents, Acting Secretary Wolf) . . ..").  And Congress has not authorized the Federal Defendants to consider those factors.  Therefore, under the APA, the Federal Defendants' actions were unlawful, and this Court should deny the motion to dismiss on that basis.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

31-  PLAINTIFFS' RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## CONCLUSION

For all those reasons, Plaintiffs have standing to pursue their adequately pleaded claims, and respectfully request that this Court deny the Federal Defendants' Motion to Dismiss.

DATED:  November 17, 2020   PERKINS COIE LLP

        By: */s/ Nathan R. Morales*
         **Rian Peck**, OSB No. 144012
         **Thomas R. Johnson**, OSB No. 010645
         **Misha Isaak**, OSB No. 086430
         **Nathan Morales**, OSB No. 145763
         **Shane Grannum**, *pro hac vice*
         **Sarah Mahmood**, *pro hac vice* pending
         **Zachary Watterson**, *pro hac vice*
         PERKINS COIE LLP

         **Kelly K. Simon**, OSB No. 154213
         AMERICAN CIVIL LIBERTIES UNION
         FOUNDATION OF OREGON

        *Attorneys for Plaintiffs*

32-  PLAINTIFFS' RESPONSE IN OPPOSITION TO
  FEDERAL DEFENDANTS' MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222