**Thomas R. Johnson** (he/him), OSB No. 010645
TRJohnson@perkinscoie.com
**Misha Isaak** (he/him), OSB No. 086430
MIsaak@perkinscoie.com
**Nathan Morales** (he/him), OSB No. 145763
NMorales@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

**Kelly K. Simon** (she/her), OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: 503.227.6928

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CHRISTOPHER WISE, MICHAEL MARTINEZ, CHRISTOPHER DURKEE,** and **SAVANNAH GUEST,** individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF PORTLAND,** a municipal corporation**; OFFICER STEPHEN B. PETTEY,** in his individual capacity**; JOHN DOES 1-60,** individual and supervisory officers of Portland Police Bureau**; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. MARSHALS SERVICE; JOHN DOES 61-100**, individual and supervisory officers of the federal government,<br><br>Defendants. | Case No. 3:20-cv-01193-IM<br><br>**PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF ON WHETHER PLAINTIFFS' EQUITABLE CLAIMS HAVE BECOME MOOT** |

**Introduction**

Plaintiffs are a group of protest medics who, for over a year now, have provided medical services to protesters in Portland, Oregon. In this lawsuit, Plaintiffs seek, among other things, an order from the Court enjoining Federal Defendants from continuing to target Plaintiffs for violent treatment from federal and local law enforcement officers. Simply put, Plaintiffs are asking for an order allowing them to help others receive vital medical care, which does not seem like it should be too controversial.

Despite the apparent lack of controversy, however, Federal Defendants have continued to fight vigorously for their freedom to continue to inflict violence on Plaintiffs. The worst of that violence occurred when the prior federal Administration was in power. Now that a new Administration has taken over the executive branch, Federal Defendants have tried to persuade this Court to dismiss Plaintiffs' claims for injunctive relief as moot. But, in so doing, Federal Defendants have failed to meet their heavy burden of establishing that the change in the Administration relieves Plaintiffs of the harms they have experienced again and again over the past year. Federal Defendants have failed to establish that the informal and unilateral policy changes adopted by the new Administration include meaningful safeguards preventing the Administration from arbitrarily changing them again in the future. Federal Defendants also have failed to link any change in policy with an acknowledgment that the policies of the prior Administration were unlawful—and, if not unlawful, that they are not authorized to undertake the same actions in the future. And finally, Federal Defendants have failed to establish that the federal law enforcement officers in Portland actually will abide by the purported new policies. Therefore, Plaintiffs' equitable claims are not moot.

Because Federal Defendants have failed to establish that the new Administration will now allow Plaintiffs to exercise their First Amendment rights without unconstitutional

interference on the part of Federal Defendants, Plaintiffs request that this Court not dismiss their equitable claims as moot.

## Background

### I.    Political activities continue.

Protests began in Portland in the summer of 2020, after the violent police murder of George Floyd in Minneapolis, Minnesota, sparked outrage throughout the nation. Protesters gathered in the streets of Portland demanding change to local policing and expressing a desire to divert tax dollars from the police to community healthcare and to address the growing housing crisis. Daily protests continued for over 100 nights in a row before the violent behavior of the police and federal officers significantly chilled protected speech and protest activity; however, protests continue as does the unconstitutional conduct of the police and federal officers.

Plaintiffs render aid while wearing distinctive clothing marked with an internationally recognized symbol for medics—the red cross—emblazoned across themselves and on their protective gear. Because the Federal Defendants were deployed to "quell protests," the Federal Defendants began singling Plaintiffs out, targeting them with pepper balls, shooting them with tear gas cannisters, and beating them with billy clubs to dissuade them from attending protests and rendering aid to those the police and federal officers disagree with. This conduct continues. As recently as Thursday, March 11, 2021, officers targeted Plaintiff Wise and shot him with impact munitions four times while he was trying to render aid to protestors caught in a cloud of tear gas. *See* Declaration of Chris Wise ("Wise Decl.") ¶ 6.

As the May 25 anniversary of George Floyd's murder approaches and as the nation watches the trial of Derek Chauvin, more protests are expected. *Id*. ¶ 11; and see Declaration of Christopher Durkee ("Durkee Decl.") ¶ 11. Plaintiffs Guest and Durkee are moving to Portland from Eugene to be closer to the city for the primary purpose of helping protesters this spring and summer. Durkee Decl. ¶ 2; *and see* Declaration of Savannah Guest ("Guest Decl.") ¶ 2. Protests

will continue because the social justice issues at the core of these protests have not been meaningfully addressed in Portland. As it stands, Plaintiffs will continue to experience the unconstitutional behavior of the police and federal officers should their equitable claims be dismissed.

## II.    Plaintiffs protest, though less often than they would like.

Plaintiffs have started going to protests less often out of fear of harm. Plaintiffs understand that to go to protests is to accept that they will likely be harmed by the police or federal officers. Wise Decl. ¶ 9; Guest Decl. ¶ 6. One fellow medic told Plaintiffs that she will no longer attend protests at all because she is pregnant and fears that the repeated and near-guaranteed exposure to tear gas and the potential to be hit with impact munitions could terminate her pregnancy. Wise Decl. ¶ 9.

During recent protests, police and federal officers targeted Plaintiffs. Wise Decl. ¶¶ 6-8. Police and federal officers have aimed impact munitions directly at Plaintiffs while they are walking away or assisting injured protestors, even as police and federal officers seem to take a more general approach to non-medics by indiscriminately deploying tear gas that fills the streets during a pandemic of a respiratory virus. *Id.* Plaintiffs believe that they continue to be targeted by police and federal officers despite the election of a new president because the policies and practices of officers on the ground in Portland haven't changed. Wise Decl. ¶ 11; Durkee Decl. ¶ 8; Guest Decl. ¶ 7. The message from officers remains clear: if you speak out or support those who speak out against police brutality, you will suffer police brutality in turn.

Despite the harm Plaintiffs have suffered and continue to suffer at the hands of police and federal officers, Plaintiffs continue to serve as protest medics, but not without significant impacts to their physical and mental health. Wise Decl. ¶¶ 2-3, 6; Durkee Decl. ¶¶ 9-10; Guest Decl. ¶ 5. Anytime Plaintiffs attend protests to serve as medics, they are acutely aware that they are facing a risk of harm and have spent large sums of money on protective gear to render aid to protestors

4-    PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS'
SUPPLEMENTAL BRIEF ON WHETHER PLAINTIFFS'
EQUITABLE CLAIMS HAVE BECOME MOOT
152049051.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

safely and protect themselves from their own government. Durkee Decl. ¶ 5; Guest Decl. ¶ 6.
Plaintiffs plan to continue to serve as protest medics through the spring and summer and
anticipate that protest activities will increase as we see better weather and as anniversaries of
important dates come to pass. Wise Decl. ¶ 11; Durkee Decl. ¶¶ 2, 11; Guest Decl. ¶¶ 2, 7.

### Argument

Federal Defendants have failed to meet their burden of establishing that Plaintiffs' claims
for injunctive relief are moot. Under the applicable standard, it is Federal Defendants' burden to
establish that their discontinuance of unconstitutional harms has mooted any claims in this case.
*U.S. v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). The burden is a "heavy" one. *Cnty. of L.A. v.
Davis*, 440 U.S. 625, 631 (1979) (explaining standard); *see Adarand Constructors, Inc. v. Slater*,
528 U.S. 216, 222 (2000) (explaining that the party asserting mootness has "the 'heavy burden of
persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up
again."). A case becomes moot only when it is "impossible for a court to grant any effectual
relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S.
298, 307 (2012) (quotations omitted).

It is well established that "voluntary cessation of allegedly illegal conduct does not
deprive the tribunal of power to hear and determine the case" unless "it can be said with
assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur" and
"interim relief or events have completely and irrevocably eradicated the effects of the alleged
violation." *Davis*, 440 U.S. at 631 (alteration in original) (quoting *W.T. Grant Co.*, 345 U.S. at
632–33 (1953) ); *see Trinity Lutheran Church of Columbia, Inc. v. Comer*, —— U.S. ——, 137
S.Ct. 2012, 2019 n. 1 (2017). And although courts presume that the government acts in good
faith when it changes its policies, *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180
(9th Cir. 2010), the government must nonetheless establish that the change in its behavior is

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

"entrenched" or "permanent," *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) (quoting *Bell*, 709 F.3d at 900).

In this case, Federal Defendants assert that Plaintiffs' claims for injunctive relief are moot, because Federal Defendants believe that the recent change of Administration has reduced the urgency surrounding those claims. But any perceived reduction in urgency has not made it "impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox*, 567 U.S. at (2012) (quotations omitted). In fact, none of the recent policy changes by the new Administration is sufficient to moot Plaintiffs' claims for injunctive relief. That is because, to the extent the new Administration has imposed any changes, they were informally effected and not accompanied by any acknowledgment that the prior Administration's conduct was illegal. Moreover, the repealed executive orders were never the sole basis for Federal Defendants' actions on the ground. As a result, it appears it is Federal Defendants' position that it continues to be within the power of federal law enforcement to resume the practices complained of in this action, and this Court cannot be assured that there has been a permanent discontinuance of the behavior that Plaintiffs seek to remedy through their claims for injunctive relief. In the absence of such an assurance, the Court should not dismiss Plaintiffs' claims as moot. Furthermore, even if Plaintiffs' claims are moot (they are not), the Court should not dismiss them for the additional reason that they are capable of repetition, yet evading review.

## I.    Federal Defendants have failed to meet their burden of establishing that Plaintiffs' claims for injunctive relief are moot.

When analyzing whether the changes a defendant makes to its own policies moots a claim, the proper focus is on the effect the change in challenged conduct has had on the plaintiff. *See Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1039 (9th Cir. 2018) (making clear that mootness occurs because of a change in policy only when that change ensures that the "activity complained of will not reoccur"). Likewise, here, when analyzing whether any policy

changes imposed by the new Administration impacts the availability of Plaintiffs' requested injunctive relief, the Court should focus on the impact (if any) that those changes have had on Plaintiffs. Upon conducting that analysis in this case, however, the changed policies have not clearly eradicated the constitutional harms suffered by Plaintiffs. Therefore, their claims are not moot.

> **A.  Plaintiffs' equitable claims are not moot, because any changes to government policy have not afforded total relief to Plaintiffs.**

It is a longstanding principle that a defendant's change to a challenged policy or behavior does not itself moot a claim. *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 43 (1944). "Rather, a case becomes moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur." *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012) (internal quotation and citation omitted). Here, Federal Defendants may not "automatically moot [Plaintiffs' equitable claims] simply by ending [their] unlawful conduct once sued." *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (considering a change in corporate policy). That is because, if changing a policy were all it took to moot a case, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* at 91. Therefore, to successfully meet their burden, Federal Defendants must demonstrate "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020). And this Court should treat any assurances by Federal Defendants "that the case is moot because the injury will not recur," made while still maintaining that their "conduct was lawful all along," with skepticism. *See Council on Am.-Islamic Rels.-Minnesota v. Atlas Aegis, LLC*, No. 20-CV-2195, 2020 WL 6336707, at *3 (D. Minn. Oct. 29, 2020).

Not only should the Court treat Federal Defendants' factual claims that their changed behavior has stopped their unconstitutional conduct with skepticism, it also should recognize that

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

there is a difference between changed executive policies (such as those here) and more formal legislation. As the Ninth Circuit has explained, unlike formal legislative action, informal executive action often lacks the rigor required to establish the requisite permanency for mootness. That is because, with an executive action, courts cannot assure themselves that it is "absolutely clear" that the party asserting mootness will not simply alter that action again in the future. *See Trinity Lutheran Church*, 137 S. Ct. at 2019 n.1 (holding that, although the state had "beg[u]n allowing religious organizations to compete for and receive [government] grants on the same terms as secular organizations," it did not meet the requisite "'heavy burden' of making 'absolutely clear' that it could not revert to its policy of excluding religious organizations" (quoting *Friends of the Earth, Inc.*, *v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Thus, as in this case, "an executive action that is not governed by any clear or codified procedures cannot moot a claim." *McCormack*, 788 F.3d at 1025; *see Fikre* 904 F.3d 1038 (explaining the weaknesses of informal executive action).

Here, the alleged changes in executive policies that Federal Defendants rely on lack sufficient formality and codification to ensure that they will not be amended again in the future. The current President unilaterally adopted those changes by executive order. Therefore, the President could just as easily unilaterally rescind or modify those same policies without counsel or oversight. Because executive orders do not have the same procedural protections or permanency as enacting a statute or promulgating an administrative rule, they bear all the hallmarks of the kind of policies that leave open the possibility of an immediate return to earlier, more harmful, practices. Therefore, those orders alone are insufficient for Federal Defendants to meet their heavy burden of establishing mootness.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**B.     Plaintiffs' equitable claims also are not moot, because any policy changes that have been made by the new Administration were not accompanied by an acknowledgement of past wrongful conduct.**

Courts are skeptical of claims of mootness when the defendant argues that the case is moot now that its behavior has changed, but does not admit that the prior complained-of conduct was unlawful. *Council on Am.-Islamic Rels.-Minnesota v. Atlas Aegis, LLC*, 2020 WL 6336707, at *2 (D. Minn. Oct. 29, 2020). Because a claim is moot only "when it is 'absolutely clear' to the court" that "the activity complained of will not reoccur," any voluntary cessation must be paired with "the government's unambiguous renunciation of its past actions." *Fikre*, 904 F.3d at 1039. Without such a renunciation, there is no mootness: "[A] claim is not moot if the government remains practically and legally 'free to return to [its] old ways' despite abandoning them in the ongoing litigation." *Id.* (quoting *W.T. Grant Co.*, 345 U.S. at 632). Here, despite filing multiple declarations with its briefing, Federal Defendants have made no such renunciation.

Federal Defendants never concede that the recent policy changes were made *because* the Trump Administration's policies were unlawful. In fact, Federal Defendants have provided no reason or justification for why the new Administration has altered its policies. Thus, for instance, it is possible that the change in policy occurred in response to waning protest activity during the winter months, and that similar policies or law enforcement practices could be reinstituted when protest activity grows as the weather improves. It is outside this Court's record and capacity to determine the Administration's motivations and to predict the durability of its impermanent policies.

Because of that, Federal Defendants have failed to meet their burden of assuring Plaintiffs and this Court that, when the weather improves in Portland and the protests increase in size and frequency again, they will not return to their old ways. Accordingly, the Court cannot conclude that it is "absolutely clear" that Federal Defendants have permanently altered their policies in a manner that would render Plaintiffs' claims moot. *Id.*

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

C.    **The Court should not dismiss Plaintiffs' equitable claims as moot, because Federal Defendants have produced insufficient facts establishing that there has been a complete discontinuance of their behavior.**

When a defendant insists that its changed behavior has mooted a plaintiff's claims, the Court should examine "whether there has been complete discontinuance, whether effects continue after discontinuance, and whether there is any other reason that justifies decision and relief." *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991) (quoting 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction § 3533.7, at 350 (2d ed. 1984)). Complete discontinuance must be truly complete. Under that standard, mootness requires more than disputed factual effects, it demands an "absolutely clear" picture that "violations could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 179 (2000). Here, there is no indication that Federal Defendants have completely discontinued their harmful conduct.

In addition to a lack of clarity concerning Federal Defendants' position about the lawfulness of the prior administration's actions, it also is unclear whether Federal Defendants have made meaningful personnel changes. For example, although the purported policy changes have occurred at the top levels of the new Administration, it is unclear whether those changes have trickled down among the federal law enforcement officers who also are responsible for the harms that Plaintiffs seek to remedy in this lawsuit. Plaintiffs allege that many different actors, behaving similarly and for an extended period, have chilled Plaintiffs' speech. And any change in policy by the new Administration is ineffective to establish mootness, unless it is clear that those officers will abide by the new policy. *McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973, 982-983 (9th Cir. 2002).

Thus, while the new Administration may have replaced the former, some of the same federal officers that Plaintiffs complain about remain on duty in Portland. Wise Decl. ¶ 10. It is Federal Defendants' burden to establish that individual officers have followed the new policy. And even if one assumes that individual officers will follow the new policy, the conduct about

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

which Plaintiffs complain is still permissible today. The Federal Defendants cannot show that individual officers will not continue to engage in the same conduct with respect to protest medics under the new policies.

      **D.**    **Plaintiffs' claims are not moot simply because there has been a change in government officials.**

In their brief, Federal Defendants rely on *Mayor of City of Philadelphia v. Educational Equality League*, in support of their (incorrect) argument that Plaintiffs' equitable claims are moot unless Plaintiffs can prove that the new Administration will continue the complained-of practices. But that argument misconstrues the holding of *Mayor of Philadelphia* and the applicable burden of proof for mootness. As previously stated, Federal Defendants carry the "heavy burden" of establishing that Plaintiffs' claims are moot. *Cnty. of L.A.*, 440 U.S. at 631. Therefore it is *their* burden to establish that the new Administration has permanently discontinued the complained-of conduct. *See Comer v. Cisneros*, 37 F.3d 775, 799-801 (2d Cir. 1994) (holding that claims for injunctive relief may continue uninterrupted, even with a change in officeholders, when the effects of the former officeholder are not "completely and irrevocably eradicated").

With respect to *Mayor of Philadelphia*, contrary to Federal Defendants assertions, that case is inapposite here. The Ninth Circuit has clarified that the mootness inquiry demanded under *Mayor of Philadelphia* has limited applicability. As the Ninth Circuit has explained, in *Mayor of Philadelphia*, the plaintiffs challenged how *one mayor* had made personal appointments to a panel. *Hoptowitz v. Spellman*, 753 F.2d 779, 782 (9th Cir. 1985). But in this case, as in *Hoptowitz*, Plaintiffs challenge the actions of *various federal actors*, and there is no indication that the actions of all those individuals has ceased. *See id.* at 779 (noting that "most of the evidence does not relate to the personal conduct of the principal named defendants"). That is far different from the claims in *Mayor of Philadelphia*, which challenged the unitary actions of a

11-   PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS'
      SUPPLEMENTAL BRIEF ON WHETHER PLAINTIFFS'
      EQUITABLE CLAIMS HAVE BECOME MOOT
152049051.1

single political actor. Therefore, that case does not establish that the mere change in the federal Administration, here, renders Plaintiffs' equitable claims moot.

While the new Administration may have informally changed federal executive policy, the constitutional harms that Plaintiffs have suffered are ongoing. Plaintiffs still cannot engage in expressive activity without fear of violence and other chilling behavior on the part of Federal Defendants. In fact, they have had to purchase new clothing and protective equipment to lessen their risk of physical harm. Despite the continued opposition from Federal Defendants, Plaintiffs feel duty bound to assist injured Black Lives Matter activists and to create a safe environment for gathered protestors. Until the constitutional harm ends with finality—and will not recur— Plaintiffs' claims are not moot.

## II.    Even if the changed policies mooted Plaintiffs' claims, the harms perpetrated by Federal Defendants are capable of repetition while evading review.

"A case is moot when 'the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated' in circumstances where 'it becomes impossible for the court to grant any effectual relief whatever to the prevailing party.'" *United States v. Philip Morris USA, Inc.,* 566 F.3d 1095, 1135 (D.C. Cir. 2009) (quoting *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000)). In at least two kinds of cases, the fact that the specific conduct that prompted the case has ceased does not mean that the challenge to the legality of that conduct is moot. *City of Houston, Tex. v. Dep't of Housing & Urban Dev.,* 24 F.3d 1421, 1429–30 (D.C. Cir. 1994).

So long as "the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine," courts will not dismiss a clam as moot. *City of Houston, Tex. v. Dep't of Housing & Urban Dev.,* 24 F.3d 1421, 1429–30 (D.C. Cir. 1994) (cleaned up). Under the capable of repetition, yet evading review exception to mootness, the plaintiff must show that (1) the challenged action is in its duration too short to be

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

fully litigated prior to its cessation or expiration, and (2) that there is a reasonable expectation that the same complaining party would be subjected to the same action again. *Clarke v. United States,* 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc) (quoting *Murphy v. Hunt,* 455 U.S. 478, 482 (1982)). When these "two circumstances [are] simultaneously present," *Spencer v. Kemna,* 523 U.S. 1, 17 (1998), the plaintiff has established an "exceptional circumstance [ ]," *id.,* in which the exception will apply, *id.; see Clarke,* 915 F.2d at 704.

Both circumstances are present here. First, the challenged actions have not proceeded past the pleading stage before Federal Defendants asserted Plaintiffs' claims are moot. Plaintiffs concede that the frequency of demonstrations is seasonal. Nightly summer and autumn protests faded to intermittent winter demonstrations. Even if the more sporadic winter demonstrations made Plaintiffs' claims moot, any mootness brought on by the seasonality of protests favors reviewing Federal Defendants' harmful actions.

Second, Plaintiffs' expectation that they will be subjected to the same unconstitutional harms is, unfortunately, reasonable. As recently as March 11, 2021, a Black Lives Matter march ended at the federal courthouse. Wise Decl. ¶ 4. Just as they did last summer, police and federal officers began deploying tear gas and impact munitions at protestors. *Id.* While attending to injured demonstrators, Plaintiff Wise was serving as a protest medic and hit directly by impact munitions, once in the groin, twice in his right leg and once in his left thigh. *Id.* at 6. Such direct targeting while rendering aid to others is emblematic of the harms of the summer. As a result, Plaintiffs' expectations that they will be injured again and again are reasonable.

Although the exception to mootness for cases that are capable of repetition, yet evading review is a narrow one, by meeting the two elements above, Plaintiffs have established that this case is such an exceptional case. *Clarke,* 915 F.2d at 704. Plaintiffs' claims for injunctive relief are not moot. Even if they were, the harms are nearly certain to recur in short order with the uptick in expected demonstrations.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## Conclusion

Plaintiffs are not ignorant of the conventional wisdom that the current Administration has different views about the use of force at protests than the former Administration had. Plaintiffs hope that conventional wisdom proves true. But conventional wisdom is not evidence and it certainly does not to establish that a federal civil rights action is nonjusticiable for mootness.

For all those reasons, Plaintiffs ask the Court to decline to dismiss their claims for equitable relief. Plaintiffs continue to seek injunctive relief to secure their right to participate in demonstrations without fearing for their physical and mental wellbeing.

DATED:  April 2, 2021                    PERKINS COIE LLP


By: */s/ Thomas R. Johnson*
    Thomas R. Johnson, OSB No. 010645
    TRJohnson@perkinscoie.com
    Misha Isaak, OSB No. 086430
    MIsaak@perkinscoie.com
    Nathan R. Morales, OSB No. 145763
    NMorales@perkinscoie.com
    1120 N.W. Couch Street, 10th Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

    Attorneys for Plaintiffs

14- PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS'
    SUPPLEMENTAL BRIEF ON WHETHER PLAINTIFFS'
    EQUITABLE CLAIMS HAVE BECOME MOOT
152049051.1

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222